1   TERRENCE P. McMAHON (SBN 71910)
    **McDERMOTT, WILL & EMERY**
2   3150 Porter Drive
    Palo Alto, CA 94304-1212
3   Telephone:    650-813-5000
    Facsimile:    650-813-5100
4
    DAVID M. BECKWITH (SBN 125130)
5   **McDERMOTT, WILL & EMERY**
    18191 Von Karman Avenue, Ste. 400
6   Irvine, CA 92612-7107
    Telephone:    949-851-0633
7   Facsimile:    949-851-9348

8   JON B. STREETER (SBN 101970))
    **KEKER & VAN NEST LLP**
9   710 Sansome Street
    San Francisco, CA 94111-1704
10  Palo Alto, CA 94304-1212
    Telephone:    415-391-5400
11  Facsimile:    415-397-7188

12  Attorneys for Plaintiffs and Counterdefendants
    **FRESENIUS MEDICAL CARE HOLDINGS,**
13  **INC. AND FRESENIUS USA, INC.**

14              UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                      OAKLAND DIVISION

17

18  FRESENIUS MEDICAL CARE                 **CASE NO. C 03-01431 SBA (EDL)**
19  HOLDINGS, INC., a New York
    corporation and FRESENIUS USA, INC.,   **PLAINTIFFS' NOTICE OF MOTION AND**
20  a Massachusetts corporation,           **MOTION TO COMPEL DISCOVERY**
                                           **FROM DEFENDANTS**
21              Plaintiffs and
                Counterdefendants,         Hearing Date: December 30, 2003
22                                         Hearing Time: 9:00 am
         v.                                Judge: Hon. Elizabeth D. LaPorte
23                                         Courtroom: E, 15th Floor
    BAXTER INTERNATIONAL INC., a
24  Delaware corporation, and BAXTER
    HEALTHCARE CORPORATION, a
25  Delaware corporation,

26              Defendants and
                Counterclaimants.
27

28

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**
**FROM DEFENDANTS**                                    **CASE NO. 03-01431 SBA (EDL)**

# TABLE OF CONTENTS

Page

I. NOTICE OF MOTION ........................................................................................ 1

II. SUMMARY OF ARGUMENT .......................................................................... 1

III. FACTUAL BACKGROUND .............................................................................. 2

IV. STATEMENT OF ISSUES TO BE DECIDED ................................................ 3

V. ARGUMENT ........................................................................................................ 4

    A. There is Good Cause to Compel Baxter to Provide the Information Requested by Fresenius' First Set of Interrogatories (Nos. 1-7)........................... 4

        1. Conception and Reduction to Practice (Interrogatory No. 1) .................... 4

        2. Inventor Contact Information (Interrogatory No. 2) ................................... 5

        3. Marking With the Patents in Suit (Interrogatory No. 5) ........................... 6

        4. Public Use and On Sale (Interrogatory No. 3) ........................................... 8

        5. Baxter's Willful Infringement Contention (Interrogatory No. 6) .............. 8

        6. Relevant Licenses (Interrogatory No. 7)..................................................... 9

    B. There is Good Cause to Compel Baxter to Produce Documents in Response to Fresenius' First Set of Requests for the Production of Documents and Things (Nos. 1-90) ........................................................................ 10

        1. Acquisitions of the Patents in Suit (Request Nos. 40-41, 43, 59-60, 63 and 68-69) ............................................................................................ 10

        2. Baxter's Recalls (Request Nos. 84 and 86-90) ........................................ 11

        3. Marketing and Financial Documents (Request Nos. 12, 13, 16, 24, 27, 33, 36, 38, 52, 54, 56-57, 64, 66, 70, 72, 74, 77 and 79-82)............... 12

        4. Licenses and Licensing Discussions (Request Nos. 10-11, 17, 62, 64, 67, 68-69, 75-76 and 78)....................................................................... 13

        5. Validity, Enforceability, Prior Art and Related Foreign Patent Applications (Request Nos. 2, 8, 44-47, and 58) ....................................... 13

        6. Baxter's Notice of Fresenius' Products (Request Nos. 48-50) ................. 14

        7. Marking With the Patents in Suit (Request No. 39) ................................. 15

    C. There is Good Cause to Compel Baxter to Certify Its Identifications and Production of Certain Documents Are Complete or to Complete Its Identifications and Production of These Documents ........................................... 15

**TABLE OF CONTENTS**
(continued)

                                                                                          **Page**

1.  Conception and Reduction to Practice (Interrogatory No. 1; Request Nos. 4 and 14) ............................................................................................ 15

2.  Public Use and On Sale (Interrogatory No. 2; Request Nos. 15 and 23) .......................................................................................................... 16

3.  Products Allegedly Embodying the Patents in Suit (Interrogatory No. 4) ............................................................................................................... 17

4.  Prior Investigations Relating to the Patents in Suit (Request Nos. 18-19 and 28-30) ...................................................................................... 17

5.  Design and Development of the Alleged Inventions (Request Nos. 7, 9, 20, 24 and 52) ....................................................................................... 17

6.  Inventor Documents and Related European Patent Proceedings (Request Nos. 3, 6, and 31) ......................................................................... 18

7.  Grants to the Patents in Suit (Request No. 37) ......................................... 18

8.  FDA Documents (Request No. 53) ............................................................. 18

9.  Medicare and Medicaid Limitations (Request Nos. 85) ........................... 18

VI.  FRESENIUS MET AND CONFERRED IN AN EFFORT TO RESOLVE THE ISSUES RAISED BY THIS MOTION ............................................................ 19

VII.  CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.,*
   960 F.2d 1020 (Fed. Cir. 1992)..................................................................................... 14

*Bosies v. Benedict,*
   27 F.3d 539 (Fed. Cir. 1994)......................................................................................... 4

*Chevron Corp. v. Pennzoil,*
   974 F.2d 1156 (9th Cir. 1992)....................................................................................... 5

*Clark Equip. Co. v. Lift Parts Manufacturing Co.,*
   1985 U.S. Dist. LEXIS 15457 (N.D. Ill. Sept. 30, 1985)............................................ 5

