IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FRESENIUS MEDICAL CARE HOLDINGS, INC., et al.,

    Plaintiffs,

v.

BAXTER INTERNATIONAL, INC., et al.,

    Defendants.

No. C 03-1431 SBA

**ORDER**

**[Docket Nos. 273, 333]**

This matter comes before the Court on Defendants Baxter International, Inc. and Baxter Healthcare Corporation's (collectively, "Defendants" or "Baxter") Motion for Partial Summary Judgment on Infringement [Docket No. 273] and Plaintiffs Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc.'s (collectively, "Plaintiffs" or "Fresenius") Opposition to Baxter's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on Non-Infringement [Docket No. 333].

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS IN PART AND DENIES IN PART Baxter's Motion for Partial Summary Judgment on Infringement [Docket No. 273] and GRANTS IN PART AND DENIES IN PART Fresenius' Cross-Motion for Summary Judgment on Non-Infringement [Docket No. 333].

## BACKGROUND

**A.    Procedural Background**

Plaintiffs and Counter-Defendants Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. (collectively "Fresenius") initiated this suit on April 4, 2003 by filing a Complaint for Declaratory Judgment of

Non-infringement and Invalidity. Fresenius cited five patents in its complaint: (1) U.S. Patent No. 5,247,434 ("'434 Patent"); (2) U.S. Patent No. 5,326,476 ("'476 Patent"); (3) U.S. Patent No. 6,284,131 B1 ("'131 Patent"); (4) U.S. Patent No. 5,486,286 ("'286 Patent"); and (5) U.S. Patent No. 5,744,027 ("'027 Patent") (collectively "patents-in-suit").

On May 14, 2003, Defendants and Counter-Plaintiffs Baxter International, Inc. and Baxter Healthcare Corporation (collectively "Baxter") answered and counterclaimed that Fresenius' hemodialysis machines infringe four of the five patents. On October 20, 2003, Baxter amended its Answer and Counterclaims to assert infringement of the '286 Patent.

Each of the patents-in-suit relates to hemodialysis machines.

A claim construction hearing was held on October 14, 2004 on certain disputed terms. After the Court issued its claim construction ruling on November 22, 2004, the parties met and conferred in order to narrow the selection of additional terms to be construed by the Court.

On January 5, 2005, Baxter filed a Motion for Partial Summary Judgment of Infringement with respect to Claim 1 of the '131 Patent and Claim 26 of the '434 Patent.

On January 6, 2005, the parties requested that the Court construe one additional claim term: "means for controlling a dialysate parameter selected from a group consisting of dialysate temperature and dialysate concentration" in Claim 26(a) of the '434 Patent. On March 1, 2005 this Court issued an order construing the disputed claim term in Claim 26(a) of the '434 patent.[1]

On February 15, 2005, Fresenius filed a Cross-Motion for Summary Judgment with respect to whether Fresenius infringed Claim 1 of the '131 Patent and Claim 26 of the '434 Patent.

**B.  Factual Background**

Hemodialysis removes blood from patients suffering from kidney failure, cleans it, extracts any excess fluid from it, and returns it to the patient. (476:123-26, 185-86, 189-90.) Hemodialysis machines perform

---

[1] The claim term "means for controlling a dialysate parameter selected from a group consisting of dialysate temperature and dialysate concentration" in Claim 26(a) of the '434 Patent was construed as follows: (1) the function of "means for controlling a dialysate parameter selected from the group consisting of dialysate temperature and dialysate concentration" was construed as controlling dialysate temperature and/or controlling dialysate concentration; (2) the corresponding structure for the control of dialysate temperature was construed as requiring a microprocessor, a heater, and a temperature-sensing device; and (3) the corresponding structure for the control of dialysate concentration was construed as requiring a microprocessor and a concentrate pump.

