Robert A. Van Nest, SBN 84065, rav@kvn.com
Stuart L. Gasner, SBN 164675, slg@kvn.com
David J. Silbert, SBN 173128, djs@kvn.com
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Todd G. Miller, SBN 163200, miller@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Mathias W. Samuel, pro hac vice, samuel@fr.com
Fish & Richardson P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Attorneys for Plaintiffs/Counterclaim Defendants
Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FRESENIUS MEDICAL CARE HOLDINGS, INC., a New York corporation; and FRESENIUS USA, INC., a Massachusetts corporation,

Plaintiffs and Counterdefendants,

v.

BAXTER INTERNATIONAL, INC., a Delaware corporation; and BAXTER HEALTHCARE CORPORATION, a Delaware corporation,

Defendants and Counterclaimants.

Case No. C 03-01431 SBA (EDL)

**DECLARATION OF RICHARD ALAN GRIEWSKI IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY**

I, Richard Alan Griewski, declare as follows:

1. I am currently principal engineer, research and development at Terumo Medical Corporation and have been in that position since August 2005. My duties and responsibilities are to work on and supervise the development of new electromechanical medical products.

2. I graduated from the University of Michigan in 1978 with a bachelor of general science with an emphasis in chemistry, biochemistry, and biology. After graduating from the University of Michigan I worked in the ophthalmology department of the school of medicine at Wayne State University performing research on an eye disease called retinitis pigmentosa or "night blindness." In 1982 I returned to the University of Michigan at Ann Arbor and began working on a degree in electrical engineering. I graduated from the University of Michigan with a degree in electrical engineering in 1985.

3. Upon obtaining my degree in electrical engineering I began working for a company called Sarns/3M as a product development engineer.

4. The first project I worked on was the development of a heart lung machine called the Sarns 9000. I was the lead engineer for the development of the touch screen user interface on the Sarns 9000. I was also responsible for several other aspects of the user interface on the Sarns 9000, including the layout of many of the buttons (also called "membrane switches") and control knobs on the Sarns 9000. I was also in charge of the temperature monitoring system of the Sarns 9000. Attached to this declaration as Exhibit A is a Sarns 9000 brochure entitled "Touch the Vision" which shows on its cover the touch screen user interface. Attached to this declaration as Exhibit B is a Sarns 9000 brochure entitled "Focus on Your Patient" which includes details about the plasma display and the touch panel which overlays the plasma display. Attached as Exhibit C is another Sarns 9000 brochure that shows, on the third page (F298971), the main screen and subscreens on the Sarns 9000 touch screen user interface.

5. After my work on the Sarns 9000 development project I worked on the development of several additional heart lung machines. Those machines were the Sarns 8000 and

the System I. My work on those machines included leading teams of engineers responsible for the design and implementation of the user interface of the machines.

6. I am generally aware of the patent infringement litigation pending between Fresenius and Baxter involving touch screen user interfaces on hemodialysis machines (case no. C03-01431 SBA (EDL)). I was deposed in connection with the case on October 11, 2005. During the deposition I was questioned both by an attorney for Fresenius and an attorney for Baxter.

7. I have reviewed one of the patents in suit, U.S. Patent No. 6,284,131. I have also reviewed the asserted claims of the '131 patent. In particular, I have reviewed the language in part (b) of claim 1 of the '131 patent:

> (b) a user/machine interface operably connected to the dialysate-delivery system, the user/machine interface comprising a touch screen that displays information corresponding to a setting of a parameter pertinent to operation of the hemodialysis apparatus, the touch screen being operable to display an indicium permitting the user to perform, using the touch screen, at least one step of a procedure for changing the setting of the parameter, *and to display a time-variable profile of the operational parameter, the profile being representable as a plot of coordinates, the plot being with respect to an ordinate of values of the operational parameter and a time-based abscissa.*

8. I have reviewed Defendants' Motion For Partial Summary Judgment of Validity filed on March 7, 2006. Baxter's motion quotes certain portions of my deposition testimony in support of two of Baxter's arguments. The first argument is that the graphical display shown on the pulsatile flow screen of the Sarns 9000 does not satisfy the italicized claim language set forth above. The graphical display is set forth below:

Pulsatile Screen



The second argument is the more general point that the idea of using a touch screen to monitor and control hemodialysis machine parameters was a unique or innovative idea as of April 1990.

