IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESENIUS MEDICAL CARE HOLDINGS, INC., et al., | No. C 03-1431 SBA |
| Plaintiffs, | **ORDER** |
| v. | **[Docket No. 487]** |
| BAXTER INTERNATIONAL, INC., et al., | |
| Defendants. | |

This matter comes before the Court on Defendants Baxter International, Inc. and Baxter Healthcare Corporation's (collectively, "Defendants" or "Baxter") Motion to Strike the Declaration of Charles Ragsdale. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby DENIES Baxter's Motion to Strike the Declaration of Charles Ragsdale [Docket No. 487].

**BACKGROUND**

Plaintiffs and counter-defendants Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. (collectively "Fresenius") initiated this patent suit on April 4, 2003 by filing a Complaint for Declaratory Judgment of Non-infringement and Invalidity against defendants and counter-plaintiffs Baxter International, Inc. and Baxter Healthcare Corporation (collectively "Baxter"). Fresenius cited five patents in its complaint: (1) U.S. Patent No. 5,247,434 ("'434 Patent"); (2) U.S. Patent No. 5,326,476 ("'476 Patent"); (3) U.S. Patent No. 6,284,131 B1 ("'131 Patent"); (4) U.S. Patent No. 5,486,286 ("'286 Patent"); and (5) U.S. Patent No. 5,744,027 ("'027 Patent") (collectively "patents-in-suit").

On May 14, 2003, Baxter answered and counterclaimed that Fresenius' 2008H and/or 2008K hemodialysis machines infringe four of the five patents. On October 20, 2003, Baxter amended its answer and counterclaims to assert infringement of the '286 Patent.

On November 21, 2005, Fresenius disclosed to Baxter its intent to provide certain confidential information to Charles Ragsdale in connection with its prosecution of this case. Parvin Decl. at Ex. A. Fresenius also provided Baxter with a copy of Mr. Ragsdale's curriculum vitae. *Id.* As set forth in his curriculum vitae, Mr. Ragsdale has worked as an electrical engineer for approximately forty years and has been employed by Bio-Rad Laboratories in various capacities, including his present capacity as the Robotics Engineering Manager, for the past twenty years. *Id.* He holds a bachelor of science degree in electrical engineering from the University of Florida, which he received in 1966, and a masters degree in bioengineering from the University of Wyoming, which he received in 1972. *Id.* Prior to his employment with Bio-Rad Laboratories, Mr. Ragsdale was employed by Seratronics, Inc. ("Seratronics") from 1982 to 1983 and by Cordis Dow Corp. ("Cordis Dow") from 1979 to 1982.[1] *Id.* In his role as the Manager of Research Electronics at Cordis Dow, Mr. Ragsdale supervised a group of engineers and technicians in implementing substantial changes to the then-existing version of a hemodialysis system known as the Seratron System.[2] Parvin Decl. at Ex. B (Ragsdale Expert Report). Mr. Ragsdale's responsibilities included conceiving and implementing the Patient Recoding and Monitoring System ("PRSM"). *Id.* Mr. Ragsdale also designed the key computer hardware found in the Seratron System. *Id.* Mr. Ragsdale is the named inventor on twenty issued United States Patents, three pending United States Patent applications, and twenty-five issued foreign patents. *Id.*

On December 22, 2005, the Court-ordered deadline for filing expert reports, Fresenius submitted the Opening Expert Witness Report of Charles Ragsdale Regarding the Invalidity of Certain Claims of U.S. Patent No. 5,744,027. Parvin Decl. at Ex. B (Ragsdale Expert Report). In his report, Mr. Ragsdale provides: (1) a background and review of the relevant technology and alleged prior art, *i.e.*, the Seratron

---

[1] Seratronics was formed out of Cordis Dow in 1982. Parvin Decl. at Ex. B.

[2] The "Seratron System" is comprised of the Cordis Dow Seratron™ Dialysis Control System ("Seratron Dialysis System"), the Seratron™ Modeling Programmer ("Programmer"), and the Seratron™ Patient Recording and Monitoring System ("PRSM"). Parvin Decl. at Ex. B.

