Juanita R. Brooks, SBN 75934, brooks@fr.com
Todd G. Miller, SBN 163200, miller@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099

Mathias W. Samuel, pro hac vice, samuel@fr.com
Thomas S. McClenahan, SBN 203204, mcclenahan@fr.com
Fish & Richardson P.C.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

Limin Zheng, SBN 226875, zheng@fr.com
S. Kameron Parvin, SBN 232349, parvin@fr.com
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94053
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Plaintiffs/Counterclaim Defendants
Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FRESENIUS MEDICAL CARE HOLDINGS, INC., a New York corporation; and FRESENIUS USA, INC., a Massachusetts corporation,<br><br>Plaintiffs and Counterdefendants,<br><br>v.<br><br>BAXTER INTERNATIONAL, INC., a Delaware corporation; and BAXTER HEALTHCARE CORPORATION, a Delaware corporation,<br><br>Defendants and Counterclaimants. | Case No. C 03-01431 SBA (EDL)<br><br>**ORDER DENYING BAXTER'S MOTION *IN LIMINE* NO. 4 PRECLUDING EVIDENCE AND ARGUMENT REGARDING PATENT DEATHS AND PRODUCT RECALLS** |

1    This matter comes before the Court on Baxter's Motion *in Limine* No. 4 to preclude
2  evidence and argument regarding patient deaths and product recalls.  Having considered the
3  submissions and arguments of the parties, and the applicable facts and law, the Court hereby
4  DENIES Baxter's Motion.

5    The "patient death and product recall" evidence Baxter seeks to preclude includes
6  numerous recalls of both hemodialysis machines, including System 1000, and disposables and
7  other components, including dialyzers and bloodlines.[1]  This evidence is relevant to both the
8  calculation of a reasonable royalty and the validity of the patents-in-suit, especially in view of
9  Baxter's heavy reliance on Fresenius's commercial success in the market.

10   With respect to evidence of machine recalls, Baxter offers no argument as to why this
11 evidence should be precluded.  Fresenius contends that this evidence is highly relevant to the
12 calculation of a reasonable royalty under the *Georgia Pacific* framework.  The Court agrees.

13   First, commercial success of the product allegedly made under the patented technology is
14 one of the important factors to be considered in determining a reasonable royalty.  *Georgia-Pacific*
15 *Corp. v. U.S. Plywood Co.*, 318 F. Supp. 1116, 1120 (D.C.N.Y. 1970) ("8. The established
16 profitability of the product made under the patent; its commercial success; and its current
17 popularity.").  In this case, Baxter argues that Fresenius's commercial success with its
18 hemodialysis products was due to the incorporation of a touch screen in the 2008K machines and
19 therefore would lead to a higher royalty rate in the hypothetical negotiation.  Fresenius counters
20 that evidence of Baxter's repeated recalls demonstrates otherwise.  Fresenius argues that the
21 multiple recalls have severely affected Baxter's reputation in the marketplace and has contributed
22 significantly to Fresenius's commercial success with its hemodialysis products, including the
23 2008K machines.  Evidence of machine recalls tends to show that Fresenius's success in selling its
24 2008K machines was due to factors such as perceived differential in hemodialysis product quality
25 between Baxter and Fresenius, rather than the patented technology.

---

[1] While Baxter phrased the evidence at issue as evidence regarding "patient deaths and product recalls," the patient death evidence is tangential to the recall evidence.

1    Second, a key part of the reasonable royalty determination under *Georgia Pacific* is
2 whether the accused infringer had acceptable non-infringing alternatives available to it at the time
3 of the hypothetical negotiation. *Id.* at 1120 ("9. The utility and advantages of the patent property
4 over the old modes or devices, if any, that had been used for working out similar results."). In this
5 case, Fresenius contends that its 2008H hemodialysis machine — which did not use a touch screen
6 — was such an alternative, and that had Althin or Baxter demanded an excessive royalty,
7 Fresenius would have continued selling the 2008H machine. Baxter argues, however, that the
8 2008H machine was not an acceptable alternative because it lacked a touch screen. To rebut this
9 argument, Fresenius contends that if Fresenius could not sell the 2008K machines, customers
10 facing the choice between the safe, reliable 2008H machines and the less than reliable
11 Althin/Baxter machines would have chosen the 2008H machines, notwithstanding its lack of a
12 touch screen. To determine whether the 2008H machine is an acceptable non-infringing
13 alternative as Fresenius claims, the jury needs to be presented with a complete and accurate view
14 of the marketplace. Evidence of recalls of Baxter's hemodialysis products forms part of the
15 market reality that should be considered by the jury.[2]

16    Third, evidence of product recalls is relevant to the terms of the hypothetical license. *Id.* at
17 1120 ("7. The duration of the patent and the term of the license."). License agreements have
18 historically included provisions for adjusting royalty rates. Quality control problems of a
19 competitor-licensor is likely to lead the licensee to re-negotiate for a lower royalty rate over the
20 term of the hypothetical license.

