Daniel J. Furniss (State Bar No. 73531) djfurniss@townsend.com
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, California  94301
Telephone:  (650) 326-2400
Facsimile:  (650) 326-2422

Michael J. Abernathy (*pro hac vice*)  mabernathy@bellboyd.com
Alan L. Barry (*pro hac vice*)  abarry@bellboyd.com
Thomas L. Gemmell (*pro hac vice*)  tgemmell@bellboyd.com
Sanjay K. Murthy (*pro hac vice*)  smurthy@bellboyd.com
Bell, Boyd & Lloyd LLC
70 West Madison Street, Suite 3100
Chicago, IL 60602
Telephone:     (312) 372-1121
Facsimile:      (312) 827-8000

Patrick J. Kelleher *(pro hac vice)* pkelleher@gcd.com
GARDNER CARTON & DOUGLAS LLP
191 North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone:  (312) 569-1000
Facsimile:  (312) 569-3000

Joseph P. Reagen (*pro hac vice*) joseph_reagen@baxter.com
BAXTER HEALTHCARE CORPORATION
One Baxter Parkway
Deerfield, Illinois 60015

Attorneys for Defendants/Counter-Plaintiffs
BAXTER INTERNATIONAL INC. and
BAXTER HEALTHCARE CORPORATION

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| FRESENIUS USA, INC., a Massachusetts corporation; and FRESENIUS MEDICAL CARE HOLDINGS, INC., a New York corporation,<br><br>    Plaintiffs/Counter-Defendants,<br><br>   v.<br><br>BAXTER INTERNATIONAL INC., a Delaware corporation; and BAXTER HEALTHCARE CORPORATION, a Delaware corporation,<br><br>    Defendants/Counter-Plaintiffs. | Case No.    C-03-1431 SBA (EDL)<br><br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATING TO FRESENIUS' INEQUITABLE CONDUCT DEFENSE** |

1.      Plaintiffs/Counter-defendants in this litigation, Fresenius Medical Care Holdings Corp. and Fresenius USA, Inc. (collectively "Fresenius") have alleged in their counterclaims against Defendants/Counterclaimants Baxter International, Inc. and Baxter Healthcare Corp. (collectively "Baxter") that United States Patent Nos. 5,247,434 ('434 Patent) and 6,284,131 ('131 Patent) are unenforceable by reason of inequitable conduct.

2.      Regarding the '434 Patent, Fresenius contends that the prosecuting attorney, Donald Stephens, violated his duty of candor to the Patent and Trademark Office (PTO) by not bringing United States Patent No. 4,370,983 ("the Lichtenstein '983 Patent" or "Lichtenstein") [Trial Ex. 75] to the Examiner's attention before the September 21, 1993 issuance of the '434 Patent.

3.      Regarding the '131 Patent, Fresenius alleges that Baxter made false statements to the PTO during the prosecution of U.S. Patent Application 09/067,922 ("the '922 Application").

4.      Trial commenced in this matter on June 19, 2006.  On June 30, 2006, the jury, sitting as an advisory jury under Fed.R.Civ.P. 39(c), returned advisory verdicts in the form of Special Interrogatories [Dkt. # 828] in favor of Baxter on both theories of inequitable conduct.

5.      Pursuant to Fed.R.Civ.P. 52, the Court makes the following Findings of Fact and Conclusions of law.  (To the extent any finding of fact, as stated, could be more properly considered a conclusion of law, and *vice versa*, it shall be so deemed.)  Based on the evidence presented by the parties during the trial, this Court's weighing of that evidence as to its persuasiveness in light of the applicable burdens of proof, this Court's ability to observe the witnesses and make credibility determinations, the jury's advisory answers to the Special Interrogatories, and the arguments of counsel, this Court both rejects Fresenius' inequitable conduct defense and affirms the enforceability of the '434 and '131 Patents.  The Court will enter judgment in favor of Baxter on that defense.

## FINDINGS OF FACTS

### I. Allegations Concerning Lichtenstein

6.      On April 19, 1991, Althin Medical Inc. (Baxter's predecessor-in-interest) filed United States Patent Application No. 07/688,174 ("the '174 Application").  On March 23, 1993, the PTO

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING FRESENIUS' INEQUITABLE CONDUCT DEFENSE
CASE NO. C 03-1431 SBA (EDL)

2

issued a Notice of Allowance for the claims of the '174 Application.  On September 21, 1993, the '174 Application issued as United States Patent No. 5,247,434.  [**Trial Ex. 1**].

7.     During pendency of the '174 Application, Althin filed a second application: United States Patent Application No. 07/975,523 ("the '523 Application").  On May 4, 1993, the Examiner rejected certain claims of the '523 Application as unpatentable over other references in combination with the Lichtenstein '983 Patent.  [**Trial Ex. 4**].

