1

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

3

4

FRESENIUS MEDICAL CARE
HOLDINGS, INC., *et al.*,

No. C 03-1431 SBA

5

Plaintiffs,

**ORDER**

[Docket No. 881]

6

v.

7

BAXTER INTERNATIONAL, INC., *et al.*,

8

Defendants.

9

10         This matter comes before the Court on plaintiffs Fresenius USA, Inc. and Fresenius Medical

11    Care Holdings, Inc.'s (Fresenius) Motion to Stay Proceedings Pending the Re-examination of the

12    Patents-in-Suit [Docket No. 881].  After reading and considering the arguments presented by the parties,

13    the Court finds this matter appropriate for resolution without a hearing.  For the reasons that follow, the

14    Court DENIES Fresenius's Motion to Stay.

15                                          **PROCEDURAL HISTORY**

16         On April 4, 2003, Fresenius filed a complaint seeking declaratory judgment of invalidity and

17    non-infringement against  Baxter Healthcare Corporation's (Baxter) U.S. Patent No. 5,247,434 ("434

18    Patent"), U.S. Patent No. 6,284,131 ("'131 Patent"), U.S. Patent No. 5,326,476 ("'476 Patent"), and

19    U.S. Patent No. 5,744,027 ("'027 Patent")[1]. On September 2, 2005, the Court granted in part Baxter's

20    motion for partial summary judgment and granted in part Fresenius's cross-motion for summary

21    judgment, holding that Fresenius's 2008K hemodialysis infringed claim 26 of the '434 patent and claim

22    1 of the '131 patent. *See* Docket No. 370.  The Court also held that the SVS, Kt/V, and Blood Pressure

23    screens of the 2008K did not infringe claim 1 of the '131 patent.

24         On September 26, 2005, Fresenius filed a request for ex parte reexamination of the '131 Patent

25    with the United States Patent and Trademark Office (PTO).  *See* Ex. C to Decl. Limin Zheng Supp.

26

27    [1]One of initial five the patents in this suit, U.S. Patent No. 5,486,286, is no longer at issue.

28                                                        1

1    Fresenius' Mot. Stay at 3.  On October 18, 2005, Fresenius filed its request for ex parte reexamination

2    of the '434 Patent with the PTO. *Id.*

3         On November 22, 2005, the PTO granted Fresenius's request for ex parte reexamination of the

4    '131 and '434 Patents.  The PTO found that substantial new questions of patentability was raised by the

5    prior art cited by Fresenius in its request as to claims 1-25 of the '131 and 1-34 of the '434 patent. In

6    response to the grant of reexamination, on February 10, 2006, Baxter filed a Patent Owner's Statement

7    with respect to the '131 setting forth arguments why the claims were valid over the cited prior art.

8         On May 16, 2006, and May 25, 2006, the Court denied Fresenius' motions for summary

9    judgment of invalidity and granted Baxter's motion for partial summary judgment of validity. *See*

10   Docket. Nos. 661 and 701. On June 15, 2006, Fresenius stipulated that its 2008K Hemodialysis machine

11   infringes the asserted claims of the '434, '131, and '027 Patents and on June 16, 2006, the Court entered

12   a judgment of partial infringement of those asserted claims. *See* Docket Nos. 755 and 770.

13        Over three years after the initial complaint was filed, a jury trial was held from June 19, 2006

14   to June 30, 2006.  On June 30, 2006, the jury returned a verdict in Fresenius' favor on the invalidity of

15   the asserted claims of the '434, '131, '476, and '027 Patents, and of non-infringement of Claims 5 and

16   7 of the '476 Patent. On July 28, 2006, Baxter filed a Rule 50(b) Renewed Motion For Judgment as a

17   Matter of Law and a Rule 59 Motion for a New Trial. Docket Nos. 845, 847.

18        On November 16, 2006, the PTO issued a First Non-Final Office Action rejecting claims 1-25

19   as obvious. *Id.* On December 22, 2006, the PTO issued a First Non-Final Office Action rejecting claims

20   12-19 and 26-34 of the '434 Patent as obvious.  These rejections include all claims of the '434 patent

21   asserted by Baxter at trial. Fresenius did not move for a stay at the time either Office Action was issued.

