**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

FRESENIUS MEDICAL CARE
HOLDINGS, INC., *et al.*,

        Plaintiffs,

v.

BAXTER INTERNATIONAL, INC., *et al.*,

        Defendants.

No. C 03-1431 SBA

**ORDER**

[Docket No 969]

Currently before the Court is Baxter Healthcare Corporation's ("Baxter") Motion for a New Trial Pursuant to Rule 59 [Docket No 969]. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. For the reasons that follow, the Court DENIES the Motion for a New Trial.

## BACKGROUND

In 2003, plaintiffs Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. ("Fresenius") initiated this lawsuit by filing a complaint for a declaratory judgment of non-infringement and invalidity against Baxter related to U.S. Patent No. 5,247,434 ("'434 Patent"), U.S. Patent No. 6,284,131 ("'131 Patent"), and U.S. Patent No. 5,744,027 ("'027 Patent") (collectively, "patents-in-suit"). Baxter counterclaimed for infringement of each of the patents.

In 2005, the Court granted summary judgment to Baxter that Fresenius infringes Claim 26 of the '434 Patent and Claim 1 of the '131 Patent. After three-plus years of litigation, in June 2006, Fresenius admitted that its 2008K machine infringes the asserted claims of the patents-in-suit. Docket No. 755. The Court then entered a judgment of infringement of those asserted claims. Docket No. 770. The remaining dispute for the jury to resolve was whether Fresenius's 2008K hemodialysis machine infringed upon claims 26 through 31 of the '434 patent, claims 1, 2, 3, 13, 14, 15, and 16 of the '131 patent, claims 7, 11, 14, 15, and 16 of the '027 patent, and claims 5 and 7 of the '476 patent. Fresenius asserted that the claims of these patents were invalid either because they were obvious in light of prior

art or because they were anticipated by prior art.

The jury returned a unanimous verdict on June 30, 2006, finding in favor of Fresenius on all issues submitted to it. *See* Docket No. 829 . The jury found that all remaining claims were either invalid as obvious or invalid as anticipated, and that the Fresenius 2008K did not infringe on either claim 5 or 7 of the '476 patent. Following the jury's verdict, Baxter moved for judgment as a matter of law and for a new trial, arguing that Fresenius had failed to present evidence to the jury that the patents were invalid, On February 13, 2007, the Court granted Baxter's motion for judgment as a matter of law that the patents were valid and ordered a second trial on damages. Docket No. 874

A jury trial for damages owed to Baxter for Fresenius's infringement was held from October 24, 2007 to October 29, 2007. The jury returned a verdict that Fresenius owed Baxter $14,175,000 for Fresenius's past sales of the infringing 2008K machine. Docket No. 962. The jury also found that Fresenius owed Baxter damages for sales of the related disposable products (i.e., dialyzers, concentrates, bloodlines, needles, and solutions) in the amount of $91,000. On November 7, 2007, the Court entered an order reflecting the verdict. Docket No. 965.

Baxter has filed post-trial motions for yet another trial, for entry of a permanent injunction, and for an award of damages including prejudgment interest. Fresenius has filed a motion for review of the clerk's taxation of costs.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(a) provides that a "new trial may be granted . . . on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59(a). A new trial is appropriate if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004); *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 843 (9th Cir. 2004). A new trial is generally not granted unless the court "is left with the definite and firm conviction that a mistake has

been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987).

"[A] district court may not grant a new trial simply because it would have arrived at a different result." *Silver Sage*, 251 F.3d at 819; *see also Landes Const.*, 833 at 1371 ("[A] decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his [or her] own doubts in the matter.") (citing 11 C. Wright & Miller, Federal Practice & Procedure § 2806 (1973)). As such, the jury's damages award must be upheld unless it is "'grossly excessive or monstrous,' clearly not supported by the evidence, or based only on speculation or guesswork." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1579-80 (Fed. Cir. 1992) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986)).

The jury's role in a patent damages case is to find facts by evaluating the weight and credibility of the witnesses and the evidence. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003) ("The amount of damages based on a reasonable royalty is an issue of fact."); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact."). It is well-established that a jury may award patent damages in any amount that is supported by the record, even if the award was not specifically proposed by either party. *See Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) ("[W]e do not hold that a jury may only arrive at a royalty specifically articulated by the parties during trial. Rather, a jury's choice simply must be within the range encompassed by the record as a whole.") (internal citations omitted); *see also SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167 (Fed. Cir. 1991) (rejecting appellant's contention that the court's award was unsupported by the evidence because the amount awarded was not specifically advocated by either party); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) ("[T]he jury is not bound to accept a rate proffered by one party's expert but rather may choose an intermediate royalty rate.").