*Coleman v. Dines,*
   754 F.2d 353 (Fed. Cir. 1985)....................................................................................... 4

*Ferag AG v. Grapha-Holding AG,*
   935 F. Supp. 1238 (D.D.C. 1996) ................................................................................ 12

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
   318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................... 9, 12, 13

*Grain Processing Corp. v. American Maize-Products Co.,*
   185 F.3d 1341 (Fed. Cir. 1999)..................................................................................... 6

*Herman v. Crescent Publ. Group,*
   2000 U.S. Dist. LEXIS 13738 (S.D.N.Y. Sept. 20, 2000) ........................................... 6

*Integra Lifesciences I, Ltd. v. Merck KGaA,*
   331 F.3d 860 (2003).............................................................................................. 9, 10

*King Instruments Corp. v. Perego,*
   65 F.3d 941 (Fed. Cir. 1995)......................................................................................... 11

*Mentor Graphics Corp. v. Quickturn Design System,*
   2003 U.S. Dist. LEXIS 16196 (N.D. Cal. July 29, 2003)...................................... 4, 15

*Micro Motion, Inc. v. Kane Steel Co.,*
   894 F.2d 1318 (Fed. Cir. 1990)............................................................................ 12, 14

*Molins PLC v. Textron, Inc.,*
   48 F.3d 1172 (Fed. Cir. 1995)....................................................................................... 14

*Newell Cos. v. Kenney Manufacturing Co.,*
   864 F.2d 757 (Fed. Cir. 1988)....................................................................................... 12

*Nike Inc. v. Wal-Mart Stores,*
   138 F.3d 1437 (Fed. Cir. 1998)..................................................................................... 8

*SEC v. Elfindepan,*
   206 F.R.D. 574 (M.D.N.C. 2002) ............................................................................ 5, 9

TABLE OF AUTHORITIES
(continued)

Page

### FEDERAL STATUTES

Federal Rules of Civil Procedure
  Rule 26(a)(1) ....................................................................................................................... 6
  Rule 33(d) ................................................................................................................... 4, 5, 8, 9

35 U.S.C. § 102(a), (g) ............................................................................................................ 4, 15

35 U.S.C. § 102(b) .................................................................................................................... 8, 16

35 U.S.C. § 287 ........................................................................................................................... 7, 14

### FEDERAL REGULATIONS

37 C.F.R. § 1.56 ............................................................................................................................ 14

### OTHER AUTHORITIES

Littman, 38 IDEA 1, 50 (1997)
  "Monopoly, Competition and Other Factors in Determining Patent Infringement
  Damages," .................................................................................................................................. 9

# I.
# NOTICE OF MOTION

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37 for the U.S. District Court for the Northern District of California, Plaintiffs Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc. (collectively, "Fresenius") hereby move the Court for an order compelling Defendants Baxter International Inc. and Baxter Healthcare Corp. (collectively, "Baxter") to answer Fresenius' interrogatories and produce documents requested by Fresenius. This motion is noticed for hearing on December 30, 2003 at 9:00 am before Judge D. Elizabeth Laporte.

# II.
# SUMMARY OF ARGUMENT

In this lawsuit, Baxter has accused Fresenius of infringing five U.S. patents. However, Baxter refuses to produce fundamental written discovery relating to the validity of Baxter's patents and Baxter's claim for damages in response to Fresenius' written discovery demands. At the same, Baxter has already sought to substantially limit the total number of depositions in this case. If Baxter has its way in withholding information on the critical issues of validity and damages through written discovery, it will substantially and unfairly stymie Fresenius' ability to explore these fundamental areas at all. Baxter is thus seeking to block access to relevant information in every form: witness testimony, interrogatory, and document request. What Fresenius is prevented from receiving through the exchange of written discovery will not be made up through extensive deposition practice if Baxter has its way.

Baxter is stonewalling and avoiding discovery at every turn because it does not want Fresenius to be able to make an informed decision at the mediation between the parties in January, and to prepare for upcoming deposition discovery and for trial. Baxter knows that as additional discovery is taken, Baxter's position worsens. Therefore, there is good cause to compel Baxter to provide the fundamental discovery sought by this motion.

# III.
## FACTUAL BACKGROUND

This patent suit between competitors concerns kidney dialysis machines, specifically hemodialysis machines, and their various features, such as the use of a touch screen. Hemodialysis is a medical procedure wherein a patient with kidney failure has their blood filtered through an artificial kidney-dialyzer and returned to their body.

The patents in suit were developed by inventors at Baxter's predecessor company, CD Medical. CD Medical was acquired by Althin Medical ("Althin") in 1991, just prior to the first patent application being filed. The first of the five patents in suit issued in 1993. Baxter acquired the patents and related patent applications, supporting documents, and hired many of the inventors, when it acquired Althin in 2000. The last patent in suit issued in 2001.

Baxter began threatening Fresenius with suit in late 2002, claiming not only infringement of the patents by Fresenius' hemodialysis machines and damages for that alleged infringement, but also an entitlement to lost profits from all of the "disposables," or commodities, that are used in a hemodialysis treatment, including dialyzers (filters), needles, blood tubing, etc. Fresenius sued Baxter for Declaratory Judgment because it does not infringe any of Baxter's invalid patents. As anticipated, Baxter countersued, and has done all it can to delay and obfuscate the discovery process.

Fresenius served its first round of discovery—interrogatories and document requests—on Baxter during the first week of September. Bright Decl. Exhs. A and B. Fresenius requested a meet and confer on October 7, after receiving Baxter's inadequate responses on October 3. Bright Decl. Exhs. C-E.[1] Baxter initially refused, demanding Fresenius wait until after Fresenius served its discovery responses to Baxter, so Baxter could delay providing its own discovery and demand concessions from Fresenius as a condition of complying with Fresenius' discovery demands. *See* Bright Decl. ¶ 6. Baxter finally agreed to talk to Fresenius, but demanded the discussion not take place for another week. Bright Decl. Exh. E.

---

[1] Pursuant to Local Rule 37-2, each interrogatory, document request and response is set forth as Exhibits C,D,G and M to the Bright Declaration.