these functions for people whose kidneys have failed. (*See* Decl. of Richard A. Ward ("Ward Decl.") at ¶ 7.) To accomplish toxin removal, hemodialysis machines circulate the patient's blood outside his or her body, and direct it through a filter known as a "dialyser." (*Id.*) The dialyzer consists of hollow fibers bathed in a solution known as "dialysate." (*Id.*) The blood passes through the inside of the hollow fibers, and, because of the chemical composition of the blood compared to the dialysate, the toxins in the blood diffuse through the walls of the hollow fibers into the dialysate. (*Id.*) Hemodialysis machines replace the second kidney function, removal of excess water from the blood, by a process known as "ultrafiltration" (often abbreviated as "UF"). (*Id.* at ¶ 8.) Ultrafiltration works by creating a pressure difference between the inside of the hollow fibers (where the blood flows) and the outside of the hollow fibers (where the dialysate flows). (*Id.*) With greater pressure inside the fibers than outside, water in the blood is forced through the walls of the hollow fibers. (*Id.* ¶¶ 7-8.)

The patents-in-suit disclose and claim various improvements to hemodialysis machines that allow better control, operation, and monitoring of a hemodialysis treatment. (434:Abstract, 1:5-8, 476:Abstract, 1:12-15, 286:Abstract, 1:8-11, 027:Abstract, 1:8-11, and 131:Abstract, 1:12-15.) For example, they disclose integrating a touch screen interface through which treatment parameters can be set, monitored, and changed. (131.1, 434.26.)

A touch screen interface on a hemodialysis machine provides a quicker, safer, and easier way for a nurse to control the machine's operations and set treatment parameters by touching specific buttons on the screen. (2008K Op. Manual at 20, 49; 476:104-05.) Because a variety of screens can be displayed and certain buttons can be made to appear only when needed, a touch screen interface also allows an infinite number of buttons (and, consequently, functionality) without consuming valuable space on the hemodialysis machine. (2008K Op. Manual at 20, 49; 476:104-05).

Another improvement claimed by the patents-in-suit is the provision of a convenient method by which data characterizing a profile parameter can be changed through the use of bar graphs displayed on the touch screen. (131:9:17-34.) Specifically, in the preferred embodiment, profiled parameters are entered by simply tracing the desired profile curve on the touch screen. (131:9:32-34.)

The Fresenius 2008K (the "2008K") is a hemodialysis machine with a user interface that includes a

3

touch screen. (Decl. of Martin Crnkovich ("Crnkovich Decl.") at ¶ 35.). The 2008K touch screen allows the user to access different "screens" by pressing specific identified sites on the touch screen along the bottom edge called "buttons." (Decl. of Thomas Kelly ("Kelly Decl.") at DX4.) Pressing these buttons allows the user to access different screens, such as the "Home" screen and "UF Profile" screen. (*Id.*) In order to change parameters on the 2008K, the operator must first select the parameter by touching the "window" in which the parameter value is displaced. (Crnkovich Decl. at ¶ 35; Kelly Decl. at Ex. 1 (Operator's Manual at 49).) The operator must then press numbers on a keypad located below the touch screen and then touch the "Confirm" button. (Crnkovich Decl. at ¶ 35.)

The 2008K "UF Profile" screen also displays icons that allow the user to select a particular program for UF profiling. (Crnkovich Decl. at ¶ 6.) These icons allow users to choose, visually, the desired type of dialysis program. (*Id.* at ¶ 11.) Pressing any one of the icons invokes a series of computer instructions for various calculations performed inside the machine for purposes of operation during the dialysis procedure. (Crnkovich Decl. at ¶¶ 6, 11.)