9. Regarding the first argument, I disagree with the conclusions Baxter draws from my deposition testimony. First, Baxter concludes that the graphical display on the Sarns does not have a time-based abscissa. Baxter's conclusion is incorrect. The abscissa (also referred to as the "X" axis) of the graphical display represents time. Therefore, the abscissa is time-based.

10. The Sarns System has five roller pumps, each of which could be controlled using the touch screen. When a roller pump is operated in pulsatile mode, the speed of the pump changes. Thus, the graphical display of the Sarns 9000 does depict a time-variable profile of the speed of the blood pump. The pump speed is an operational parameter of the Sarns 9000. It corresponds directly to the blood pump flow rate parameter disclosed in the '131 patent at column 8, lines 27-37.

11. I note that claim 1 of the '131 patent requires the "display" of the time-variable profile. The '131 patent makes clear that the display of the time variable profile is done on a standard Cathode Ray Tube monitor or "CRT" monitor. This is clear both from Figure 7 of the '131 patent which shows element 503 is the CRT display and from the description of the invention which makes clear that the display of data occurs on the CRT ('131 patent at 12:48-49). A CRT monitor is a type of monitor that was well known long before the 1990 priority date of the '131 patent. Prior to 1990, CRT monitors had been used for years as displays for computers in millions of homes and offices.

12. It was also well known by 1990 that graphical information could be displayed on those monitors. This would certainly have included graphical information of the type shown as an example in Figure 10 of the '131 patent. It would also have included graphical information shown on the graphical display of the Sarns pulsatile screen.

13. The touch screen is a separate component from the display. Again, this is clear from Figure 7. The touch screen is element 501. A touch screen is, essentially, nothing more than a clear piece of plastic or other material that generates a signal when a zone on the touch screen is

touched. The signal can be sent to a computer and tells the computer which zone on the touch screen was touched. The way these machines work is that the touch screen is mounted over the front of the display. After the clear touch screen is mounted over the CRT display the images on the display (whether graphical images such as profiles or buttons or text) are "mapped" to the zone on the touch screen immediately in front of the image. Users of the machine view the CRT display through the clear touch screen. While users perceive that they are touching a graphical image or button on the CRT display, in reality they are touching the touch screen which is overlaying the CRT display. By 1990, it was well known that touch screens could be used with CRT displays on various medical devices. It was also well known by 1990 that graphical images could be displayed on CRT screens.

14. Baxter seems to suggest that the graphical image we chose to display on the pulsatile screen of the Sarns 9000 was the only image we ever considered displaying. That suggestion is incorrect. During the development of the Sarns 9000 user interface we considered displaying a variety of different images in a variety of different screen designs. Attached as Exhibit D to this declaration are two examples of screens of information we considered displaying on the Sarns 9000 but, for various reasons, rejected. The screen at page F318409 is one example of the types of information we considered displaying and certainly could have displayed if we desired to do so. The box on the top left of the screen shows we considered displaying a graphic which visually depicted the oxygen flow to the patient in liters/minute. The box on the top right of the screen shows we considered displaying a graphic which visually depicted the carbon dioxide flow to the patient in milliliters/minute. The narrow box in the center of the top row shows we considered displaying graphics depicting blood flow, temperature, and pressure. We considered having each of these graphics be touch sensitive, so that when an operator pressed the graphic a submenu relating to the graphically displayed parameter would be presented to the operator.

15. The box in the center of the second row of information shows we considered displaying a graphic which represented an alarm condition. When an alarm condition occurred the graphic would have flashed in conjunction with the machine making a siren sound. We also

considered making this graphic touch sensitive, so that when an operator pressed the graphic a submenu relating to the alarm condition would be presented to the operator.

16. The box labeled "OCCLUSION" on the far right of the second row of information shows we considered having a graphical image of a slide control for operator to control the amount of occlusion of the venous line (the level of occlusion of the venous line allows the operator to control the amount of blood flow). The operator would have used his or her finger to "slide" the control knob on the slider.

17. From a technical perspective, it would have been simple and straightforward to display any of the graphical images shown on page F318409 and discussed above in paragraphs 15-17. Indeed, any combination of graphics and letters could have been displayed and used with a touch screen overlay. What drove the decision as to what information to display were customer preferences, not the technical difficulty of displaying the information.