System; (2) a comparison of the prior art to the asserted claims of the '027 Patent; and (3) and a claim chart comparing the prior art to the asserted claims of the '027 Patent.

On February 20, 2006, Baxter deposed Mr. Ragsdale.

On March 6, 2006, Fresenius filed its Motion for Summary Judgment of Invalidity of the Asserted Claims of the '476 and '027 Patents and the accompanying Declaration of Charles Ragsdale In Support of Fresenius' Motion for Summary Judgment of Invalidity of the Asserted Claims of U.S. Patent Nos. 5,326,476 and 5,744,027 (referred to herein as the "Ragsdale Declaration").

On March 21, 2006, Baxter filed the instant Motion to Strike the Declaration of Charles Ragsdale ("Motion to Strike"). Baxter's Motion to Strike is purportedly premised on Federal Rule of Evidence 702 and Federal Rules of Civil Procedure 56(e) and 26.

## LEGAL STANDARD

**A.     Federal Rule of Civil Procedure 26**

Pursuant to Rule 26(a)(2), a party is required to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2). Further, under Rule 26(a)(2)(B):

> [The] disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

**B.     Federal Rule of Evidence 702**

The admissibility of expert testimony is governed by the Federal Rule of Evidence, primarily Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Pursuant to Rule 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony

3

> is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Under *Daubert*, the district court acts as a "gatekeeper," excluding "junk science" that does not meet the standards of reliability required under Rule 702. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1229-30 (9th Cir. 1998). The court accomplishes this goal through a preliminary determination that the proffered evidence is both relevant and reliable. *Daubert*, 509 U.S. at 589-95. Scientific evidence is deemed reliable if the principles and methodology used by the expert proffering it are grounded in the methods of science. *Daubert*, 509 U.S. at 592 ("The proponent need not prove that the expert's testimony is correct, but that the methodology used by the expert was proper."). A trial court has broad latitude in determining whether an expert's testimony is reliable and also in deciding how to determine the testimony's reliability. *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.2000). However, the Court's inquiry must "focus[] solely on [the] principles and methodology, not on the conclusions that they generate." *United States v. Prime*, 431 F.3d 1147, 1153 (9th Cir. 2005). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir.2004) (citations omitted).

**C.     Federal Rule of Civil Procedure 56(e)**

Federal Rule of Civil Procedure 56(e) governs the submission of affidavits proffered in support of, and in opposition to, a motion for summary judgment. In particular, Rule 56(e) provides that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

4

## ANALYSIS

In its Motion to Strike, Baxter contends that the Ragsdale Declaration must be stricken because: (1) a number of Mr. Ragsdale's opinions are unreliable under Federal Rule of Evidence 702; (2) portions of the Ragsdale Declaration are not based on his personal knowledge and therefore violate Federal Rule of Civil Procedure 56(e); (3) some of Mr. Ragsdale's statements contradict his deposition testimony; and (4) the Ragsdale Declaration offers "new" opinions in violation of Rule 26(a)(2)(B).

**A.     Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 56(e)**

The Court first notes that, although the Motion to Strike is purportedly premised on Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 56(e), Baxter's *entire* discussion of Rule 702 and Rule 56(e), and the applicability of those rules to Fresenius' expert, is limited to *one paragraph* of its thirteen-page Motion. This paragraph begins with the statement: "Accordingly, these declared opinions must be stricken as merely [*sic*] conclusions unsupported by his personal knowledge, or the facts." *See* Mot. at 9. The rest of the paragraph consists of a string cite to three published and four *un*published cases that are completely inapposite to the case at bar.[3]

For example, in *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994), the first case cited by Baxter in its brief, the Ninth Circuit affirmed the district court's exclusion of expert testimony regarding toxic chemical injury causation because the district court had expressly found that: (1) the toxicology discussion in the experts' affidavits omitted reference to the majority of the medical conditions alleged by the plaintiffs; (2) neither expert had made any effort to rule out other possible causes for the plaintiffs' alleged injuries; (3) both experts admitted that they had not read the relevant medical literature before forming their opinions; (4) both experts admitted that they had not read or considered relevant medical and personal records before making their diagnoses. *Id.* at 502.