---

[2] Relatedly, Baxter bases its over $80 million royalty damages claim on the theory that if Fresenius could not add a touch screen to its machines, it would suffer severe market contraction and lost sales; and to avoid this loss of sales, Fresenius would have paid a very high royalty. Baxter's theory assumes that without a touch screen product, Fresenius would lose sales to Althin/Baxter's products with a touch screen. Fresenius argues, however, even without a touch screen product, it would not have suffered any meaningful market contraction because customers would have preferred the proven reliability of Fresenius's machines — even without a touch screen — to the Althin/Baxter products. Again, to resolve the dispute, the jury needs to be presented with a full and accurate view of the marketplace.

1      Fourth, evidence of product recalls is also relevant to the determination of the commercial

2 relationship between Fresenius and Althin, Baxter's predecessor, or Baxter, which is another

3 factor to be considered in calculating a reasonable royalty. *Id.* at 1120 ("5. The commercial

4 relationship between the licensor and licensee, such as, whether they are competitors in the same

5 territory in the same line of business; or whether they are inventor and promoter."). The quality

6 problems Baxter faced were largely inherited from its predecessor Althin. Evidence of recalls

7 tends to show that customers view Fresenius's machines as superior than Althin's or Baxter's

8 machines. In such a case, the degree to which Althin's or Baxter's and Fresenius' machines (and

9 disposables) compete is reduced, which in turn would tend to reduce the royalty rate in the

10 hypothetical negotiation.

11      Moreover, Baxter has relied heavily on Fresenius's commercial success as "secondary

12 considerations" evidence in countering Fresenius's invalidity contention based on obviousness.

13 "For objective evidence to be accorded substantial weight, its proponent must establish a nexus

14 between the evidence and the merits of the claimed invention." *In re GPAC, Inc.*, 57 F.3d 1573,

15 1580 (Fed. Cir. 1995). Evidence of recalls is relevant to a determination of whether there is the

16 requisite nexus between Fresenius's commercial success and the patented technology. In the

17 hemodialysis market, sales for products are primarily driven by factors such as vendors'

18 reputations for quality, service, machine reliability. [Kelleher Decl. (Dkt. No. 447), Ex. 1, at

19 ¶¶ 19, 137-138, 141-142 & n.84.] Evidence of product recalls tends to show that Fresenius's

20 commercial success in the market was due to its reputation in product quality and reliability, rather

21 than the patented technology, which in turn will support a finding that there is a lack of the

22 requisite nexus between Baxter's alleged secondary considerations evidence and the merits of the

23 claimed invention.

24      With respect to the evidence of recalls of dialyzers and bloodlines, Baxter argues that such

25 evidence should be excluded because these products are "not even at issue." However, it is

26 Baxter, not Fresenius, who has chosen to make these products an issue. Baxter's damages claim is

27 based in part on Fresenius's sales of unpatented "disposables, spare parts, and service," including

28

4      [PROPOSED] ORDER DENYING BAXTER'S MOTION
*IN LIMINE* NO. 4 PRECLUDING EVID. AND ARG. RE
PATIENT DEATHS AND PRODUCT RECALLSS
Case No. C 03-01431 SBA (EDL)

1  dialyzers, under the theory that Fresenius was able to sell these products as "convoyed" products
2  along with the accused machines.  Fresenius contends that customers purchased its dialyzers
3  because of their superior quality, not because the customers may also have purchased a 2008K
4  machine at some point in time.  Evidence of recalls of Althin/Baxter's disposables and other
5  hemodialysis components tends to show that customers were seeking out Fresenius's products
6  based on the fact that they were superior to the competition, not because Fresenius introduced a
7  machine with a touch screen, and thus is relevant to the calculation of damages.

8       "All relevant evidence is admissible, except as otherwise provided by the Constitution of
9  the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme
10 Court pursuant to statutory authority."  Fed. R. Evid. 402.  Baxter invokes Federal Rule of
11 Evidence 403 as a reason to exclude this evidence, claiming that the evidence will be prejudicial to
12 Baxter and confusing to the jury.  The Court, however, finds that Federal Rule of Evidence 403
13 does not warrant the preclusion of the evidence.

14       With respect to the evidence of machine recalls, Baxter does not, and cannot make any
15 argument as to why the relevant evidence should nonetheless be excluded.  Baxter bases its
16 prejudice claim largely on the allegedly "inflammatory" patient death evidence.  This argument
17 does not apply to evidence of machine recalls because none of the machine recalls involved
18 patient deaths.

19       With respect to the evidence of recalls of dialyzers and bloodlines, the probative value of
20 the evidence substantially outweighs any marginal prejudice to Baxter or supposed danger of jury
21 confusion.