8.     In a September 23, 1993 response, Mr. Stephens successfully distinguished the Lichtenstein '983 Patent from the claims of the '523 Application.  In fact, the examiner adopted Mr. Stephens' reasoning as the basis for allowance.  On July 9, 1994, the '523 Application issued as the '476 Patent.  [**Trial Ex. 3**].

9.     The '434 Patent is the parent of the '476 Patent.  At the time of the May 4, 1993 Office Action, the claims of the '174 Application were allowed, but had not issued.  Thus, Fresenius contends that the Lichtenstein '983 Patent was material to the co-pending '174 Application — a fact allegedly brought to Mr. Stephens' attention by the May 1993 Office Action.  In failing to raise the Lichtenstein '983 Patent before the '434 Patent issued, Fresenius alleges that Mr. Stephens violated his duty of candor to the PTO.

### Intent to Deceive the PTO

10.     Mr. Stephen Kunin was Fresenius' only witness on this topic.  He admitted that he was not offering any testimony concerning Mr. Stephens' knowledge.  [June 23, 2006 Tr. 621:6-10 ("what was going on in Mr. Stephens' mind"); *see also* June 23, 2006 Tr. 662:24—663:16].  Further, he confessed (by pre-trial deposition read to him at trial) that "***I have no evidence of intent or intent to deceive***."  [June 23, 2006 Tr. 659:5-6].

11.     At best, Mr. Kunin testified simply that the May 1993 Office Action in the application that led to the '476 patent was mailed to Mr. Stephens along with the Lichtenstein '983 patent.  [June 23, 2006 Tr. 633:12-19].

12.     That Lichtenstein was placed in the mail in May 1993, two months after the PTO issued a March 1993 Notice of Allowability in the '434 application, falls far short of Fresenius'

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING FRESENIUS' INEQUITABLE CONDUCT DEFENSE
CASE NO. C 03-1431 SBA (EDL)

3

burden to prove by clear and convincing evidence that Mr. Stephens believed Lichtenstein to be material to the '434 application but deliberately decided not to disclose it in an attempt to deceive the PTO.[1]

13.     Fresenius failed to offer clear and convincing evidence that Mr. Stephens knew, or should have know, Lichtenstein was applicable to the '174 Application.[2]   Fresenius has failed to offer proof of when Mr. Stephens became aware of the Lichtenstein reference and has failed to offer any evidence that Mr. Stephens ever read the portions of the Lichtenstein that Fresenius alleges are material to the patentability of the '434 patent.   In the absence of such evidence, the Court cannot find that Mr. Stephens knew of material information that was not disclosed, that he ever considered whether Lichtenstein bore on the patentability of the '434 patent (for which a Notice of Allowability had issued before Lichtenstein was cited in the '523 application), or that the reason Lichtenstein was not cited is that Mr. Stephens intended to deceive the PTO.

## Materiality

14.     Additionally, Fresenius has not proven Lichtenstein to be material.  Mr. Kunin was qualified as an expert witness on the topic of "patent law, patent examination, policy, practice, and procedure."  [June 23, 2006 Tr. 617:5-6].  He did not purport to be an expert in the relevant art who could opine whether Lichtenstein truly was material.  Although Mr. Kunin attempted to identify passages in Lichtenstein supposedly inconsistent with Mr. Stephens' arguments, Mr. Kunin is not qualified to render expert testimony on what Lichtenstein actually teaches.  Rather, he expressly testified that he relied upon the opinion of Mr. Causey to support his opinion concerning inequitable conduct as to the '434 patent..  [June 23, 2006 Tr. 619:25 — 620:5].

---

[1]   Fresenius could have called Mr. Stephens to the stand, but did not.  On Thursday morning, June 22, Fresenius told Baxter that it would play designated portions of Mr. Stephens' deposition.  Then, on Thursday afternoon, Fresenius advised that it would not present Mr. Stephens' testimony.

[2]   At the time of the May 4, 1993 Office Action for the CIP '523 application that referenced Lichtenstein, the duty of candor and good faith owed to the PTO applied to all information "***known to that individual*** to be material to patentability."  *See* 37 U.S.C. § 1.56 (1993) (emphasis added).