22        On February 13, 2007, the Court granted both Baxter's Renewed Motion For Judgment as a

23   Matter of Law and Motion for a New Trial, finding that Fresenius failed to introduce substantial

24   evidence of invalidity of any of the asserted claims of the patents-in-suit, and ordering a new trial on

25   the issue of damages as to all claims and infringement of claims 5 and 7 of the '476 Patent. *See* Docket

26   No. 874.

27

28                                                    2

1        On April 16, 2007, the parties entered a joint proposed order for pretrial preparation setting trial

2   for October 22, 2007 on the issues of infringement of the remaining two claims of the '476 Patent and

3   for damages. *See* Docket No. 884. The next day, on April 17, 2007, Fresenius filed a request for

4   reexamination of the '027 Patent. *See* Zheng Decl., Exh. F. On April 19, 2007, after the trial date had

5   been set, Fresenius filed the instant motion requesting that the Court stay the second damages trial until

6   reexamination proceedings have concluded, or until all liability issues have been resolved by the Federal

7   Circuit.

8                                        **LEGAL STANDARDS**

9        Re-examination is a procedure by which any person can request that the PTO re-examine or re-

10  evaluate the patentability of an unexpired United States patent. *See* 35 U.S.C. § 302; *see also Broadcast*

11  *Innovation, L.L.C. v. Charter Commc'ns., Inc*., 2006 WL 1897165, at *1 (D. Colo. 2006).  "Congress

12  instituted the reexamination process to shift the burden or reexamination of patent validity from the

13  courts to the PTO."  *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002).

14  Patent validity is a commonly asserted defense, and courts are cognizant of Congress's intent to utilize

15  the PTO's specialized expertise to reduce costly and time-consuming litigation. *Id.*

16       Courts are not required to stay judicial proceedings pending re-examination of a patent.  It is,

17  however, within a district court's discretion to do so. *See, e.g., Ethicon, Inc. v. Quigg*, 849 F.2d 1422,

18  1426-27 (Fed. Cir. 1988) (citations omitted) ("Courts have inherent power to manage their dockets and

19  stay proceedings, including the authority to order a stay pending conclusion of a PTO examination");

20  *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985); *Telemac Corp. v. Teledigital, Inc*., 450

21  F. Supp. 2d 1107, 1110 (N.D. Cal. 2006) (Wilken, J.).  There is "a liberal policy in favor of granting

22  motions to stay proceedings pending the outcome" of re-examination, especially in cases that are still

23  in the initial stages of litigation and where there has been little or no discovery. *ASCII Corp. v. STD*

24  *Entm't USA, Inc*., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *see also Robert H. Harris Co. v. Metal*

25  *Mfg. Co.*, 19 U.S.P.Q. 2d 1786, 1788 (E.D. Ark. 1991) ("[t]he legislative history surrounding the

26  establishment of the reexamination proceeding evinces congressional approval of district courts liberally

27

28                                            3

1  granting stays").

2      However, a court is under no obligation to delay its own proceedings by yielding to ongoing

3  PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must

4  analyze. *See NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785, 787 (E.D. Va. 2005) (citing

5  *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001)) . There is no *per se* rule that

6  patent cases should be stayed pending reexaminations, because such a  rule "would invite parties to

7  unilaterally derail" litigation.  *Soverain Software LLC v. Amazon.Com*, Inc., 356 F. Supp. 2d 660, 662

8  (E.D. Tex. 2005).

9      In determining whether to grant a stay pending re-examination, courts consider: (1) whether

10  discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues

11  in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical

12  disadvantage to the non-moving party.  *See Telemac*, 450 F. Supp. 2d at 1110; *KLA-Tencor Corp. v.*

13  *Nanometrics, Inc.*, 2006 WL 708661, at *2 (N.D. Cal. 2006); *IMAX Corp. v. In-Three, Inc*., 385 F. Supp.

14  2d 1030, 1032 (C.D. Cal. 2005). A trial court's order staying an infringement suit pending the

15  completion of re-examination proceedings is not appealable.  *See Gould v. Control Laser Corp*., 705

16  F.2d 1340, 1341 (Fed. Cir. 1983), *cert. denied*, 464 U.S. 935 (1983).

17                                        **ANALYSIS**

18      Fresenius argues that, given the "recent" (i.e., 5-6 months before Fresenius moved to stay)

19  determinations of the Reexamination Unit of the Patent Office that twelve of the fifteen claims being

20  asserted by Baxter are obvious, conducting a damages trial now "simply does not make sense." Mot.

21   at 1. Fresenius contends that the reexamination process will either make this litigation moot, or will

22  significantly narrow the issues for resolution.  Baxter counters that the procedural posture of this case

23  demands that it proceed, that it would be unduly prejudiced by any further delay of this four year old

24  case, and that the issues could not be simplified by the reexamination process.