## ANALYSIS

Baxter offers three related arguments in support of its request for a third trial. First, while the

3

jury expressly found that Baxter proved it is entitled to a reasonable royalty on disposables, it awarded $91,000 for Fresenius's $1.3 billion in sales for disposables, which equals a 0.007% royalty rate, and Baxter argues that the record fails to support such a low royalty rate. Similarly, the jury's award of $14,175,000 as a royalty for Fresenius' $836.5 million in sales of the infringing 2008K machine results in royalty rate of 1.7%, which rate Baxter argues is also unsupported. Second, Baxter argues that "[t]he jury's award of just $91,000 for $1.3 billion in sales of disposables confirms the verdict was based on passion and prejudice." Mot. for New Trial at 2. Specifically, Baxter argues that Fresenius's use of evidence of patient deaths relating to dialyzers prejudiced Baxter and "likely" contributed to the "unsupported" verdict, as dialyzers were the main component of the disposables claim. Finally, Baxter briefly argues that certain evidence relating to third-party market surveys was improperly published and admitted into evidence.

## I.    Royalty Rate

The gravamen of Baxter's motion for a new trial is that the .007% and 1.7% "royalty rates"[1] awarded by the jury on disposables and the hemodialysis machines, respectively, are not supported by the evidence and therefore Baxter is entitled to a second trial on damages. Baxter argues that the evidence presented at trial supports a finding of a reasonable royalty on both machines and disposables in the range of 4% to 25% of the sales price. Baxter's damages expert analyzed all the comparable licenses in the dialysis industry and testified that the range of royalty rates in these licenses ranged from 4% to 25%. Tr. 126:18-20. Fresenius' expert stated that he had not seen any agreements in this case with a royalty of less than 1%. Tr. 671:4-9. Baxter argues that given that the royalty rates of .007% and 1.7% on the disposables and the machines, respectively, were not proffered by either party, the jury's damages award is not supported by substantial evidence and must be overturned.

While the jury does not have to adopt a royalty specifically articulated by a party, "a jury's

---

[1] As Fresenius correctly notes, the jury did not actually award Baxter a "royalty rate;" instead, it simply awarded a lump sum of $14,175,000 with respect to the 2008K machine and $91,000 with respect to disposables. *See* Docket No. 965. The .007% and 1.7% "rates" are therefore extrapolations from these numbers by Baxter based on the total sales of the respective products.

4

choice simply must be within the range encompassed by the record as a whole." *Unisplay*, 69 F.3d at 519 ("[W]e do not hold that a jury may only arrive at a royalty specifically articulated by the parties during trial. Rather, a jury's choice simply must be within the range encompassed by the record as a whole."(internal citations omitted)). Fresenius proposed a royalty of between $2.2 and $8.8 million, while Baxter sought an award of $149 million. After considering all of the evidence, including the opinions of both parties' damages experts, the jury awarded Baxter $14.3 million, an amount clearly "within the range encompassed by the record as a whole." *Unisplay*, 69 F.3d at 519.

The Federal Circuit has repeatedly held that the finder of fact is not limited to selecting one or the other of the specific royalty figures urged by the parties as reasonable. *See SmithKline*, 926 F.2d at 1168 ("[a] court is not restricted in finding a reasonable royalty to a specific figure put forth by one of the parties."). In *SmithKline*, the Federal Circuit rejected the same argument being made by Baxter here, i.e., that the district court in that case was restricted to selecting either the 48% or 3% figures advanced and thus erred in selecting the intermediate rate of 25%. *Id.* Similarly, n *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554 (Fed. Cir.1986), the Federal Circuit approved the district court's use of its "own independent judgment" in rejecting the parties reasonable royalty figures of 2% and 21%, and instead awarding a 10% reasonable royalty. *Id.* at 1556-57. The jury's award of damages here is well within the range articulated by the parties. *See SmithKline*, 926 F.2d at 1168.

Moreover, the verdict is supported by substantial evidence in the record. Fresenius offered three different valuation methodologies for the jury to consider in determining an appropriate damages award. First, Fresenius offered its damages expert, who testified that, based on his analysis, the damages award should be somewhere in the range of $2.2 to $8.8 million. Tr. 641:15-642:8. In arriving at this range, Dr. Rubinfeld applied an incremental profit approach to calculating damages. *See* Tr. 630:19-631:1. Second, Fresenius' chairman and global CEO testified that, as an actual party to the hypothetical negotiation, he likely would have been willing to offer Baxter a royalty equal to the cost-savings of implementing a touch screen user interface as opposed to using another viable interface, resulting in a reasonable royalty damages award of about $2.4 million. *See* Tr. 503:24-504:9. Finally, Fresenius

5

presented evidence related to an independent valuation of Baxter's acquisition of Althin, suggesting that the patented touch screen technology was worth less than $1.9 million. *See* Tr. 588:3-19; 647:13-648:5 (evidence that Arthur Andersen valued Althin's entire technology portfolio at approximately $11 million, while all of the technology related specifically to hemodialysis machines was valued at a mere $1.9 million)

Each of these methodologies provides an alternative estimate of the value that could properly be attributed to the patents-in-suit, and each is supported by substantial evidence that was properly before the jury. *See Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995) (finding that a verdict is supported by substantial evidence if reasonable jurors, viewing the evidence as a whole, could have found the facts needed to support the verdict in light of the applicable law); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) ("[T]he verdict must be affirmed if there is substantial evidence to support the verdict[;] substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.") (citations omitted)). The jury could have utilized any of these methodologies, and, weighing the evidence presented by the parties, *mutatis mutandis*, properly come to a different conclusion than either Fresenius or Baxter.