1    Baxter and Fresenius discussed Baxter's responses during a marathon meet and

2    confer by telephone in the middle of October, during which Baxter made promises to provide

3    information and produce documents, which Fresenius later confirmed in writing.  Bright Decl.

4    ¶ 7; Bright Decl. Exh. F.

5    However, Baxter reneged on many of its promises.  Although Baxter

6    supplemented its responses, it still failed to produce basic and fundamental information at its

7    fingertips and within its exclusive possession.  Bright Decl. Exhs. G and M.  Baxter refuses to

8    produce information and documents regarding such fundamental topics as conception and

9    reduction to practice of the alleged inventions, the first use, offer for sale and sale of the alleged

10   inventions, the current contact information for named inventors, prior art, the marketing, sales and

11   alleged commercial success of the alleged inventions, and what Baxter paid when it acquired the

12   patents in suit from Althin.

13   Similarly, Baxter still has produced very few documents, if any, relating to its

14   damages claim for alleged lost sales of its own hemodialysis machines.  Baxter also seeks lost

15   profits on sales of disposable commodities, yet it refuses to produce documents directly relevant

16   to the cause of Baxter's lost sales of these disposables.  Bright Decl. ¶ 18.

17   Fresenius has exhausted the meet and confer process during at least a month-long

18   effort to obtain the requested discovery.  Bright Decl. ¶ 20.  Fresenius can wait no longer in the

19   hope that Baxter will live up to its discovery obligations.  Fresenius requires the discovery sought

20   by this motion to prepare its case in anticipation of the January mediation, upcoming depositions,

21   and trial.

22                              **IV.**
                **STATEMENT OF ISSUES TO BE DECIDED**

23

24   Whether Baxter should be compelled to provide information in response to each

     and every interrogatory in Fresenius' First Set of Interrogatories to Baxter (Nos. 1-7).

25

26   Whether Baxter should be compelled to produce all documents requested in

     Request Nos. 2-4, 6-21, 23-24, 26-34, 36-41, 43-50, 52, 54-60, 62-64, 66-82, and 84-90 of

27

     Fresenius' First Set of Requests for the Production of Documents and Things (Nos. 1-90).

28

## V.
## ARGUMENT

**A.   There is Good Cause to Compel Baxter to Provide the Information Requested by Fresenius' First Set of Interrogatories (Nos. 1-7)**

### 1.   Conception and Reduction to Practice (Interrogatory No. 1)

This interrogatory requests the dates of conception and actual reduction to practice of each asserted patent claim (and diligence between conception and reduction to practice), and the identity of all persons to corroborate such dates. Bright Decl. Exh. M at 6. The information sought by this interrogatory is clearly relevant to determining the pool of relevant prior art, and to assess whether the patents are invalid (*e.g.*, 35 U.S.C. §§ 102(a), (g)), since corroboration is required to establish dates of conception, diligence and reduction to practice. *See, e.g.*, *Mentor Graphics Corp. v. Quickturn Design Sys.*, 2003 U.S. Dist. LEXIS 16196, at *17-21 (N.D. Cal. July 29, 2003) (citing *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985) ("Conception must be proved by corroborating evidence which shows that the inventor disclosed to others his 'completed thought expressed in such clear terms as to enable those skilled in the art' to make the invention.").

Baxter refuses to provide the requested information, relying instead on Rule 33(d) of the Federal Rules of Civil Procedure. Bright Decl. Exh. M at 6-7. Baxter's reliance on Rule 33(d) is misplaced here. Baxter is privy to responsive information not available to Fresenius through the documents. Baxter has the invention disclosures by the inventors, presumably shedding light on the dates of conception, but Baxter is hiding the documents and the facts therein from Fresenius based on a claim of privilege. *See, e.g.*, Bright Decl. Exh. P at 10; Bright Decl. Exh. Q at 9-10.

Further, the very nature of conception goes to the state of mind of the inventor. *Bosies v. Benedict*, 27 F.3d 539, 543 (Fed. Cir. 1994) ("The question of conception is properly directed to whether there was 'formation [] in the mind of the inventor of a definite and permanent idea of the complete and operative invention ...'"). Baxter is in the sole position of being able to interview its own employees and clients to determine the dates of conception. Several of the inventors are employed by Baxter or represented by Baxter's counsel in this

1   litigation, e.g., Messrs. Grogan, Hogard, Kelly and Preston.  Bright Decl. Exh. M at 8.  The

2   Federal Rules require Baxter to undertake this investigation.  Baxter simply cannot rely on

3   privilege to shield dates of conception and reduction to practice, and at the same time refuse to

4   interview the inventors to provide the requested information.  *See generally Chevron Corp. v.*

5   *Pennzoil*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client

6   communications may not be used both as a sword and a shield.").

7           Moreover, Baxter just does not want the truth to come out.  Baxter does not want

8   to interview the inventors, and wants to substantially limit the number of depositions.  The net

9   effect is discovery is never had on many of the named inventors.

10          The bottom line is under Rule 33(d), Baxter cannot shift the burden to Fresenius

11  and force Fresenius to guess at whether the documents identify the conception of the alleged

12  inventions.  The burden is much greater on Fresenius to determine this information from less than

13  a complete documentary record than it is for Baxter, which has access to the inventors.

14          Also, in more general terms, Baxter cannot rely on Rule 33(d) to respond to this

15  contention interrogatory.  *SEC v. Elfindepan*, 206 F.R.D. 574, 577 n.5 (M.D.N.C. 2002) ("Rule

16  33(d) may not be used as a substitute for answering [contention] interrogatories.").

17      **2.      Inventor Contact Information (Interrogatory No. 2)**

18          The interrogatory seeks each co-inventor's last known home address, home

19  telephone number, employer, employer's address, and employer's telephone number.[2]  Bright

20  Decl. Exh. M at 7.  Baxter claims this information is attorney work product.  Bright Decl. Exh. M

21  at 7-8; Bright Decl. Exh. F at 3; Bright Decl. Exh. K at 4.