The 2008K also has a Sodium Variation System ("SVS") screen. (Crnkovich Decl. at ¶ 28.) The SVS screen shows four icons across the top and an enlarged image of the icon selected by the operator. (*Id.*) The icons depict the mathematical equations used to operate the machine. (*Id.*)

Additionally, the 2008K has "Blood Pressure" and "Kt/V"[2] screens. (Crnkovich Decl. at ¶¶ 29, 30.) With respect to the Blood Pressure screen, the 2008K measures blood pressure periodically and permits the user to set alarm limits around blood pressure readouts. (Crnkovich Decl. at ¶ 30.) Changes to the blood pressure alarm limits do not cause the machine to operate differently in any way. (*Id.*) The display on the Blood Pressure screen is merely the display of the patient's blood pressure as historically monitored. (*Id.*) With respect to the Kt/V screen, there are three parameters that are displayed: (1) the number of Kt/V tests, (2) the target Kt/V, and (3) the volume. (*Id.* at ¶ 32.) Although these parameters do not vary over the course of the treatment, the Kt/V screen does show a graphical display of the actual Kt/V measurement and the projected total Kt/V for the treatment. (*Id.* at ¶ 33.) However, these measurements are not "parameters" that

---

[2] Kt/V is a measurement reflecting the efficiency of the dialysis treatment. (Crnkovich Decl. at ¶ 32.) "K" is a performance value of the artificial kidney to remove toxins from the patients in units of ml/min, "t" is time in minutes, and "V" is an approximation of the amount of water in the patient's body in milliliters. (*Id.*)

4

the user can set. (*Id.*) Instead, the screen displays the historical results and then projects how those results will carry forward over time. (*Id.*)

## LEGAL STANDARD

### A. Legal Standard For Summary Judgment in Patent Disputes

Under Federal Rule of Civil Procedure 56, a court may properly grant a motion for summary judgment if the pleadings and materials demonstrate that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989).

To withstand a motion for summary judgment, the non-movant must show that there are genuine factual issues which can only be resolved by the trier of fact. *Anderson*, 477 U.S. at 250. The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 249. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

A court may grant a summary judgment motion in a patent infringement case, as in any other case. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988). In the context of a patent infringement case, the defendant may be granted summary judgment for non-infringement where the patent-holder's proof is deficient in meeting an essential part of the legal standard for infringement. *ASQ Technology, Inc. v. Fortrend Engineering Corp.*, 1995 WL 590360, at *2 (N.D.Cal. 1995). But "in considering the [summary judgment] motion, the court must view the evidence in the most favorable light to the non-movant and draw all reasonable inferences in the non-moving party's favor." *Tillotson, Ltd. v. Walbo Corp.*, 831 F.2d 1033, 1037 (Fed. Cir. 1987). "[A] literal infringement issue is properly decided upon summary judgment when

no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device. *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998) (citing *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996).

**B.     Legal Standard of Infringement**

  **1.     Literal Infringement**

A literal infringement analysis requires two separate steps. *Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1341 (Fed. Cir. 2003); *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir.1995). First, the asserted claims must be interpreted by the court as a matter of law to determine their meaning and scope. *Markman v. Westview Instruments Inc.*, 517 U.S. 370, 372-74 (1996); *Lacks*, 322 F.3d at 1341. In the second step, the trier of fact determines whether the claims as thus construed read on the accused product. *Lacks*, 322 F.3d at 1341. To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed.Cir. 1990).

  **2.     Doctrine of Equivalents**

To prove infringement under the doctrine of equivalents, plaintiff need only prove that defendant's design performs: (1) substantially the same functions as plaintiff's design; (2) in substantially the same way; (3) to obtain the same result. *Graver Tank Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950); *Johnston*, 885 F.2d at 1581. Thus, the doctrine of equivalents only applies if the differences between the claimed and accused products are insubstantial. *ASQ Technology*, 1995 WL 590360, at *3. Infringement, both literal and under the doctrine of equivalents, is an issue of fact. *SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 376 (Fed.Cir.1983).