18. I also disagree with Baxter's second and more general argument that the idea of using a touch screen to monitor and control hemodialysis machine parameters was a unique or innovative idea as of April 1990. Heart lung machines and hemodialysis machines are very similar machines in many respects. Both machines use roller pumps to circulate a patient's blood outside the body, treat the blood, and then return it to the body. Both machines have to monitor parameters associated with this process such as blood flow rate, blood pressure, and blood temperature. Both machines also require various safety systems and alarms to ensure that if something unexpected or undesired occurs during the extracorporeal circulation and treatment of the blood corrective actions can be taken quickly. Many of the same or similar machine parameters that are monitored or controlled during cardiac bypass are also monitored or controlled during hemodialysis.

19. I believe the best way to illustrate that it was well known to monitor and control these types of parameters using a touch screen user interface is to refer the Court to several documents created in the 1985-86 timeframe during the development of the Sarns 9000.

20. The first document is a one page project status report I prepared which is dated 5/16/86 and which is attached as Exhibit E. This status report is a document that summarizes the work I had done on the project over the preceding week (and sometimes over several proceeding weeks). In this report I summarized what I had seen at a technology fair I attended (ELECTRO/86) relating to displays and touch screens. I quote portions below:

> "I made excellent progress this week on the collection of information about currently available Flat Panel Display technology and Touch Screen interfaces. . . . Touch screens were plentiful on CRTs [at the technology fair] . . . We have many options from which to choose. . . I called [another engineer] and gave him as much information as he wanted about the displays and the graphics controller technology I found at the fair."

21. The second document is another one page status report I prepared which is dated 6/06/86 and which is attached as Exhibit F. In this report I discuss a demonstration that was provided to us by one vendor of flat panel displays. I quote portions below:

> "AT+T Display Technologies division brought in their Gas Plasma flat panel display unit on Monday. The reps put on an informative show. Their demo program showed us all the capabilities of the display (graphics and text). I brought the touch screen panel that Elographics loaned us. We were able to place this over the display and we saw that this panel did not significantly reduce the light output of the display
>
> . . .
>
> Jeff Kohler, the AT+T display systems applications engineer, offered to find or build an integrated unit for us. This unit would have the touch screen installed and could be used as a first pass display development tool. This seemed to good to be true!"

22. The third document, attached as Exhibit G, is the requirements and specification for the Sarns 9000 central display system. This document describes at a high level the user interface and the hardware components for the central display system. In this project this document evolved over the course of the development until the design was frozen. Exhibit G is a nearly final version of the requirements and specification for the Sarns 9000. Below are excerpts from Exhibit G:

- "The Touch Interactive Central Display Module is made up of an AT+T Gas Plasma flat panel display with a transparent touch input sensor screen, mounted on the front, covering the active display area. The display system, in combination with a graphics driver board (Emerald Computers), will display at all times, text and graphics character information critical to the patient's condition." (F318592)

- "Any location on the active display sceen can be programmed as a Touch Target." (F318595)

- "[The actual touch screen used will be a] Transparent Resistive Membrane Touch Switch Sensor Panel with the same outside dimensions of the flat panel display: 12.59" wide by 9.58" high. (Elographics, Inc.)." (F318609)

- "The Touch Screen, along with its separate controller circuit, provides the computer with the high resolution X and Y coordinates of each point touched. The software then interprets this input, and the system responds." (F318628)

23. The fourth document, attached as Exhibit H, is an informational document I prepared explaining at a high level the components and operation of the Sarns/3M flat panel display system from an "outside" perspective and an "inside" perspective.

24. There is a final point I believe is important. The Sarns 9000 design team did not attempt to obtain a patent for the idea of using a touch screen on the Sarns 9000 to change parameters of the machine. Nor did we attempt to obtain a patent which covered the graphical display of the pulsatile screen. In fact, we did not attempt to obtain a patent for any aspect of the Sarns 9000 touch screen user interface. The reason we did not attempt to obtain a patent is because we did not believe that there was anything innovative about the idea of using touch screen on the Sarns 9000. Even though we were the first company to develop a heart lung machine with a touch screen user interface, touch screens and how they could be used to operate and control medical equipment was well known when we were developing the Sarns 9000 in 1985 and 1986.

25. All of the statements in this declaration are based on my personal knowledge, unless indicated otherwise.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 21, 2006

Richard Griewski

DAPHNE POH
Notary Public, State of MI
County of Washtenaw
My Commission Expires 03-05-2009
Acting in the County of