By way of another example, in *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700-701 (9th Cir. 1981), the only other Ninth Circuit case Baxter relies upon in its Motion, the Ninth Circuit affirmed the district court's exclusion of two expert affidavits because it was *admitted* that the experts' opinions were based solely on the experts' interpretation of the facts presented in the opposing

---

[3]Conspicuously absent from Baxter's Motion is any citation to *Daubert*.

6

party's affidavits and were devoid of any of their own independent facts. *See id.* at 699 ("And when the court remarked that the mere assertion that the machines are electronic point-makers is a conclusion, and asked, 'where in the affidavit(s) do they present facts[?] . . . counsel's reply was, 'Well, we don't have a specific description of exactly why they are point-makers.'"). In fact, due to the purported experts' admitted lack of familiarity with the machines at issue, the Ninth Circuit concluded that the affidavits consisted solely of pure "pettifoggery" or "quibble." *Id.* at 699. The Ninth Circuit also expressly noted that the experts' affidavits were flatly contradicted by the pictures of the machines themselves. *Id.* at 701 (noting that "a court is not compelled to give weight to an allegation that is incontrovertibly demonstrated to be false.").

Similarly, in *Digital Control Incorporated v. McLaughlin Mfg. Co., Inc.*, 242 F. Supp. 2d 1000, 1007 (W.D. Wash. 2002), the expert affidavit was stricken because the relevant testimony consisted of one solitary, unsupported statement that was quite obviously contradicted by the patent specification. *Id.* at 1007 (noting that the expert's affidavit was premised solely on the statement: "Based on my review of the specification of the '025 patent, nowhere can I find any description that would teach a skilled person how to [use] the receiver described in the '025 patent").[4]

In contrast, here, it is undisputed that Mr. Ragsdale: (1) has forty years of experience in electrical engineering; (2) was employed by Cordis Dow, the company initially responsible for creating the Seratron System; (3) was personally responsible for supervising the group of engineers and technicians who developed the Seratron System; (4) was personally involved in the conception and development of the machine; and (5) is the named inventor on twenty issued United States patents. In sum, Mr. Ragsdale is providing testimony regarding the very system that he helped invent. Tellingly, and perhaps

---

[4] As for the unpublished cases that Baxter cites in its brief, while it is true that the cases support the general proposition that affidavits lacking in factual support must be stricken, it is unclear why Baxter believes that these cases are persuasive authorities, as the opinions are completely lacking in either analogous facts or pertinent analysis. *See FTC v. H.N. Singer, Inc.*, 1982 U.S. Dist. LEXIS 15622 (N.D. Cal. 1982) (striking a declaration "pervaded by hearsay, contradiction of admissions, belief stated without providing a basis therefor (such as declarations of others), *and* a failure to provide sworn or certified copies of all papers referred to in the declaration") (emphasis added); *Brand Management, Inc. v. Mernard, Inc.*, 1998 U.S. App. LEXIS 493 (Fed. Cir. 1998) (striking deposition testimony that consisted only of expert's bare conclusions); *Rome v. Galilean Seafood's, Inc.*, 1998 U.S. App. LEXIS 20860 (Fed. Cir. 1998) (striking declaration due to absence of evidence that declarant had actually observed the facts alleged in his declaration); *Halo Management, LLC v. Interland,* Inc., 2004 U.S. Dist. LEXIS 15563 (N.D. Cal. 2004) (striking declarations containing only legal conclusions).

in light of these highly relevant, undisputed facts, Baxter's Motion to Strike does not provide the Court with *any* analysis as to why Mr. Ragsdale is unqualified to provide expert testimony concerning the Seratron System or the validity of the '027 Patent. In fact, Baxter *concedes* in its Reply brief that Mr. Ragsdale is qualified by clarifying that Baxter is not seeking to strike Mr. Ragsdale's Expert Report pursuant to Rule 702. *See* Reply at 2. Baxter also fails to provide the Court with any argument showing that the methodology Mr. Ragsdale has employed in reaching his conclusions is unreliable.