22       Baxter's reliance on products liability cases is misplaced.  In the cases relied on by Baxter,
23 before reaching the conclusion that the probative value of the recall evidence was substantially
24 outweighed by the Rule 403 dangers, the courts first found that the recalls arising out of unrelated
25 defects had no relevance to the products liability claims at issue.  *Olson v. Ford Motor Company*,
26 410 F. Supp. 2d 869, 873-74 (D.N.D. 2006); *Verzwyvelt v. St. Paul Fire & Marine Insurance*
27 *Company*, 175 F. Supp. 2d 881, 888 (W.D. La. 2001).  To the contrary, in the present case, as

28

1   discussed above, evidence of repeated recalls of Baxter's products are highly relevant to both the

2   validity of the patents-in-suit and the computation of a reasonable royalty should Fresenius be

3   found to have infringed any valid and enforceable claim of the patents-in-suit.

4   Moreover, the likelihood of unfair prejudice and jury confusion existed in *Olson* and

5   *Verzwyvelt* is absent in this case.  In products liability cases, because of the likelihood for spillover

6   between recalls and inference of fault, there is a real danger that unfair prejudice and jury

7   confusion will arise if the plaintiff is permitted to parade before the jury evidence of a product

8   recall of a different product.  *See Verzwyvelt*, 175 F. Supp. 2d at 888-89.  However, in this patent

9   case, such danger does not exist.  Even if there is any likelihood for spillover between recalls and

10  inference of fault, Baxter's liability is not at issue and thus will not be prejudiced.   In addition,

11  prejudice is unlikely to arise in this case because both Baxter and Fresenius are commercial

12  entities.  *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751, 758 (3d Cir. 1976) ("It is

13  doubtful that there would be any prejudice because the parties were both commercial entities[.]").

14  As noted by the court in *United States v. Bainbridge Management, L.P.*, Case Nos. 01 CR

15  469-1, 01 CR 469-6, 2002 WL 31006135, at *1 (N.D. Ill. Sept. 5, 2002), a case relied on by

16  Baxter, evidence is excluded on a motion in limine "only if the evidence is clearly inadmissible for

17  any purpose."[3]  "In weighing the probative value of evidence against the dangers and

18  considerations enumerated in Rule 403, the general rule is that the balance should be struck in

19  favor of admission." *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980); *see also United*

20  *States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (noting that Rule 403 is "an extraordinary

21  remedy which the district court should invoke sparingly, and [t]he balance . . . should be struck in

---

[3]  *Bainbridge* is also distinguishable from the present case in that the evidence excluded in *Bainbridge* had no probative value.  In *Bainbridge*, the defendants were indicted with mail and wire fraud, health care fraud, and racketeering charges.  The crux of the indictment involved a kickback and bribery scheme. Physicians allegedly used unnecessary medical procedures to generate fees and obtain funds from Medicare, Medicaid, and private insurers.  In excluding the evidence of the death of two patients, allegedly the results of two such unnecessary procedures, the court found that the evidence was not probative of either the necessity of the medical procedures performed or the elements of wire and mail fraud, racketeering, or health care fraud. *Bainbridge*, 2002 WL 31006135, at *2.

1  favor of admissibility"). Even in the context of products liability actions, where recall evidence is
2  relevant to a central issue in a case, admission is warranted. *See, e.g.*, *Snodgrass v. Ford Motor
3  Co.*, Case No. Civ 96-1814(JBS), 2002 WL 485688, at *3-*6  (D.N.J. March 28, 2002) (denying
4  motion to preclude evidence of safety recall even though it was conceded that the evidence was
5  prejudicial to Ford because the evidence was relevant to issues central to the case).

6  In this case, evidence relating to the quality and reliability of Baxter's hemodialysis
7  products is highly relevant to both the calculation of a reasonable royalty and Baxter's contention
8  of secondary considerations. The prejudice to Baxter, if any, would be nominal, and in any event
9  would not be "unfair." *See Snodgrass*, 2002 WL 485688, at *5 (noting that exclusion under Rule
10 403 requires that the prejudice be *unfair*). Introduction of the recall evidence "does not portend a
11 foregone conclusion in [Fresenius's] favor, nor does it suggest decision in [Fresenius's] favor due
12 to an emotionally-charged issue, such as gender-based derogatory comments in a sex
13 discrimination case." *Id.* Moreover, jury confusion is unlikely given that Baxter is not being sued
14 for products liability of products unrelated to the recalls here. Any residual confusion can be
15 cured by clear limiting instructions of the purposes for which the evidence may be considered.
16 *See id.* at *6. Therefore, Rule 403 does not warrant preclusion of the relevant recall evidence in
17 this case.

18 For the foregoing reasons, the Court hereby DENIES Baxter's Motion *in Limine* No. 4.

19

20 IT IS SO ORDERED.

23 Dated: 6-12-06                                    _____
                                                     HON. SAUNDRA BROWN ARMSTRONG
24                                                   UNITED STATES DISTRICT JUDGE

28

7   [PROPOSED] ORDER DENYING BAXTER'S MOTION
    *IN LIMINE* NO. 4 PRECLUDING EVID. AND ARG. RE
    PATIENT DEATHS AND PRODUCT RECALLSS
    Case No. C 03-01431 SBA (EDL)