15.     But, when specifically asked, Mr. Causey was unable to identify any teaching in Lichtenstein that was not already taught in either the Rubalcaba or Kerns patents that were before the PTO during prosecution of the PTO.  The following occurred during the direct examination of Mr. Causey:

> Q.  Do you have an expert opinion as to whether the Lichtenstein patent would have been material to the patentability of the asserted '434 patent claims?
>
> MR. ABERNATHY:   Objection, your Honor, beyond foundation and scope of the tendered expertise, calling for a legal conclusion.
>
> *       *       *
>
> [Sidebar held.]
>
> *       *       *
>
> THE COURT:  So you're withdrawing the last question?
>
> MR. SAMUEL:  Withdraw the prior question.
>
> THE COURT:  Okay.
>
> *       *       *
>
> Q.  Can you tell the ladies and gentlemen of the jury what, if anything is disclosed in Lichtenstein that is not disclosed in either the Kerns or Rubalcaba patents.
>
> A. ***I don't think there is anything***.
>
> MR. ABERNATHY:  I'm sorry?
>
> THE WITNESS: ***I can't recall what is — what's different at this point***.
>
> MR. SAMUEL:  No further questions.
>
> THE COURT:  Okay.
>
> MR. SAMUEL:  Actually, may I have a minute?
>
> THE COURT:  Yes
>
> (Pause in the proceedings.)
>
> MR. SAMUEL:  No further questions.
>
> THE COURT:  Okay.  Thank you.
>
> I just want to clarify the last answer, if I may, 'cause the court reporter wrote the first answer was "I don't think there is anything," and then when counsel said he didn't hear, the answer was "I can't recall what is different at this time."
>
> Which is your answer?
>
> THE WITNESS: ***I can't recall which is different***.
>
> THE COURT:  Okay.  Thank you.

[June 26, 2006 Tr. 854:3-8; 856:24 — 857:1; 857:12—858:8 (emphasis added)].

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING FRESENIUS' INEQUITABLE CONDUCT DEFENSE
CASE NO. C 03-1431 SBA (EDL)

5

16.    Based on this testimony, Fresenius has not shown that Lichtenstein was not cumulative of the Kerns and Rubalcaba references before the PTO.  Accordingly, there was no opinion of Mr. Causey for Mr. Kunin to rely upon.  The Court finds that there was a failure of proof on the issue of materiality.   To the extent there was any substantive evidence offered on the materiality of Lichtenstein, the Court finds it unpersuasive and insufficient to carry the clear-and-convincing burden of proof.  Accordingly, the Court cannot agree with the Advisory Jury's answer to the Special Interrogatory on this element.

## II.  Allegations Concerning "Extensive Innovation" Remark

17.    On May 29, 1998, Althin filed United States Patent Application No. 09/067922 ("the '922 Application").    On June 6, 1999, the Examiner allowed Claim 36 of the '922 Application. While Baxter subsequently filed Claim 36 as part of United States Patent Application No. 09/689503, the remaining claims of the '922 Application were abandoned.  On September 4, 2001, Claim 36 issued as Claim 1 of United States Patent No. 6,284,131.  [**Trial Ex. 7**].

18.    During prosecution of the '922 Application, Mr. Stephens made the following argument:

> Neither Lichtenstein nor Weiss provides any teaching or suggestion whatsoever as to why a touch screen would be beneficial or desirable in a hemodialysis machine, how a touch screen could be incorporated with a hemodialysis machine, what operating parameters of the hemodialysis machine could be controlled using the a touch screen, or how data concerning and operating parameters of such a machine could be displayed and/or changed using an touch screen.   Providing a hemodialysis machine with a touch screen is not the same as simply adding a different style gauge to, or changing the arrangement of manual controls on the front panel of the machine.   Rather, providing a hemodialysis machine with a touch screen requires extensive innovation in hardware and software.

[**Trial Ex. 13**].

19.    Fresenius alleges that Mr. Stephens violated his duty of candor by arguing, "providing a hemodialysis machine with a touch screen requires extensive innovation in hardware

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING FRESENIUS' INEQUITABLE CONDUCT DEFENSE
CASE NO. C 03-1431 SBA (EDL)

6

and software."   Fresenius contends that it is untrue that "extensive innovations" occurred in the inventions-in-suit.

### Intent to Deceive the PTO

20.    Fresenius' "extensive innovation" theory faces the same fatal flaws as Fresenius' Lichtenstein allegations.  Fresenius presented no evidence, let alone clear and convincing evidence, that Mr. Stephens (1) personally believed the "extensive innovation" statement was false, or (2) personally intended to deceive the PTO by making a false statement.   Indeed, Mr. Kunin confessed that he "do[es]n't know" whether Mr. Stephens was speaking about the entire integration of the patented hemodialysis system, as opposed to simply plugging in a touch screen.  [June 23, 2006 Tr. 665:17-19].

21.    In the absence of evidence that Mr. Stephens did not believe his "extensive innovation" remark, Fresenius cannot prevail.  Even if the "extensive innovation" statement were untrue (which Fresenius has not proven), this failure of proof on the essential elements of knowledge and intent dooms Fresenius' defense.