25  **1.      Stage of Litigation**

26      The parties, and this Court, have already expended a great deal of effort and resources in this

27

28                                          4

1   matter, including conducting a nine-day trial in June 2006. Fresenius contends that there is no reason

2   for the parties to conduct yet another trial now because the jury's findings on damages may eventually

3   be rendered moot by the reexamination proceedings. However, Fresenius's argument runs counter to

4   the clear rule developed in cases considering stays that, where, as here, discovery has commenced, claim

5   construction has been briefed, and dispositive motions have been filed and disposed of, courts should

6   not grant stays for reexamination before the PTO. *See Eolas Techs., Inc. v. Microsoft Corp.*, 2004 WL

7   170334, at 6 (N.D. Ill. Jan. 15, 2004), *rev'd on other grounds*, 399 F.3d 1325 (Fed. Cir. 2005) ("there

8   is little support, if any, for staying entry of judgment when reexamination is ordered well into the

9   briefing period for post-trial motions"). The vast majority of cases that have granted stays have done

10  so when the cases were in their relatively nascent stages. *See, e.g., KLA-Tencor*, 2006 WL 708661, at

11  *2 (granting stay where discovery had just begun); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,

12  33 U.S.P.Q 2d 2022, 2023 (N.D. Cal. 1995) (holding that the absence of significant discovery or

13  substantial expense and time invested in the litigation weighed in favor of stay); *ASCII Corp. v. STD*

14  *Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay where the parties had

15  undertaken little or no discovery). In contrast, not only is pretrial preparation complete  in this matter,

16  but *a trial has been already held*. This factor would weigh heavily in favor of denying a stay.

17  **2.      Simplification of the Issues for Trial**

18          It is possible that reexamination by the PTO would simplify the issues for trial; of course, if all

19  the claims are invalidated, as the PTO's initial non-final determinations might imply, there will be no

20  issues to try. However, it is also possible that the PTO's determination will have no ultimate bearing on

21  the damages determination in this case, as the PTO's initial actions were non-final and non-binding, and

22  the PTO is free to reconsider its initial determinations prior to issuing a reexamination certificate.[2] *See*

23  *In re Bass*, 314 F.3d 575, 577 (Fed. Cir. 2002) ("Until a matter has been completed, ... the PTO may

24  reconsider an earlier action."). In either case, as discussed below,  the parties and the Court would likely

25

26  _____

27  [2]A reexamination is complete only upon the statutorily mandated issuance of a reexamination certificate. 35 U.S.C. § 307(a).

28                                                          5

1    have to wait years to find out. Moreover, this Court is already intimately familiar the with the

2    technology at issue here, and therefore its interest in simplifying the proceedings by waiting for the PTO

3    to reexamine the patents is significantly weaker than in cases where trial has not already been held. *See*

4    *Telemac*., 450 F. Supp. 2d 1107, 1111 (denying stay where motions to dismiss had already been ruled

5    on and court was familiar with patents). Additionally, as Baxter points out, this case is already

6    "packaged" for trial — discovery is complete,  the period for dispositive motions has closed, the parties

7    have already listed, reviewed, and objected to exhibits and discovery designations, and the jury

8    instructions are complete. The Court and the parties are as well-positioned as they ever will be to try

9    this case, and, at this late stage, need not look to the PTO for guidance or simplification of the issues.

10   *RCA Corp. v. Applied Digital Data Systems, Inc.,* 467 F.Supp. 99, 103 (D. Del. 1979) ("the PTO is not

11   'uniquely qualified' to pass on the validity of the patent.").

12       More importantly, however, is the fact that Fresenius's request would only serve to *complicate*

13   the proceedings in this case, not simplify them. Fresenius appears to request that the Court, after

14   entering a stay pending reexamination,  empanel a second jury to try infringement of the '476 patent,

15   "wait until the reexamination and appeal are resolved," and then empanel a *third* jury to conduct "an

16   abbreviated damages trial." This is, of course, assuming that, while the reexamination is pending none

17   of the multiple appeals that will inevitably result will require remand and yet another trial. This

18   suggestion simplifies neither the issues nor the procedural posture of this case. Thus, this factor also

19   weighs in favor of denying a stay.

20   **3.    Undue Prejudice or Clear Tactical Disadvantage**

21       "Parties should not be permitted to abuse the [reexamination] process by applying for

22   reexamination after protracted, expensive discovery or trial preparation." *Freeman v. Minnesota Mining*

23   *and Manufacturing Co.*, 661 F.Supp. 886, 888 (D. Del.1987) (citations omitted). To do so would be to

24   allow a party to use reexamination as "a mere dilatory tactic." *Id.*

25       It is difficult to imagine a scenario in which a dilatory motive could be more apparent. The

26   reexaminations have been pending before the PTO since November 2005. After the reexamination

27

28                                                     6

1  requests, the parties engaged in protracted and lengthy discovery and  filed multiple motions for

2  summary judgment. Then, presumably believing it would prevail, Fresenius went to trial. When Baxter

3  filed its Renewed Motion for Judgment as a Matter of Law and its Motion for a New Trial, Fresenius