The evidence presented at trial also fully supports the jury's award of damages related to the non-patented disposables. In particular, the jury could properly have limited the royalty base by excluding the majority of the disposables. *See, e.g.*, Tr. 378:6-379:1; 384:17-19; 387:23-388:5; 393:17-394:10, 395:3-6 (indicating that Fresenius had already paid Baxter once for some of the saline included in the "disposable" royalty base). Indeed, in light of the jury instruction on damages given by the Court, the jury could have determined that Baxter should only be awarded a royalty on disposables that were sold with the machines at the point of initial sale. *See* Jury Instruction "Damages - Royalty Base", Docket No. 963 at 15 ("[I]f Baxter demonstrates that the 2008K machine and the unpatented components or disposables are part of a single assembly, or part of a complete machine, or constitute a functional unit, you may award damages for those disposables or unpatented components. Items are

6

a functional unit if they function together to achieve one result.").

Finally, Fresenius vociferously argued that Baxter should not be awarded *any* royalty on disposables, and thus the figure of $91,000, though significantly less than what was requested by Baxter, is "within the range" proffered by the parties. *See* Mot. for New Trial at 4. On the basis of the record as a whole, therefore, the jury was justified in rejecting the award sought by Baxter or advocated for by Fresesenius, and was free to adopt a different figure. *See, e.g., SmithKline*, 926 F.2d 1168 (the fact finder "may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the evidence").

## II.     Evidence of Patient Deaths

Baxter's primary argument that the evidence of patient deaths was prejudicial is that the damages award had no evidentiary basis and therefore reflects the "passion and prejudice" of the jury as being enflamed by the information related to patient deaths. *See* Mot. for New Trial at 8. ("The jury's acknowledgment of Baxter's entitlement to a royalty on the related disposables but award of $91,000 indicates that the verdict was based on passion and prejudice.").

As an initial matter, this argument is largely obviated by the Court's determination that the damages award is not unreasonable. Second, the issue of the prejudicial effect of evidence related to patient deaths has already been analyzed extensively by this Court in its ruling on Baxter's two motions *in limine* to exclude this evidence in both trials. The Court issued a detailed order explaining its reasoning for allowing this evidence at the first trial, and also articulated its reasons for allowing the evidence at the pretrial conference for the second trial, and will not repeat those conclusions here. *See* Docket Nos. 737, 949.

Finally, the Court finds it difficult to fathom how a *$14 million* damages award can be construed as demonstrating that the jury was somehow "punishing" Baxter for patient deaths. While significantly less than what Baxter argued for, $14 million dollars is hardly a nominal sum. Accordingly, Baxter has failed to demonstrate that the admission of evidence related to patient deaths "substantially prejudiced"

7

Baxter, thereby warranting a new trial. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (citing *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992)).

## III. Other Evidence

Finally, Baxter argues that certain reports containing market research related to disposables conducted by a third party was improperly published to the jury and admitted into evidence, over Baxter's objections. *See* Mot. for New Trial at 11-13.

"A district court is vested with broad discretion to make … evidentiary rulings conducive to the conduct of a fair and orderly trial." *S.M. v. J.K.*, 262 F.3d 914, 919 (9th Cir. 2001) (quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). To succeed on a motion for a new trial based on an evidentiary ruling, Baxter would first have to show that the ruling was erroneous, and further, that the erroneous ruling "substantially prejudiced" Baxter. *Ruvalcaba* 64 F.3d at 1328.

As with the evidence related to patient deaths, Baxter's sole argument that it was substantially prejudiced by this evidence is that the jury's $14 million damages award was improper, a contention which the Court has discussed above. Moreover, Baxter makes absolutely no attempt to link this evidence in any way to the verdict. *See Henry*, 471 F.3d at 1002 (overturning jury's final award based on improperly considered evidence where the award was "*directly traceable* to an [evidentiary] error.") (emphasis added); *see also Jauregui v. City of Glendale*, 852 F.2d 1128, 1133 (9th Cir. 1988) ("To show reversible prejudice a party must demonstrate that the allegedly erroneous evidentiary ruling more probably than not was the cause of the result reached by the court.")*.*

Finally, the Court instructed the jury as to how it should consider the evidence in making its findings. For example, when PTX 846 was introduced as a document that Baxter's damages expert considered, the Court specifically limited the purposes for which the document was being offered, instructing the jury that "[i]t is not being received for the truth of what it asserts. This document is only being received for the limited purpose of allowing the jurors to see part of the information [that this] witness relied upon in formulating the opinions that he expressed to them." Tr. 352:1-5.

8

Baxter has failed to demonstrate that this evidence prejudiced it in any way, and therefore has failed to meet its high burden in seeking a new trial. The motion for a new trial is therefore DENIED.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED THAT Baxter's Motion for a New Trial Pursuant to Rule 59 [Docket No 969] is DENIED.

IT IS SO ORDERED.

Date:  3/21/08                                       *Saundra B Armstrong*
                                                     Saundra Brown Armstrong
                                                     United States District Judge