22          Baxter cannot withhold such basic factual information as inventor contact

23  information merely because Baxter's counsel acquired the information.  The work product

24  doctrine cannot be applied to shield such basic discovery as the identity and location of the

25  inventors named in the applications for the patents in suit.  *Clark Equip. Co. v. Lift Parts Mfg.*

26  *Co.*, 1985 U.S. Dist. LEXIS 15457, at *19 (N.D. Ill. Sept. 30, 1985) ("The attorney work product

27

28

---

[2] See also Fresenius' document Request No. 73, requesting documents sufficient to identify this contact information
for each co-inventor.  Bright Decl. Exh. D at 39.

1    privilege does not preclude the disclosure of facts or the identity of witnesses or documents

2    simply because their existence was discovered by counsel. Such a contention has been

3    conclusively foreclosed since *Hickman v. Taylor* ... where the Supreme Court stated: 'A party

4    clearly cannot refuse to answer interrogatories on the ground that the information sought is solely

5    within the knowledge of his attorney.'"); *Herman v. Crescent Publ. Group*, 2000 U.S. Dist.

6    LEXIS 13738, at *24 (S.D.N.Y. Sept. 20, 2000) ("Neither the work product doctrine nor the

7    government informant privilege entitles a party to withhold the identity of informants who will be

8    trial witnesses."). Baxter's argument, if accepted, would permit Baxter to withhold all

9    information obtained by its counsel during any investigation undertaken to respond to discovery

10   requests and comply with the Federal Rules of Civil Procedure. Such a result is not contemplated

11   by the work product doctrine.

12           In any event, the inventor contact information sought by this interrogatory is

13   otherwise discoverable under Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, which

14   requires Baxter to provide "the name and, if known, the address and telephone number of each

15   individual likely to have discoverable information that the disclosing party may use to support its

16   claims or defenses, unless solely for impeachment." Baxter simply cannot withhold this

17   information.

18           3.      **Marking With the Patents in Suit (Interrogatory No. 5)**

19           The interrogatory requests information regarding the dates Baxter allegedly began

20   marking its products (or those of its predecessor, Althin), any such products sold without such

21   marking, and all documents and things showing the marking of or failure to mark such products.

22   Bright Decl. Exh. M at 9-10. Both Baxter and Althin must have marked all of their allegedly

23   patented products, otherwise Baxter's claim for damages would be limited to the period after

24   Fresenius was actually notified of its alleged infringement. *Grain Processing Corp. v. American*

25   *Maize-Products Co.*, 185 F.3d 1341, 1347 n.3 (Fed. Cir. 1999) ("Grain Processing was not

26   entitled to damages before this date [of actual notice of infringement] because neither Grain

27   Processing nor its predecessor in interest had marked the Mor-Rex products with the patent

28   number pursuant to 35 U.S.C. § 287(a) (1994)."). This information is therefore critical to

1  Baxter's right to recover damages, if any, and is particularly important to the upcoming mediation

2  in January because Baxter's (including its predecessor's) failure to consistently mark in

3  accordance with 35 U.S.C. § 287(a) would substantially reduce Baxter's claim for damages by

4  several years.

5      Baxter initially identified three products and stated that it had marked these

6  machines "with one or more of the patents in suit ... since they were commercially introduced."

7  Bright Decl. Exh. C at 8.  When pressed on this clearly inadequate answer, Baxter supplemented

8  its response with an obviously false statement that these machines had been marked with "three of

9  the patents-in-suit since May 1994 and with four of the patents-in-suit since March 1996."  Bright

10  Decl. Exh. G at 8.  When it was pointed out that this response did not make sense since only one

11  of the patents in suit had issued as of May 1994 and only three patents in suit as of March 1996,

12  Baxter changed its response again to state that for each of five products for each of three patents

13  (without specifying which), Baxter had marked each product since "at least" certain months and

14  years or since the "inception of the product, whichever was later."  Bright Decl. Exh. I at 3;

15  Bright Decl. Exh. M at 9-10.  Baxter continues to sidestep this critical interrogatory and still has

16  not provided information for the other two patents in suit, and still has not set forth the dates of

17  marking for each of the allegedly patented products.

18      Baxter's identification of documents on this point is likewise deficient.  Baxter has

19  identified a handful of documents (labeling specifications) for a limited period of time for only

20  one of the five products (the System 1000) identified by Baxter as embodying the patents in suit.

21  Bright Decl. Exh. M at 10.  Although Baxter has identified another single document for another

22  allegedly patented product (the Arena), the document does not identify the patent numbers.

23  Further, none of these labeling specifications show that the labels were actually applied to the

24  allegedly patented machines before they were shipped to customers and clinics for use.

25      Baxter should provide the information requested by the interrogatory, including for

26  each product, when the product was marked with each of the patents in suit and all documents

27  identifying the marking or failure to mark the product.

28

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**
**FROM DEFENDANTS**
   - 7 -      **CASE NO. 03-01431 SBA (EDL)**

1       **4.      Public Use and On Sale (Interrogatory No. 3)**

2               This interrogatory requests the dates the first embodiment of the alleged inventions

3   was first offered for sale, first sold, first publicly used, or first publicly disclosed and the identities

4   of individuals with relevant knowledge (and the subject matter of their knowledge).  Bright Decl.

5   Exh. M at 8.  Such information is relevant to public use and on sale statutory bars that could

6   invalidate the patents in suit.  35 U.S.C. § 102(b).

7               Baxter refuses to provide the requested information, relying on Rule 33(d) of the

8   Federal Rules of Civil Procedure.  Bright Decl. Exh. M at 8-9.  Again, for the reasons stated

9   above in connection with Interrogatory No. 1, Baxter cannot rely on Rule 33(d) here because

10  Baxter has control over several of the inventors, including Tom Kelly who apparently was

11  involved in and/or responsible for the first disclosure and clinical trials and first

12  commercialization of the allegedly patented machine.  Baxter cannot avoid undertaking a

13  reasonable investigation, including interviewing these individuals, to identify and provide

14  responsive information.