## ANALYSIS

**A.     Claim 1 of the '131 Patent**

The first issue in Fresenius' and Baxter's cross-motions for summary judgment is whether the 2008K infringes upon Claim 1 of Baxter's '131 patent. Claim 1 of the '131 patent provides as follows:

> 1. A hemiodialysis apparatus, comprising:
> (a) a dialysate-delivery system for supplying dialysate to a hemodialyzer, the

6

> dialysate-delivery system comprising at least one unit selected from the group consisting of (i) a dialysate-preparation unit, (ii) a dialysate-circulation unit, (iii) an ultrafiltrate-removal unit, and (iv) a dialysate-monitoring unit; and
> (b) a user/machine interface operably connected to the dialysate-delivery system, the user/machine interface comprising a touch screen that displays information corresponding to a setting of a parameter pertinent to operation of the hemodialysis apparatus, the touch screen being operable to display an indicium permitting the user to perform, using the touch screen, at least one step of a procedure for changing the setting of the parameter, and to *display a time-variable profile of the operational parameter, the profile being representable as a plot of coordinates, the plot being with respect to an ordinate of values of the operational parameter and a time-based abscissa.*

(131.1 (emphasis added).)

As a preliminary matter, it should be noted that Fresenius does not dispute that the 2008K has a "dialysate-delivery system" as claimed in element (a). Indeed, the 2008K has a concentrate pump, supply pump, ultrafiltration pump, microprocessor and conductivity cell that allow the machine to prepare, circulate, and monitor dialysate and to remove fluid from the patient. (*See* Kelly Decl. at DX2 (2008K Tech. Manual at III-2, III-11.) Fresenius also does not dispute that the user/machine interface on the 2008K machine is operably connected to the dialysate-delivery system or that it includes a touch screen that displays information corresponding to a setting of a parameter as claimed in element (b). In fact, Fresenius denotes an entire section of the 2008K interface as the "Dialysate Control section" and explains that it "contains the keys required to start and stop the flow of dialysate, the Sodium Variation System, and ultrafiltration." (Kelly Decl. at DX1 (2008K Op. Manual at 27).) Further, Fresenius does not dispute that the touch screen on the 2008K machine displays an indicium used to perform at least one step of a procedure for changing the setting of a parameter. In fact, to set the ultrafiltration profile, a nurse uses (1) a "UF Profile" button; (2) a "UF Time" button; (3) a "UF Goal" button; and (4) one of nine "profile" buttons. (Kelly Decl. at DX1 (Op. Manual at 62-63).) Fresenius *does* dispute, however, whether the 2008K literally infringes on the italicized portion of paragraph (b) above, referred to herein as the Display Element.

The Display Element contains two requirements: (1) that the touch screen be operable to display a time-variable set of data of the operational parameter mentioned earlier in the claim, and (2) that this set of data be "representable as a plot of coordinates, the plot being with respect to an ordinate of values of the operational parameter and a time-based abscissa." (131.1(b).) Baxter accuses four display screens on the Fresenius 2008K of meeting the Display Element: (1) the UF screen; (2) the SVS screen; (3) the Kt/V screen, and (4)

7

the Blood Pressure screen. (Silbert Reply Decl. at Ex. A at 21:6-16). Fresenius argues that the touch screen of the 2008K does not meet the Display Element because it does not display data "representable as a plot of coordinates." Specifically, Fresenius argues that the 2008K displays "mere icons," which do not change and which do not disclose the parameter values at particular times.

### 1. The UF Profile Screen

With respect to the UF Profile screen, the Court finds that the 2008K literally infringes upon the Display Element. As Fresenius' own witness, Dr. Richard Ward, concedes, the UF Profile screen contains nine icons that "depict in general terms . . . the pattern as to how the UF Rate will vary during the course of treatment." (Supp. Abernathy Decl. at DX23 (Ward Depo. at 55).) It is beyond dispute that these icons are, in fact, bar graphs. (*Id.* (Ward Depo. at 65) (agreeing that the "icons ***graphically*** represent the prescribed manner in which ultrafiltration is to be carried out.")(emphasis added).) It is also beyond dispute that these icons, or bar graphs, "tell[] the machine how to vary the UF Rate, [and] what pattern . . . has been selected." (*Id.* (Ward Depo. at 64).) Accordingly, it is beyond dispute that the UF Profile screen displays a graphical depiction of the relationship between ultrafiltration (*e.g.* the ordinate of values of the operational parameter) and time (*e.g.* the time-based abscissa).