In fact, Baxter's suggestion that Mr. Ragsdale does not has sufficient knowledge regarding the Seratron System is decidedly strained. Contrary to Baxter's assertions, Mr. Ragsdale is a qualified expert due to his personal knowledge of the Seratron System and his skill and experience in the electrical engineering field. Further, Mr. Ragsdale's testimony is undisputedly relevant and provides the type of scientific, technical, or other specialized knowledge that will assist the trier of fact in determining whether the Seratron System invalidates the '027 Patent. Accordingly, Baxter's Motion to Strike, to the extent that it is premised on Rule 702, necessarily fails. For the same reasons, to the extent that Baxter's Motion is premised on Federal Rule of Civil Procedure 56(e), it is DENIED. *See Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985) (holding that an expert opinion is admissible "if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not.").

### B. Deposition Testimony

In fact, considering the lack of any credible argument showing that Mr. Ragsdale's testimony fails to meet the applicable *Daubert* standard, it is quite clear to the Court that Baxter's Motion to Strike is actually premised on Baxter's assertion that this Court must strike the Ragsdale Declaration simply because Mr. Ragsdale has, in Baxter's opinion, "renege[d] on his deposition testimony." With regard to this particular issue, however, Baxter's Motion is inconsistent with established law.

Although Baxter is correct that a party generally cannot create an issue of fact merely by submitting an affidavit that contradicts his prior deposition testimony, *see Foster v. Arcata Assocs.*, 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied*, 475 U.S. 1048 (1986) and *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543-44 (9th Cir.1975), the Ninth Circuit has held that the *Foster-Radobenko*

doctrine must be applied with caution.[5] *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991). Indeed, although Baxter fails to bring this fact to the Court's attention, in *Kennedy*, the Ninth Circuit expressly stated that "the *Foster-Radobenko* rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." *Id.* Instead, the *Foster-Radobenko* rule is intended to prevent parties who are *opposing* summary judgment from offering "sham" testimony that flatly contradicts earlier testimony in an attempt to "create" an issue of fact. *Id.* at 266-67; *see also Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir. 1977), *cert denied*, *Indiana v. Choudhry*, 434 U.S. 997 (1977) (holding that summary judgment was improper even though party's testimony was "not a paradigm of cogency or persuasiveness," since it was not a "transparent sham").

The law is also clear that contradictory testimony is not a sham if it merely "elaborat[es] upon, explain[s] or clarif[ies] prior testimony." *Messick v. Horizon Indust., Inc.*, 62 F.3d 1227, 1231 (9th Cir.1995). Further, contradictory testimony from a witness is not a sham where it appears that the witness was confused at the time of the earlier testimony, that he lacked the information necessary to supply accurate testimony, or where the prior deposition testimony was equivocal. *Kennedy*, 952 F.2d at 266 (citing *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985)); *see also Lane v. Celotex*, 782 F.2d 1526, 1532 (7th Cir. 1986) ("The earlier deposition testimony must consist of 'clear answers to unambiguous questions which negate the existence of any genuine issue of material fact.'").

Thus, under *Kennedy*, before a district court can disregard contradictory testimony, the court must make a specific finding of fact that the testimony is a "sham." *Id.* at 267. Baxter has not provided the Court with any basis for making such a finding. Instead, Baxter directs the Court's attention to several excerpts from Mr. Ragsdale's deposition that Baxter's counsel contends are contradictory. With respect to these excerpts, however, Fresenius argues that the deposition testimony does not contradict the Ragsdale Declaration and that the alleged "contradiction" results from Baxter's own misunderstanding of the relevant testimony. However, even assuming, *arguendo*, that Mr. Ragsdale has,

---

[5]The Eleventh Circuit has stressed that a court must exercise even greater caution when, as here, it is asked to strike the declaration of a non-party witness. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1530-31 (11th Cir. 1986); *but see Adelman-Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517 (7th Cir. 1988) (excluding contradictory expert affidavit).