### Materiality

22.    Once again, Fresenius also failed to prove that this kind of attorney argument to the PTO was material.  The Court notes that the advisory jury also reached this conclusion.  Examiners are "free to accept or reject" this type of attorney argument.  *Life Techs. Inc. v. Clontech Labs. Inc.*, 224 F.3d 1320, 1326 (Fed.Cir. 2000).  Furthermore, Fresenius' assertion of untruth is integrally tied to Fresenius' repeated mischaracterization of the inventions-in-suit as involving nothing but plugging a touch screen into a hemodialysis machine.  That description does not accurately describe the scope of the claims-in-suit, and thus the inventions.  Without tackling what the inventions-in-suit really are, Fresenius has not even undertaken its burden (let alone carried it) to prove that the "extensive innovations" remark was a material misstatement.

## CONCLUSION OF LAW

23.    Under 37 C.F.R. § 1.56, "[e]ach individual associated with the filing and prosecution of a patent application owes has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability . . . " In general, the duty of candor extends to each inventor named in the application, each attorney or agent that prepares of prosecutes the application and "every other person who is substantially involved in the preparation or prosecution of the application."

24.    Information is material when it is not cumulative to information already before the Office and either establishes a prima facie case of unpatentability or opposes an argument of patentability relied upon by the office

25.    The defense of inequitable conduct arises in situations where the duty of good faith is breached by intentionally misleading the Patent Office with respect to material information. *Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.,* 851 F.2d 1387, 1394 (Fed. Cir. 1988). Culpable acts of inequitable conduct may include a misrepresentation, a misleading statement, or an omission.

26.    A holding of inequitable conduct requires a showing of two elements:  (1) materiality, and (2) intent to mislead or deceive the patent examiner.  *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 551 (Fed.Cir.1990).   Each of these elements must be shown by clear and convincing evidence.  *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872 (Fed.Cir. 1988); *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.,* 228 F.3d 1338, 1344-45 (Fed.Cir. 2001).

27.    If either materiality or intent is not found, then no further analysis need be performed and unenforceability must be denied.  *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256 (Fed.Cir.1997).  *See Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1261 (Fed.Cir. 2001) (failure to show either materiality or deceptive intent ends the analysis—there is no inequitable conduct).

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING FRESENIUS' INEQUITABLE CONDUCT DEFENSE
CASE NO. C 03-1431 SBA (EDL)

8

28.     If the threshold requirements of materiality and intent are establised, "those fact findings are balanced to make the determiation whether 'the scales tilt to a conclusion that inequitable conduct occurred.'"  *Manville*, 917 F.2d at 551 (internal citation omitted).  "[T]he more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and vica versa."  *Critikon,* 120 F.3d at 1256

29.     "Materiality of an undisclosed reference does not presume an intent to deceive." *Halliburton Co. v. Schlumberger Tech. Corp*., 925 F.2d 1435, 1442 (Fed.Cir. 1991).  Nor does gross negligence alone justify an inference of intent to deceive.  *Id.*; *Ajinomoto*, 228 F.3d at 1344-45; *Kingsdown*, 863 F.2d at 876; *FMC Corp. v. Manitowoc* Co., 835 F.2d 1411, 1415 n.9 (Fed.Cir. 1987) (same); *Baxter Int'l, Inc. v. Mcgaw, Inc*., 149 F.3d 1321, 1329 (Fed.Cir. 1998)].  Instead, "[a]n applicant's conduct in its entirety must 'manifest a sufficiently culpable state of mind to warrant a determination that it was inequitable.'"  *Id.* at 1443 (quoting *Consol. Aluminum Corp. v. Foseco Int'l Ltd*., 910 F.2d 804, 809 (Fed.Cir. 1990)).  "In determining whether [misstatements are] intentional, 'the involved conduct, viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive."

30.     After considering all of the evidence presented at trial, the Court finds that Fresenius has failed to carry its burden to prove by clear and convincing evidence that inequitable conduct occurred.  *Juicy Whip Inc. v. Orange Bang Inc*., 292 F.3d 728, 744-745 (Fed.Cir. 2002) (infringer could not prevail "because Orange Bang failed to present any evidence that the Strattons knew or considered the Bowers declaration to contain anything untrue").

31.     The '434 and '131 Patents are not unenforceable.

32.     On this defense, judgment shall issue in favor of Defendants/Counterclaimants Baxter and against Plaintiffs/Counter-defendants Fresenius.

IT IS SO ORDERED:

DATED:      7/31/06            _____
                              SAUNDRA BROWN ARMSTRONG
                              United States District Court Judge

CH01/ 12480478.3

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING FRESENIUS' INEQUITABLE CONDUCT DEFENSE
CASE NO. C 03-1431 SBA (EDL)

9