4  chose to oppose the motions on their merits rather than request a stay. Only once Fresenius received an

5  adverse judgement -- nearly four years after initiating the litigation before this Court rather than seeking

6  the alternative route of reexamination -- did it suggest that these proceedings should yield to the

7  reexamination process. Thus, after years of protracted litigation, only now, at the 11th hour and after

8  suffering a substantial setback, does Fresenius extol the virtues of reexamination. However, we are too

9  far along the path Fresenius has chosen to allow Fresenius to turn back, believing it has lost its way. *See*

10  *Enprotech Corp. v. Autotech Corp.,* 1990 WL 37217, at *2 (N.D. Ill. Mar. 16, 1990). To do so would

11  simply be to allow Fresenius to "unilaterally derail" this litigation.  *See Soverain Software*, 356 F. Supp.

12  2d at 662.

13        When a party moves to stay litigation pending PTO reexamination, the non-moving party may

14  be unduly prejudiced by the lapse of time during reexamination. *Alltech, Inc. v. Cenzone Tech, Inc.*,

15  2007 WL 935516, at *2 (S.D. Cal. March 21, 2007). It is unquestionable that Baxter would be

16  prejudiced by a stay. Courts have recognized that the reexamination process may be lengthy, often

17  taking years to run its course, and in the meantime Fresenius will be free to market and sell its

18  purportedly infringing technology unfettered.  *See, e.g., In re Cygnus Telecommc'ns. Tech. LLC Patent*

19  *Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (finding that re-examinations generally take from

20  six months to three years); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 n.1 (W.D.N.Y. 1999)

21  (suggesting average pendency of re-examination before the PTO is 19.2 months, excluding appeals).

22  Moreover, if any claim were ultimately rejected by the PTO, Baxter could appeal the examiner's

23  decision to the Board of Patent Appeals and Interferences, which decision could in turn be appealed to

24  the Federal Circuit. *See* 35 U.S.C. § 134(b); 35 U.S.C. § 141. In the lengthy delay that would inevitably

25  ensue if a stay were granted, evidence could be lost and witnesses' memories could fade. *Alltech*, 2007

26  WL 935516, at *2. Accordingly, this factor weighs heavily in favor of denying a stay.

27

28                                                          7

1        The Court is cognizant of the fact that this case is in a somewhat unusual posture that appears

2   to be a novelty in the caselaw. While Fresenius's dilatory motives could not be more apparent, this case

3   involves the somewhat perplexing factor that the PTO has already made initial, non-final determinations

4   that the subject claims in the patents-in-suit are invalid. Thus, there appears to be a real possibility (but,

5   at this point, *only* a possibility) that the PTO may determine that the patents are invalid *after* Fresenius

6   is adjudged to have infringed them and has a damages judgment against it. Courts, in granting stays

7   (*prior* to trial) have noted that such a possibility raises the specter of "irreparable harm" to an accused

8   infringer. *See Bausch & Lomb, Inc. v. Alcon*, 914 F. Supp. 951, 952 (W.D.N.Y. 1996); *Everything for*

9   *Love.com, Inc. v. Tender Loving Things, Inc*., 2006 WL 2091706, at \*4 (D. Ariz. Jul. 21, 2006).

10       However, this only strengthens the argument that Fresenius should not have waited until it had

11   had a trial, had litigated motions for judgment as a matter of law and for a new trial on the merits, and

12   *then* had a favorable PTO action to request a stay. Any irreparable harm that Fresenius will suffer will

13   be of its own making, attempting, as it did, to "game the system" by playing both fields simultaneously.

14   Fresenius chose to litigate this case rather than request a stay when reexamination was sought,

15   presumably believing its best bet was in this Court rather than the PTO. Had Fresenius requested a stay

16   at an earlier date, while this case was in a different procedural posture, this Court might have been

17   inclined to grant one. But to allow Fresenius to now derail this litigation would be to sanction the most

18   blatant abuse of the reexamination process. The express purpose of the reexamination procedure is to

19   shift the burden from the courts by reducing costly and time-consuming litigation. H.R. REP. NO.

20   96-1307, pt. 1, at 3-4 (1980); *Canady*, 271 F. Supp. 2d at 78. This purpose will not be served by granting

21   a stay at this late date.

## CONCLUSION

23       This case is now over four years old. Granting a stay at this late juncture would virtually

24   guarantee the addition of numerous more years to its vintage. This case should now proceed with

25   alacrity, not with the sloth that is the essence of a stay.

8

1          Accordingly,  IT IS HEREBY ORDERED THAT the motion to stay Law [Docket No. 881] is

2    DENIED.

3          IT IS SO ORDERED.

4
Date:   6/6/07

5                                                       _____
                                                        Saundra Brown Armstrong
6                                                       United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                9