15      **5.      Baxter's Willful Infringement Contention (Interrogatory No. 6)**

16              This interrogatory requests that Baxter set forth the facts allegedly supporting its

17  willful infringement allegations, including the identification of all witnesses having knowledge of

18  those facts and all documents and things allegedly evidencing such facts.  Bright Decl. Exh. M at

19  10.

20              Baxter initially confirmed it would supplement its response to identify specific

21  dates, witnesses, and bates numbers of relevant documents.  Bright Decl. Exh. F at 4.  Instead,

22  Baxter continued to hide the ball, stating that Fresenius had <u>constructive</u> notice of three of the

23  patents-in-suit and had actual notice of all five patents by various months and years.  Bright Decl.

24  Exh. M at 10.

25              Baxter's response is insufficient.  Baxter's contention regarding constructive

26  notice is not responsive to the interrogatory.  *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1446

27  (Fed. Cir. 1998) ("[T]he issue of willfulness turns on the <u>actual</u> knowledge of the infringer, and is

28  unrelated to the adequacy of constructive notice by the patentee.") (emphasis added).  Baxter's

1  response fails to set the *facts* allegedly supporting its contention that Fresenius had actual—as

2  opposed to constructive—notice of the patents in suit as of the dates identified, including the

3  documents and things evidencing such facts and the individuals with knowledge of those facts.

4  Rather than provide the requested information, Baxter again points Fresenius to

5  documents under Rule 33(d). Bright Decl. Exh. M at 10. Rule 33(d) does not permit Baxter to

6  avoid setting forth its contentions in response to this contention interrogatory.[3] *Elfindepan*, 206

7  F.R.D. at 577 n.5.

8  ## 6.    Relevant Licenses (Interrogatory No. 7)

9  This interrogatory requests that Baxter identify all licenses and royalties relevant

10  to kidney dialysis machines. Bright Decl. Exh. M at 10-11. Although Baxter claims it is still

11  pursuing damages both on the basis of lost profits and a reasonable royalty, it refuses to provide

12  the requested licensing and royalty information. *Id.*

13  Baxter claims the only relevant licenses are those for the patents in suit. Bright

14  Decl. Exh. F at 5; Bright Decl. Exh. N at 4. Baxter is wrong, as licenses for comparable products

15  are relevant to a reasonable royalty, which Baxter also seeks as a measure of damages in this case.

16  *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (one

17  factor to consider in determining reasonable royalty is "[t]he portion of the profit or of the selling

18  price that may be customary in the particular business or in comparable businesses to allow for

19  the use of the invention or analogous inventions."). *See also* Littman, "Monopoly, Competition

20  and Other Factors in Determining Patent Infringement Damages," 38 IDEA 1, 50 (1997)

21  ("Licenses for comparable products are often offered in evidence in royalty cases."). Moreover,

22  licenses on other kidney dialysis machines would also be relevant to royalty stacking and

23  therefore would be relevant to damages for this additional reason as well. *See, e.g., Integra*

24  *Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870-71 (2003).

25

26  ─────────────
[3] Baxter's identification of documents is also insufficient because it is limited to letters from Baxter to Fresenius no

27  earlier than February 20, 2003, but Baxter claims Fresenius had notice of the patents in suit earlier than that date. Bright Decl. Exh. M at 10. Fresenius has requested documents allegedly supporting Baxter's willful infringement

28  contention in Request Nos. 32 and 34. Bright Decl. Exh. D at 19-20.

1           Baxter's response that it has granted no licenses under the patents in suit places

2    even greater importance on licenses for other kidney dialysis machines, especially in anticipation

3    of the upcoming mediation in January.

4    **B.**    **There is Good Cause to Compel Baxter to Produce Documents in Response to**
         **Fresenius' First Set of Requests for the Production of Documents and Things (Nos.**
5        **1-90)**

6          **1.**    **Acquisitions of the Patents in Suit (Request Nos. 40-41, 43, 59-60, 63 and 68-**
         **69)**
7

8           The requested documents relate to Baxter's acquisition of Althin (Request No. 40)

9    and payment for the technology in the allegedly patented machines (Request Nos. 68-69),

10   including documents relating to Baxter's board and other internal Baxter meetings (Request No.

11   60); communications regarding the Althin acquisition between Baxter and Althin (Request No.

12   43) and between Baxter and its accountants, auditors, or investment bankers (Request No. 63);

13   and Baxter's valuation of the patents in suit (Request No. 59). The requested documents also

14   relate to Althin's acquisition of CD Medical's kidney dialysis machine business (Request No. 41).

15   Bright Decl. Exh. D. at 22-24, 32-35, and 37-38. Baxter refuses to produce all of these

16   documents.

17          Baxter's consideration, evaluation and ultimate approval of its acquisition of

18   Althin is relevant to the value of the technology claimed in the patents in suit, as is Althin's

19   acquisition of CD Medical, which developed the alleged inventions. *See, e.g., Integra*

20   *Lifesciences*, 331 F.3d at 871. In *Integra*, the Federal Circuit held the price paid by the patent

21   owner to acquire the company that previously owned the patents was relevant to a reasonable

22   royalty as a damages award. *Id.* The Federal Circuit held the district court erred in awarding $15

23   million dollars as a reasonable royalty because it was excessive in view of the $20 million dollar

24   purchase price paid by the patent owner to acquire the company that previously owned the

25   patents, along with all of its products, patents and know-how. *Id.* Thus, the price ultimately paid

26   by Baxter for Althin, and how Baxter arrived at that decision, has a direct bearing on the damages

27   analysis in this case. Similarly, Althin's acquisition of CD Medical's kidney dialysis machine

28   business is highly relevant to the issue of damages.

1    Baxter's concerns about the sensitivity of such information have already been

2    addressed at the hearing on the protective order motion, and by an agreement to treat all

3    confidential information as Outside Counsel Eyes Only pending entry of a protective order.