Fresenius' argument that the 2008K does not infringe merely because the graphs do not display the numbers relating to the specific coordinates for each axis is unavailing. Neither the claim, nor the parties' joint constructions for the terms in the claim, require the numbers to be displayed.[3] All that is required is that the graph have one axis representing the value of the parameter (*e.g.* the individual ultrafiltration rate) and one axis representing time. While Fresenius is correct that the graph must also represent a "plot of coordinates" with actual values, Baxter has sufficiently shown that the UF Profile screen meets this standard. For example, Mr. Crnkovich has testified that each UF "program" has twelve "factors" that "tell the computer, through an algorithm, relatively how far above or below the average of those 12 factors the machine should operate during each time segment." (Crnkovich Decl. at ¶ 11.) The algorithm is precisely what is being depicted in the graph. For example, as Mr. Crnkovich explains in his Declaration:

---

[3]The parties have construed "plot of coordinates" as "a graphical depiction of the relationship between coordinates" "constructed using a Y-axis representing the values of the operational parameter and an X-axis representing time." (Abernathy Decl. at DX18 (Supp. Jt. Claim Const. Stmt. at Ex. E).)

8

> The 2008K's UF programs vary the UF rate according to computer instructions that cause the machine to operate above or below the average UF rate during certain periods of time and thus vary the rate at which water is removed over the course of the treatment. In the example above in paragraph 7, in UF program # 4, the machine will operate initially at slightly below the average UF rate, spike up above it in the next time segment, drop back down, spike up again but not quite as far, and then gradually level off.

(See Crnkovich Decl. at ¶ 8.) Again, the fluctuations that Mr. Crnkovich describes (*i.e.* slightly below the average rate at time interval one, a spike up at time interval two, a drop at time interval three, a slightly smaller spike at time interval four, and a gradual leveling off at time interval five) is exactly what the bar graph depicts. Further, Mr. Crnkovich's description of how the machine uses the algorithm to calculate the ultrafiltration rate clearly demonstrates that the bar graph corresponds to actual values. (*Id.* at ¶¶ 11, 13) (describing how the machine uses an algorithm associated with program # 4 to calculate an actual UF rate of 700 ml/hr for time segment 1).

Last, Fresenius' argument that the UF Profile screen does not infringe because the 2008K does not "know" what the UF Rate for the time segment is until it resorts to the "look-up" table at that particular time segment actually *undermines* Fresenius' position. This is due to the fact that, as described above, there is a direct correlation between the graph that is depicted on the screen and the algorithm set forth in the look-up table. Accordingly, the Court concludes that, with respect to the UF Profile screen, the 2008K infringes on Claim 1 of the '131 Patent.

**2.    The SVS, Kt/V, and Blood Pressure Screens**

With respect to the SVS, Kt/V, and Blood Pressure screens, however, Fresenius is correct that Baxter has not met its burden of proof on the issue of literal infringement. In fact, Baxter's motion for summary judgment is devoid of any meaningful argument regarding these screens, and its opposition to Fresenius' cross-motion consists of a single footnote that is not supported by any legal authorities or citations to the factual record.[4] "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would

---

[4] In fact, the footnote states in its entirety: "Fresenius, however, has provided only cursory evidence to support its assertion the Kt/V and other screens cited in Baxter's Final Infringement Contentions do not constitute time-varying parameter. This is hardly the type of dispositive evidence required to find summary judgment of non-infringement." Baxter Opp. at 11 n.10.