in fact, contradicted himself, it is quite apparent that Mr. Ragsdale's deposition testimony was far from unequivocal. In fact, Mr. Ragsdale stated on several times that he would "have to go back and look at that part of the system," or "would like to reconfirm." Gemmell Decl. at Ex. B (Ragsdale Depo. at 139:16-24, 153:6-8, 157:14-20). Moreover, as Baxter concedes in a footnote to its Motion, any inconsistencies, or lapses in memory during a deposition, are issues pertaining to credibility and do not serve as a basis for striking a subsequently filed declaration.[6] *See* Mot. at 11 n. 12.

Moreover, Baxter does not – and cannot – dispute that the opinions set forth in the Ragsdale Declaration were also set forth in his Expert Report in great detail. The fact that the Ragsdale Declaration is consistent with his Expert Report, which was authored prior to Mr. Ragsdale's deposition, substantially reduces the likelihood that Mr. Ragsdale has "fabricated" a sham declaration in order to help Fresenius' survive summary judgment and lends further support to Fresenius' position that the declaration is admissible. *See, e.g., Tippens*, 805 F.2d at 954 n. 6 ("[I]t is much less likely that an affidavit which precedes a weak deposition is . . . a transparent sham than is a discrediting affidavit which is filed after a weak deposition which failed."). Similarly, the fact that Fresenius is relying on a declaration prepared by a disinterested witness in order to *support* its own Motion for Summary Judgment, instead of relying on the declaration to create a dispute of fact *defeating* summary judgment, is relevant to this inquiry and further negates a finding that the Ragsdale Declaration is a sham. *See, e.g., Kennedy*, 952 F.2d at 266 (noting that *Radobenko* and its progeny are intended to prevent a party from "creating" an issue of fact to preclude summary judgment). Indeed, as stated by the Eleventh Circuit in *Lane*:

> Here there is little chance of sham factual issues. Ring is a disinterested witness and it is our view that any inconsistency in his testimony is more likely the result of his faulty memory than a predisposition to lie. Thus, while a

---

[6] Again, as Fresenius correctly notes in its Opposition, if "faulty" memory is the basis for the Motion to Strike, this argument should have been confined to Baxter's opposition to Fresenius' summary judgment motion because it pertains to credibility and therefore creates an issue of fact. *See Tippens v. Celotex Corp*, 805 F.2d 949, 953-54 (11th Cir. 1986) (holding that "[a]n opposing party's affidavit should be considered although it differs from or varies from his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility."). As stated in *Tippens*, "Variations in a witness' testimony and any failure of memory through the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all . . . [such] [i]ssues . . . are questions of fact which require resolution by the trier of fact."

10

> district court may find that a *party's* contradictory affidavit constitutes a sham, . . . we would be unable, absent great trepidation, to affirm a similar finding with respect to a disinterested witness' contradictory affidavit.

782 F.2d at 1530-31 (emphasis in original).

Accordingly, Baxter has not persuasively demonstrated that the Ragsdale Declaration is a "sham."

**C.     Baxter's Additional Reasons to Strike**

To conclude its Motion, Baxter asserts three additional bases for striking the Ragsdale Declaration: (1) that the Ragsdale Declaration must be stricken because Mr. Ragsdale fails to explain the basis for his "obviousness" opinion[7]; (2) that Mr. Ragsdale relies on inadmissible evidence; and (3) that Mr. Ragsdale improperly opines on "new" evidence in violation of Rule 26(a)(2)(B).[8] None of these arguments has merit.

First, as Fresenius makes clear in its Opposition brief, Mr. Ragsdale is not providing an expert opinion on obviousness. Further, considering the fact that Mr. Ragsdale was personally responsible for the development of the Seratron System, Baxter's assertion that Mr. Ragsdale "lacks personal knowledge" to state that it "would have required only routine development to replace the membranes of the prior art Seratron System with a display and touch screen overlay" strains credibility.