4    Bright Decl. Exh. L.

5        **2.**      **Baxter's Recalls (Request Nos. 84 and 86-90)**

6    These requested documents relate to Baxter's recalls of certain disposable

7    commodities (e.g., dialyzers which are used to filter blood) used with Baxter's allegedly patented

8    machines (Request No. 86), including documents concerning Baxter's or Althin's ability to make

9    and sell such disposables (Request No. 84), Baxter's board and management meetings regarding

10    such recalls (Request No. 87), investigations of Baxter by U.S. and foreign governments in

11    connection with such recalls (Request No. 88), lawsuits over the recalls (Request No. 89), and the

12    financial impact on Baxter's business as a result of the recalls (Request No. 90). Bright Decl.

13    Exh. D at 44-47. Baxter claims damages for lost sales of such disposables in this case, but it

14    refuses to provide documents relating to recalls of such products.

15    These recalls are relevant to demonstrate that the recalls, rather than competition

16    from Fresenius, accounts for lost sales of disposable products by Baxter. The recalls are also

17    relevant to Baxter's claim that it has suffered injury to its operation, reputation and goodwill as a

18    result of Fresenius' alleged infringement. Fresenius is entitled to take discovery to determine the

19    injury suffered by Baxter to its kidney dialysis business due to recalls on such products, in some

20    cases as a result of numerous widely-publicized deaths due to such products, rather than

21    competition from or alleged infringement by Fresenius. *See, e.g.*, *King Instruments Corp. v.*

22    *Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995) (To recover lost profits a patentee must show that "but

23    for" infringement it reasonably would have made the additional profits enjoyed by the alleged

24    infringer.).

25        **3.**      **Marketing and Financial Documents (Request Nos. 12, 13, 16, 24, 27, 33, 36,**
           **38, 52, 54, 56-57, 64, 66, 70, 72, 74, 77 and 79-82)**

26

27    The requested documents relate to the commercialization and alleged commercial

28    success of products that allegedly embody the inventions claimed in the patents in suit (Request

No. 12) and Baxter's damages claims for lost profits, reasonable royalty and other injury to its business (Request No. 33); including market analyses, pro formas, and business plans (Request Nos. 12 and 36); documents concerning competing machines (Request No. 13); agreements regarding the commercialization of the allegedly patented machines (Request No. 16); Baxter's and its predecessors' commercial success, if any (Request No. 27); catalogues and advertising for the allegedly embodying products (Request Nos. 38 and 72); sales plans and accounting statements (Request No. 52); Baxter's decision to market or not market its machines with a touch screen (Request Nos. 56-57); market studies and competitive analyses (Request No. 77); financial projections and forecasts (Request No. 70); market share (Request No. 74); pricing decisions (Request No. 79); product comparisons (Request No. 80); marketing plans (Request No. 81); detailed sales and financial information including costs and profit margins (Request Nos. 54, 66 and 82); Baxter's consideration of selling its kidney dialysis machine business (Request No. 64); and the identities of individuals involved in the manufacturing, marketing and sale of the products allegedly embodying the inventions claimed in the patents in suit (Request Nos. 21 and 71). Bright Decl. Exh. D at 11-13, 16-18, 20-22, 29-32, 25-36, and 38-43.

The documents sought by these requests are relevant to damages, specifically lost profits and a reasonable royalty, and to the obviousness of the alleged inventions claimed in the patents in suit. *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322 (Fed. Cir. 1990) (Claim of lost profits "implicates the patentee's manufacturing capacity and marketing capability, the desires of customers for the claimed invention, the relationship of the claimed invention to the product sold and other factors pertinent to the particular market or parties."); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 784 (Fed. Cir. 1988) (commercial success or lack thereof is relevant to obviousness determination); *Ferag AG v. Grapha-Holding AG*, 935 F. Supp. 1238, 1247 (D.D.C. 1996) ("The IPEX machine's relative lack of commercial success buttresses the finding that the Weber patent is obvious."); *Georgia-Pacific Corp.*, 318 F. Supp. at 1119-20 (setting forth some marketing and commercial factors considered in determining reasonable royalty). These documents are important to an informed evaluation of Baxter's claim for damages in anticipation of the January mediation.

1

    **4.**      **Licenses and Licensing Discussions (Request Nos. 10-11, 17, 62, 64, 67, 68-69, 75-76 and 78)**

2

3

        The requested documents relate to licenses for the patents in suit and

communications or negotiations in connection with Baxter's or its predecessors' licensing efforts

4

regarding the patents in suit (Request Nos. 10, 17 and 62); including licensing policies (Request

5

No. 11); Baxter's consideration of having third parties manufacture kidney dialysis machines for

6

Baxter (Request No. 64); license and other agreements granting rights to the technology in the

7

allegedly patented products (Request Nos. 67-68); and Baxter's payment for technology in such

8

products (Request No. 69); and licenses for and valuations of intellectual property in kidney

9

dialysis machines generally (Request Nos. 75-76). Bright Decl. Exh. D at 10-11, 13, 34-38, and

10

40-41. As noted above in connection with Interrogatory No. 7, such licenses, valuations and

11

related communications are relevant to Baxter's claim for damages in this case. *See Georgia-*

12

*Pacific Corp.*, 318 F. Supp. at 1120; Littman, 38 IDEA at 50.

13

    **5.**      **Validity, Enforceability, Prior Art and Related Foreign Patent Applications (Request Nos. 2, 8, 44-47, and 58)**

14

15

        The requested documents relate to the validity and enforceability of the patents in

16

suit (Request No. 2), prior art generally (Request Nos. 8 and 58), the prior art Seratron machine

17

(Request No. 44), the prior art known to the inventors (Request No. 45), prior art manuals

18

(Request No. 47), Fresenius' license defense that it has a right to practice the technology of the

19

'286 and '027 patents as a result of the litigation between Althin and Seratronics (Request No.

20

44), and all changes in inventorship during prosecution of the patents in suit (Request No. 46).

21

Bright Decl. Exh. D at 6-7, 9-10, 24-27, and 32.

22

        Baxter outright refuses to produce certain prior art located by Baxter's attorneys,

23

claiming the prior art itself is attorney work product. Bright Decl. Exh. K at 6. However, Baxter

24

cannot withhold from production prior art under the work product doctrine. One or more

25

attorneys in the same law office as Baxter's litigation counsel are concurrently involved in the

26

prosecution of patent applications related to the patents in suit before the Patent Office. Baxter

27

and its attorneys have a continuing obligation of candor and thus must disclose this prior art to the

28

1    Patent Office in connection with pending related patent applications. Therefore, Baxter must

2    likewise produce this prior art in this litigation.