9

preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *see also J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1365-66 (Fed. Cir. 2001) ("Where a party 'fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial,' summary judgment must be entered against that party."). Accordingly, for the SVS, Kt/V, and Blood Pressure screens, Fresenius has shown that it is entitled to judgment in its favor on the issue of non-infringement.

Further, with respect to the Kt/V and Blood Pressure screens, it appears that the screens cannot meet the Display Element because they do not, by nature, display a time-variable profile of the operational parameter. As Fresenius points out, and Baxter does not refute, blood pressure is a measurement of patient characteristics and is not a time-varying parameter. Similarly, Kt/V is a measurement that reflects the efficiency of the dialysis treatment and does not vary over the course of the treatment. As such, neither the Kt/V or Blood Pressure screens contain a "time-based abscissa" and therefore cannot literally infringe on Claim 1 of Patent '131.

**B.     Claim 26 of the '434 Patent**

The second issue raised in the cross-motions for summary judgment is whether the Fresenius 2008K infringes upon Claim 26 of Baxter's '434 Patent. Claim 26 of the '434 Patent calls for:

> A hemodialysis machine comprising:
> (a) means for controlling the dialysate parameter selected from a group consisting of dialysate temperature and dialysate concentration, and means for delivering the dialysate to a dialysate compartment of a hemodialyzer; and
> (b) a user/machine interface operably coupled to said dialysate-delivery means, the user/machine interface comprising a touch screen adapted to display an indicium corresponding to a parameter pertinent to operation of the hemodialysis machine for performing hemodialysis and *to permit the user, by touching the indicium, to cause a change in the parameter.*

434.26 (emphasis added).

Baxter contends that there is no dispute that the 2008K meets each element in Claim 26(a) of the '434 Patent. The limitations of Claim 26(a) are: (1) a "means for controlling . . . dialysate temperature and dialysate concentration"; and (2) a "means for delivering the dialysate to a dialysate compartment of a hemodialyzer." With respect to the former, the parties agree that the corresponding structures are: a microprocessor and a

concentrate pump. (Abernathy Decl. at DX18 (Supp. Jt. Claim Const. Stmt. at Ex. A. at 2).) The 2008K has both a microprocessor and a concentrate pump. (Kelly Decl. at DX2 (2008K Tech. Manual at III-2).) With respect to the latter, the parties agree that the corresponding structure is a supply pump. The 2008K has such a pump. (Kelly Decl. at DX2 (2008K Tech. Manual at III-2).)

The parties' dispute focuses, instead, on the italicized portion of paragraph (b). This element requires a user/machine interface that includes "a touch screen adapted to display an indicium corresponding to a parameter pertinent to the operation of the hemodialysis machine for performing hemodialysis and to permit the user, by touching the indicium, to cause a change in the parameter." (*See* 434.26(b).) Fresenius argues that the 2008K does not meet this last requirement of paragraph (b) because a user does not actually use the machine's touch screen to change the parameter. Instead, the change is effected by pressing buttons on a keypad located below the touch screen. Baxter, on the other hand, argues that 2008K does literally infringe, because, regardless of whether a keypad is also used, the user must *first* touch the touch screen before effecting a change in the parameter.

At the Markman hearing, both parties agreed that the word "cause" in Claim 26 of the '434 Patent could be replaced with the phrase "to effect." *See* November 22, 2004 Order. As a result, the Court construed the word "cause" to mean "to effect." *Id.* Accordingly, the critical language of the claim requires "a touch screen adapted . . . to permit the user, by touching the indicium, to *effect* a change in the parameter." '434.26 (emphasis added). Considering the language of the claim, as construed by the Court, the Court finds that the 2008K literally infringes on Claim 26 of the '434 Patent.