Second, Baxter's unconvincing argument that Mr. Ragsdale is relying on "inadmissible" evidence is already the basis for Baxter's Motion to Strike Exhibits 1 and 13 to Fresenius' Motion for Summary Judgment of Invalidity of the Asserted Claims of U.S. Patent Nos. 5,326,476 and 5,744, 027. However, as stated in the Order addressing this Motion, Fresenius has met its burden of proving that the PRSM Specification is both authentic and admissible. Accordingly, this argument does not provide a valid

---

[7]Specifically, Baxter takes issue with the following statement, which is found at paragraph 55 of the Ragsdale Declaration: "I believe that it would have required only routine development to replace the membranes of the prior art Seratron System with a display and touch screen overlay." *See* Gemmell Decl. at Ex. C (Ragsdale Decl. at ¶ 55).

[8]With respect to this argument, Baxter asserts that the Ragsdale Declaration "points to new 'evidence' in the form of a source code (presumably to the PRSM) to support his assertion that the Seratron system anticipates the battery backup limitation of Claims 4 and 6 of the '027 Patent." Baxter further contends that Mr. Ragsdale's statement "that the claims [of the '027 Patent] are invalid based on 'the rules of claim construction as I understand them' . . . and 'as these claims have been interpreted by the Court' . . . contradict his contention in his expert report that 'neither of the Court's [Claim Construction] Orders gave a meaning to any of the claim terms of the '027 patent.'"

11

reason for striking the Ragsdale Declaration.

Third, Baxter has not persuasively shown that Mr. Ragsdale is offering "new" opinions in his Declaration based on "new evidence" that was not disclosed to Baxter by the relevant deadline. To the contrary, as Fresenius points out in its Opposition, Mr. Ragsdale's opinion regarding the battery backup limitation of Claims 4 and 6 of the '027 Patent were fully set forth in his Expert Report. Further, and more importantly, Baxter had the source code prior to Mr. Ragsdale's deposition, and had a full opportunity to depose Mr. Ragsdale with regard to the basis of his opinions during the deposition. In fact, it is apparent from the deposition transcript that Baxter was aware, at the time of Mr. Ragsdale's deposition, that Mr. Ragsdale was relying on the source code in forming his opinions. *See* Gemmell Decl. at Ex. B (Ragsdale Depo. at 137:23-138:6) (Q: "And in particular you – on page 32 of Exhibit 1, the middle paragraph, you state that in addition to reviewing the various Seratron system manuals and other technical data and using your personal knowledge of these systems, you also reviewed the Seratron system source code from the period of 1980 to 1983"); *see also id.* at Ex. B (Ragsdale Depo. at 156:19-22) (Q: "Okay. I will move to the source code here in a minute or two. Don't worry. I'm not going to pull out five boxes, Todd, and go through them." Mr Miller: "But I would."); *see also id.* at Ex. B (Ragsdale Depo. at 162:9-21) (Q: "Let's turn real quickly to source code. I'll only take a couple minutes on that, and then we can take a break . . . You reviewed the source code in preparing your opinion, correct?"  A: "Correct."  Q: "And you have relied on the source code disclosures in forming your opinions, correct?"  A: "I've used the source code to help form the opinion."  Q: "Okay.").

Finally, Baxter's assertion that Mr. Ragsdale has provided a new "opinion" and contradicted his Expert Report by stating "that the claims [of the '027 Patent] are invalid based on 'the rules of claim construction as I understand them' . . . and 'as these claims have been interpreted by the Court'" is totally unfounded. To the contrary, in his Declaration, Mr. Ragsdale clearly acknowledges that certain claims have not been construed by the Court, and that the rules of claim construction apply to those claims. *See* Gemmell Decl. at Ex. C (Ragsdale Decl. at ¶ 21).

Thus, for all of the reasons set forth above, Baxter's Motion to Strike is DENIED.

///

///

12

**CONCLUSION**

IT IS HEREBY ORDERED THAT Baxter's Motion to Strike the Declaration of Charles Ragsdale [Docket No. 487] is DENIED.

IT IS SO ORDERED.

Dated: 4/15/06

SAUNDRA BROWN ARMSTRONG
United States District Judge