3              Further, Baxter refuses to produce the files of related foreign patent applications or

4    to confirm its production of these files is complete. These files are relevant to the prior art known

5    to the inventors as a result of foreign prosecution and representations made by the inventors

6    regarding their alleged inventions and the prior art during foreign prosecution. *See, e.g.*, 37

7    C.F.R. § 1.56 (with regard to applicant's duty of disclosure to the U.S. Patent Office, "[t]he

8    Office encourages applicants to carefully examine: (1) Prior art cited in search reports of a

9    foreign patent office in a counterpart application"); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172,

10   1182 (Fed. Cir. 1995) ("Failure to cite to the PTO a material reference cited elsewhere in the

11   world justifies a strong inference that the withholding was intentional.").

12        **6.    Baxter's Notice of Fresenius' Products (Request Nos. 48-50)**

13             The requested documents relate to Baxter's notice of Fresenius' products accused

14   of infringing the patents in suit, including its predecessor Althin's notice of such products

15   (Request Nos. 48-49), and documents relating to Baxter's request that Fresenius supply

16   hemodialysis machines and services for Baxter (Request No. 50). Bright Decl. Exh. D at 27-29.

17             The requested documents are relevant to Fresenius' laches and equitable estoppel

18   defenses, and Baxter's (or Althin's) capacity to manufacture and market hemodialysis machines

19   and to provide hemodialysis services. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d

20   1020, 1034 (Fed. Cir. 1992) (en banc) ("laches focuses on the reasonableness of the plaintiff's

21   delay in suit [after the plaintiff knew of should have known of the allegedly infringing product or

22   conduct] [while] equitable estoppel focuses on what the defendant has been led to reasonably

23   believe from the plaintiff's conduct"); *Micro Motion*, 894 F.2d at 1318 (manufacturing and

24   marketing capacity relevant to claim of lost profits).

25        **7.    Marking With the Patents in Suit (Request No. 39)**

26             The requested documents include documents and other items (packaging materials

27   and package inserts) relating to marking of the allegedly patented products in accordance with 35

28   U.S.C. § 287. Bright Decl. Exh. D at 22. For the reasons stated above in connection with

1  Interrogatory No. 5, Baxter must produce all of these documents and do so soon, especially given

2  the importance of the issue of marking as a limitation on Baxter's alleged damages to the

3  upcoming mediation in January.

4  **C.**     **There is Good Cause to Compel Baxter to Certify Its Identifications and Production of Certain Documents Are Complete or to Complete Its Identifications and Production of Documents**

5

6     **1.**     **Conception and Reduction to Practice (Interrogatory No. 1; Request Nos. 4 and 14)**

7

8           In addition to the information noted above, these discovery requests seek the

   identity and production of all documents relating to conception and reduction to practice, such as

9

   inventor notebooks, drawings and/or descriptions of the alleged inventions. Bright Decl. Exh. M

10

   at 6-7; Bright Decl. Exh. D at 7 and 12. As noted above, these documents are clearly relevant to

11

   determining the pool of relevant prior art, and to assess whether the patents are invalid. *See, e.g.,*

12

   35 U.S.C. §§ 102(a), (g); *Mentor Graphics*, 2003 U.S. Dist. LEXIS 16196, at *17-21.

13

14           Baxter did not identify and produce all conception and reduction to practice

   documents on October 9, despite its obligation to do so under Patent Local Rules 3-1 and 3-2.

15

   For example, during his deposition on October 27, Mr. Grogan, an inventor named in the '476

16

   patent, identified software code which had not been produced as evidence of the conception of the

17

   claimed invention. Further, Baxter produced and identified additional conception and reduction

18

   to practice documents from Baxter's archive of Althin and CD Medical documents as recently as

19

   the first two weeks in November. Although Baxter has identified these additional documents,

20

   Baxter refuses to confirm that its production and identification of conception and reduction to

21

   practice documents are complete, including the code identified by Mr. Grogan, and the Althin and

22

   CD Medical documents. Bright Decl. Exh. N at 3 and 5. Baxter alone can confirm it has

23

   produced all such documents because it alone possesses them, and because its counsel represents

24

   Mr. Grogan, who can confirm or deny that the code he identified during his deposition has been

25

   produced here. Baxter should produce and identify all such documents or certify that its

26

   production and identification of these documents are complete.

27

28

1        **2.      Public Use and On Sale (Interrogatory No. 2; Request Nos. 15 and 23)**

2                These discovery requests seek the identification (Interrogatory No. 2) and

3    production of documents relating to first offer for sale, first sale, first public use, or first public

4    disclosure of the first embodiment of each claimed invention (Request No. 23), including

5    presentations made to third parties concerning the subject matter of the patents in suit (Request

6    No. 15).  Bright Decl. Exh. M at 8-9; Bright Decl. Exh. D at 12-13 and 16.  This information is

7    relevant to public use and on sale statutory bars that could invalidate the patents in suit.  35

8    U.S.C. § 102(b).

9                Baxter initially confirmed it had produced all responsive documents along with its

10   Patent Initial Disclosures pursuant to Patent L.R. 3-2(a).  Bright Decl. Exh. F at 4.  Baxter also

11   confirmed that the documents it produced were not limited to documents supporting Baxter's

12   contention on the first offer for sale, first sale, first public use and first public disclosure of

13   embodiment(s) of the patents in suit.  *Id.*  Upon reviewing Baxter's production at that time,

14   however, Fresenius noticed that certain documents were not identified, such as documents

15   relating to clinical trials and disclosure of the allegedly patented products at trade shows.  Bright

16   Decl. Exh. I at 2.  Subsequently, Baxter produced CD Medical and Althin documents that were

17   archived in Baxter's off-site storage.  After Baxter supplemented its interrogatory response twice

18   to identify additional documents, Fresenius once again requested that Baxter confirm its

19   identification of relevant documents was complete.  Bright Decl. Exh. N. at 3-4.  Baxter refused.

20   Bright Decl. ¶¶ 19-20.  Baxter should certify its identification and production of such documents

21   is complete, or finish its identification and production of such documents.

22       **3.      Products Allegedly Embodying the Patents in Suit (Interrogatory No. 4)**

23               This interrogatory requires Baxter to identify all products made and sold by Baxter

24   and its predecessors allegedly embodying the patents in suit.  Bright Decl. Exh. M at 9.  Baxter

25   refuses to confirm that its identification of products embodying the patents in suit is complete.

26   Bright Decl. Exh. N at 4.  This information is within Baxter's possession, custody or control and

27   at Baxter's fingertips.  The products are made and sold by Baxter and/or made and sold by

28

1    Baxter's predecessors Althin and CD Medical.  Baxter should certify its identification of

2    embodying products in response to Interrogatory No. 4 is complete or finish its identification.

3         **4.    Prior Investigations Relating to the Patents in Suit (Request Nos. 18-19 and
              28-30)**

4              The requested documents relate to any prior disputes regarding the patents in suit

5    (Request Nos. 18 and 29), any related demand letters (Request No. 19), prior investigations of

6    third-party machines in view of the patent in suit (Request No. 28), and any prior testimony by

7    the inventors named in the patents in suit (Request No. 30).  Bright Decl. Exh. D at 13-14 and 18-

8    19.

9              Baxter initially indicated there are no documents responsive to these requests.

10   Bright Decl. Exh. F at 8.  Baxter also indicated that it believed that the remaining documents

11   relating to prior investigations of third-party machines in view of the patents in suit are privileged

12   and/or attorney work product.  *Id.*  Baxter has failed to confirm there are no non-privileged and

13   non-attorney work product documents responsive to these requests, including but not limited to

14   demand letters regarding the patents in suit and communications regarding the patents in suit with

15   third-parties who make, use, offer for sale and sell hemodialysis machines.  Bright Decl. Exh. N

16   at 6.  Baxter should so certify, or produce the requested documents.

17

18        **5.    Design and Development of the Alleged Inventions (Request Nos. 7, 9, 20, 24
              and 52)**

19             The requested documents relate to the design and development of the claimed

20   invention (Request No. 51) and the identities of individuals involved in the design and

21   development (Request No. 24).  The requested documents also relate to the work in connection

22   with the examples reported in the patents in suit (Request No. 9), and the embodiments or

23   prototypes of the inventions claimed in the patents in suit (Request No. 20), such as documents

24   relating to the involvement of Ziba Design (Request No. 7), which consulted for CD Medical in

25   designing and developing an allegedly embodying product, the System 1000 (or any prototype of

26   the System 1000 or precursor to the System 1000, such as the SATRN).  Bright Decl. Exh. D at 9-

27   10, 14 and 29-30.  Baxter should produce all of the requested documents or certify in writing that

28   its production is complete.

6.    **Inventor Documents and Related European Patent Proceedings (Request Nos. 3, 6, and 31)**

The requested documents relate to inventor files (Request No. 3), related European Patent Office proceedings (Request No. 6), and communications between the inventors relating to the patented subject matter (Request No. 31). The requested documents are relevant to a number of issues, including validity, enforceability and damages, and should be within Baxter's immediate possession, custody or control. Bright Decl. Exh. D at 7-9 and 19. Baxter should produce all of the requested documents or certify in writing that its production is complete.

7.    **Grants to the Patents in Suit (Request No. 37)**

The requested documents relate to grants to the alleged inventions claimed in the patents in suit. Bright Decl. Exh. D at 21. Baxter has orally represented there are no responsive documents. Baxter should produce all of the requested documents or certify in writing that its production is complete. Bright Decl. Exh. N at 6.

8.    **FDA Documents (Request No. 53)**

The requested documents relate to Baxter's and its predecessor's submissions to the FDA regarding the products allegedly embodying the patents in suit. Bright Decl. Exh. D at 30. Baxter has failed to certify its production is complete. Bright Decl. Exh. N at 8.

9.    **Medicare and Medicaid Limitations (Request Nos. 85)**

The requested documents relate to damages, including limitations on revenue and profits on sales of products allegedly embodying the inventions claimed in the patents in suit and disposables. Bright Decl. Exh. 44-45. Medicare and/or Medicaid place limits on reimbursement for kidney dialysis treatment. This is turn limits the revenue generated in connection with kidney dialysis services, and thus places a limitation on Baxter's claim for damages. Baxter should produce all of the requested documents or certify in writing that its production is complete. Bright Decl. Exh. N at 8.

1

## VI.
### FRESENIUS MET AND CONFERRED IN AN EFFORT TO RESOLVE THE ISSUES
### RAISED BY THIS MOTION

2

3         Fresenius patiently tried to resolve this discovery dispute without Court

4 intervention. Over the course of at least a month, Fresenius repeatedly requested the information

5 and documents sought by this motion. During that month, Baxter made promises it reneged on.

6 Baxter drew out the meet and confer process by posturing after meetings, representing it would

7 "consider" Fresenius' position it was entitled to the discovery, and subsequently failing to

8 confirm or deny its willingness to provide the requested discovery for weeks, only to ultimately

9 refuse to produce the discovery.

10         Fresenius cannot wait any longer for such fundamental discovery sought by this

11 motion. The discovery is important to Fresenius' preparation for the January mediation, to

12 properly conduct deposition discovery, and to prepare for trial.

13

## VII.
### CONCLUSION

14

15         For the foregoing reasons, Fresenius respectfully requests an order compelling

Baxter to provide information and produce documents as requested herein.

16

17

Dated: November **25**, 2003             **McDERMOTT, WILL & EMERY**

18

19

                          By:_____

20

                             Christopher D. Bright

21

                             Attorneys for Plaintiffs and
                             Counterdefendants
                             **FRESENIUS MEDICAL CARE**

22

                             **HOLDINGS, INC. AND FRESENIUS**
                             **USA, INC.**

23

24 ORC 325322-4.052942.0055

25

26

27

28