The fact that the 2008K uses a keypad *in addition* to the touch screen is not enough to evade liability for literal infringement. *See Vulcan Eng. Co., Inc. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1375-76 (Fed. Cir. 2002) ("when all of the claimed features are present in the accused system, the use of additional features does not avoid infringement."); *see also A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device."). Further, while Fresenius argues that the 2008K does not infringe because "a user could touch any of the accused indicia on the touch screen of the Fresenius 2008K all day long but could never 'effect a change' in the hemodialysis parameter," the converse of this statement is also

true. Indeed, the user could punch keys on the keypad all day long, but will never effect a change in the hemodialysis parameter until he *first* touches the touch screen. Even Fresenius' own witness admits to this. (*See* Supp. Abernathy Decl. at DX24 (Crnkovich Depo. at 74-75).)

Additionally, Fresenius' argument is undermined by its own description of the 2008K set forth in the 2008K Operator's Manual. (Kelly Decl. at DX1 (Operator's Manual at 49).) The Operator's Manual states quite clearly: "To change a treatment parameter in any screen, select the parameter to change by pressing the corresponding button on the touch screen." (*Id.*) Significantly, although Fresenius tries to obfuscate the issue by arguing that the Operator's Manual is a mere piece of "marketing" material that may not be used to prove infringement, Fresenius does not argue – because it cannot – that the Operator's Manual does not accurately describe the way the machine actually works. Last, Fresenius' reading of the patent is decidedly strained, as it ignores key limitations of Claim 26. Specifically, Fresenius ignores the fact that Claim 26 includes the phrase "to permit" and the fact that the "indicium" must "correspond[] to a parameter." These phrases, however, are essential to the claim and cannot be ignored. Accordingly, the Court finds that it is clear that the claim calls for a touch screen that displays an indicium, and which permits the user to effect a change in the parameter to which the indicium corresponds. Thus, because the 2008K has a touch screen that permits the user to effect a change in the parameter by first touching the screen, the 2008K infringes on Claim 26 of the '434 Patent.

### C. Doctrine of Equivalents

As a final matter, the Court also finds that Fresenius is entitled to summary judgment on the issue of whether the 2008K infringes Claim 1 of the '131 Patent through the doctrine of equivalents. First, Baxter has not included this theory of infringement as part of its Final Infringement Contentions. Second, as Fresenius argues, and as Baxter concedes,[5] Baxter is estopped from asserting the doctrine of equivalents because the Display Element was surrendered during the patent prosecution process. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002) ("*Festo I*"); *Festo Corp. v. Shoketsu Kinsoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365 (Fed. Cir. 2003) ("*Festo II*"). The doctrine of prosecution history prevents a patentee from using equivalents to recapture subject matter relinquished during prosecution. *Id.*

---

[5]As Baxter does not provide any opposition to Fresenius' cross-motion for summary judgment on this issue, the Court concludes that the issue has been conceded.

Baxter has not produced any evidence sufficient to overcome the presumption of surrender. Accordingly, the Court grants Fresenius' motion for summary judgment with respect to the issue of non-infringement of Claim 1 of the '131 Patent under the doctrine of equivalents.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Baxter's Motion for Partial Summary Judgment on Infringement [Docket No. 273] is GRANTED IN PART AND DENIED IN PART and Fresenius' Cross-Motion for Summary Judgment on Non-Infringement [Docket No. 333] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED THAT summary judgment is GRANTED in favor of BAXTER on the issue of literal infringement of Claim 1 of the '131 Patent with respect to the UF Profile Screen. However, summary judgment is GRANTED in favor of FRESENIUS on the issue of non-infringement of Claim 1 of the '131 Patent with respect to the SVS, Kt/V, and Blood Pressure screens. Summary judgment is also GRANTED in favor of FRESENIUS on the issue of non-infringement of Claim 1 of the '131 Patent under the doctrine of equivalents.

IT IS FURTHER ORDERED THAT summary judgment is GRANTED in favor of BAXTER on the issue of literal infringement of Claim 26 of the '434 Patent.

IT IS SO ORDERED.

Dated: 9-2-05

_/s/ Saundra B. Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge