**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

FRESENIUS MEDICAL CARE
HOLDINGS, INC., *et al.*,

   Plaintiffs,

 v.

BAXTER INTERNATIONAL, INC., *et al.*,

   Defendants.

No. C 03-1431 SBA

**ORDER**

[Docket No 971]

  Currrently before the Court is Baxter Healthcare Corporation's ("Baxter") Motion for Entry of Permanent Injunction, or Alternatively, for Imposition of an Ongoing Royalty [Docket No. 971]. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. For the reasons that follow, the Court GRANTS the Motion for Entry of Permanent Injunction.

## BACKGROUND

  In 2003, plaintiffs Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. ("Fresenius") initiated this lawsuit by filing a complaint for a declaratory judgment of non-infringement and invalidity against Baxter related to U.S. Patent No. 5,247,434 ("'434 Patent"), U.S. Patent No. 6,284,131 ("'131 Patent"), and U.S. Patent No. 5,744,027 ("'027 Patent") (collectively, "patents-in-suit").  Baxter counterclaimed for infringement of each of the patents.

  In 2005, the Court granted summary judgment to Baxter that Fresenius infringes Claim 26 of the '434 Patent and Claim 1 of the '131 Patent. After three-plus years of litigation, in June 2006, Fresenius admitted that its 2008K machine infringes the asserted claims of the patents-in-suit. Docket No. 755. The Court then entered a judgment of infringement of those asserted claims. Docket No. 770. The remaining dispute for the jury to resolve was whether Fresenius's 2008K hemodialysis machine infringed upon claims 26 through 31 of the '434 patent, claims 1, 2, 3, 13, 14, 15, and 16 of the '131 patent, claims 7, 11, 14, 15, and 16 of the '027 patent, and claims 5 and 7 of the '476 patent. Fresenius

asserted that the claims of these patents were invalid either because they were obvious in light of prior art or because they were anticipated by prior art.

The jury returned a unanimous verdict on June 30, 2006, finding in favor of Fresenius on all issues submitted to it. *See* Docket No. 829 . The jury found that all remaining claims were either invalid as obvious or invalid as anticipated, and that the Fresenius 2008K did not infringe on either claim 5 or 7 of the '476 patent. Following the jury's verdict, Baxter moved for judgment as a matter of law and for a new trial, arguing that Fresenius had failed to present evidence to the jury that the patents were invalid, On February 13, 2007, the Court granted Baxter's motion for judgment as a matter of law that the patents were valid and ordered a second trial on damages. Docket No. 874

A jury trial for damages owed to Baxter for Fresenius's infringement was held from October 24, 2007 to October 29, 2007. The jury returned a verdict that Fresenius owed Baxter $14,175,000 for Fresenius's past sales of the infringing 2008K machine. Docket No. 962. The jury also found that Fresenius owed Baxter damages for sales of the related disposable products (i.e., dialyzers, concentrates, bloodlines, needles, and solutions) in the amount of $91,000. On November 7, 2007, the Court entered an order reflecting the verdict. Docket No. 965.

Baxter has filed post-trial motions for yet another trial, for entry of a permanent injunction, and for an award of damages including prejudgment interest. Fresenius has filed a motion for review of the clerk's taxation of costs.

## **LEGAL STANDARD**

"The grant of a patent is the grant of the right to invoke the state's power in order to exclude others from utilizing the patentee's discovery without his consent." *Smith International, Inc. v. Hughes Tool Company*, 718 F.2d 1573, 1577 (Fed. Cir. 1983) (citing *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 135 (1969)). Congress enacted 35 U.S.C. § 283 to protect this right to exclude. *Id.* Pursuant to 35 U.S.C. § 283, injunctions may be granted under the principles of equity to prevent the violation of any rights secured by patent, on such terms as the court deems reasonable." *Id.* "Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction

of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research." *Id.* at 1578.

In *eBay Inc. v. MercExchange, L.L.C.*, the Supreme Court directed district courts to apply the well-established four-factor test to requests for injunctive relief in patent cases. *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1839 (2006). Under that test, to be awarded injunctive relief, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.*

## ANALYSIS

Baxter moves for entry of permanent injunction, or alternatively, for imposition of an ongoing royalty. [Docket No. 971]. Baxter seeks prospective relief; it does not seek to enjoin users of 2008K machines already in the field, or to enjoin those users from purchasing disposables for those machines. Specifically, Baxter has asked this Court to enter an injunction against sales of 2008K machines beginning 9 months after this Court's Order.

In *eBay Inc. v. MercExchange, L.L.C.,* the Supreme Court directed district courts to apply the well-established four-factor test to requests for injunctive relief in patent cases. *eBay Inc.*, 126 S.Ct. at 1839. Under that test, to be awarded injunctive relief, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.*

**A.     Irreparable Harm**

As the Supreme Court noted in *eBay*, "[f]rom at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases." *eBay, Inc.* 126 S.Ct. at 1841 (Roberts, J., concurring). Courts routinely find irreparable harm, and therefore grant

3

permanent injunctions where, as here, the infringer and the patentee are direct competitors. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 2007 WL 869576 at *2 (E.D. Tex. 2007) (granting permanent injunction based on the "high value of intellectual property when it is asserted against a direct competitor in the plaintiff's market"); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 613 (D. Del. 2007) (granting permanent injunction and noting the parties "are head-to-head competitors, and [the patentee] has a right, granted by Congress, not to assist its rival with the use of proprietary technology"). In this case, Baxter and Fresenius are head-to-head competitors in the same market. *See* Oct. 2007 Tr. 168:21-23; June 2006 Tr. 961:4-14; Oct. 2007 Tr. 62:24-63:1. Baxter sells hemodialysis and peritoneal dialysis machines and related disposables, in direct competition with Fresenius. See Oct. 2007 Tr. 8:23-9:17. The law favors Baxter's right to the full value of its property, particularly the ability to keep it out of its main competitor's hands. *Muniauction, Inc. v. Thomson Corp.*, 502 F.Supp.2d 477, 482-84 (W.D. Pa. 2007). Indeed, the principal value of a patent is the right to exclude arch competitors from making, selling and using an infringing product.

Additionally, the harm to Baxter's reputation resulting from Fresenius's wrongful appropriation of Baxter's technology forms a basis for injunctive relief. It is well-established that harm to reputation as an innovator is an injury "not compensable by damages." *Muniauction*, 502 F. Supp.2d at 483 ("such a harm is not compensable in damages, and is irreparable, making equitable relief appropriate"); *Black & Decker Inc. v. Robert Bosch Tool Corp.*, 2006 WL 3446144 at *4 (N.D. Ill. 2006) (reputation as an innovator harmed by continued selling of infringing product); *Wald v. Mudhopper Oilfield Servs., Inc.*, 2006 WL 2128851 at *5-6 (W.D. Okla. 2006) (patentee's "reputation for innovation" was damaged as a result of defendant's infringement).

Allowing Fresenius to continue to infringe would irreparably harm Baxter's reputation and goodwill as an innovator, threaten Baxter's extensive investments in research and development, and potentially encourage other companies to infringe Baxter's intellectual property. The evidence at trial showed that Baxter annually invests over half a billion dollars each year on research and development, purchases new technology to expand its reach into new markets, and spends tens of millions of dollars

4

to license technology from other companies. *See* Oct. 24, 2007 Tr. 169:5-170:9; Oct. 25, 2007 Tr. 12:17-19. This investment will be largely for naught, and Baxter's reputation as an innovator and the associated goodwill will be tarnished, if Fresenius, Baxter's arch-rival in the renal field, is allowed to market and sell a product that Baxter, and not Fresenius, invented. Accordingly, this factor favors an injunction.

### B.     Inadequacy of Monetary Damages

Courts have frequently found that "monetary damages are not an adequate remedy against future infringement because 'the principal value of a patent is its statutory right to exclude.'" *Telequip Corp. v. The Change Exchange*, 2006 WL 2385425 at *4-5 (N.D.N.Y. Aug. 15, 2006) (citing *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp.2d 537, 546 (D. Del. 2005)); *see also Boehringer Ingelheim Vetmedica v. Schering-Plough*, 106 F. Supp.2d 696, 703 (D.N.J. 2000) ("Where there is no question of future infringement and infringement and validity have already been determined, monetary damages are generally considered inadequate in patent cases.") (emphasis added). As one court recently explained: "[i]f plaintiff cannot prevent its only competitor's continued infringement of its patent, the patent is of little value." *Muniauction*, 502 F. Supp.2d at 482.

Here, the loss of goodwill, reputation for innovation, the legal right to exclude, including the right to control the terms of any licensing arrangement, are all forms of irreparable injury that cannot be easily and readily quantified through a simple monetary award. This factor favors an injunction.

### C.     The Balance of Hardships

The evidence Fresenius offered at trial that it has numerous, easily-implemented alternatives to the patented technology supports a finding that the balance of hardships tips in Baxter's favor. Fresenius's CEO has conceded that "there are a lot of ways to approach data input" and an injunction would not be a "big issue." Mot for New Trial, Ex. 2. Fresenius' lead engineer even listed some of the many inexpensive, non-infringing alternative designs readily available to Fresenius, such as "a mouse, a touch pad, a keyboard, so on and so forth." *See* Oct. 26, 2007 Tr. 472:4-9; *see also* June 2006 Tr. 390:3-9. Additionally, Daniel Rubinfeld, Fresenius' damages expert, opined that a "design around" in

the year 2000 would have cost between $200,000-$1,000,000 and take about six to nine months to implement. Docket No. 452, Exhibit 1, Rebuttal Expert Report of Daniel L. Rubinfeld, 219. Fresenius's Chairman testified that a touch screen was only $40 less expensive than using a mouse, keyboard, or scratchpad. Oct. 26, 2007 Tr. 503:24-504:22; *see also* Oct. 25, 2007 Tr. 199:13-17. Based on these admissions, Fresenius cannot be heard to now argue that implementing another input device would cause it undue hardship or disadvantage. *Muniauction*, 502 F. Supp.2d at 484 (W.D. Pa. 2007) (rejecting hardship arguments where "[a]t trial, defendants presented numerous low-cost, easily executed replacements for the [infringing] system").

Additionally, in cases where the infringer is capable of selling non-infringing items, the balance of hardships favors the patentee. *MGM Well Servs., Inc. v. Mega Lift Sys. LLC*, 505 F.Supp.2d 359, 379 (S.D. Tex. 2007). Fresenius repeatedly argued that the 2008H is an "excellent machine" and performs hemodialysis just as well as the 2008K. *See* Oct. 26, 2007 Tr. 462:3-463:3; June 2006 Tr. 263:12-264:4; 310:24-311:21. Having relied upon the 2008H as its "non-infringing alternative" in this litigation, Fresenius cannot now disavow that stance and claim hardship in being made to rely on that machine.

Finally, as Baxter rightly points out, any alleged hardship Fresenius claims in having to substitute "a mouse, a touch pad, [or] keyboard" on the 2008K machine will be of its own making. *See* Oct. 26, 2007 Tr. 472:4-9.]. Fresenius stipulated in June of 2006 that it was infringing at least two of the patents, and has been apprised since February 2007 of the Court's determination that it had failed to present sufficient evidence at trial that the patents are invalid. *See* Docket Nos. 370, 874. Although it has had over a year to take commercially reasonable steps to redesign its machine, Fresenius has apparently taken no action to ease any hardship it may suffer as a result of an injunction. *See Windsurfing Int'l, Inc. v. AMF*, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); *Smith & Nephew v. Synthes*, 466 F. Supp. 2d 978, 984 (W.D. Tenn. 2006) (finding hardship for loss of sales and for ceasing operations is not sufficient because they are direct consequences of the illegal patent infringement). Indeed, the Court

6

finds it somewhat bewildering that, having admitted to infringing the patents nearly two years ago and having known for at least a year that an injunction was all but inevitable, Fresenius has apparently done nothing to implement any alternative to the 2008K. It is Fresenius's burden, and not Baxter's, to taste the bitter fruit of its own inaction. This factor therefore favors an injunction.

### C. Whether the Public Interest Would Not Be Disserved By Granting A Permanent Injunction

Inherent in the patent right is the right to exclude others from violating the patent during its term. The Federal Circuit has repeatedly emphasized the importance of the right to exclude: "Infringement having been established, it is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from use of his property." *Richardson v. Suzuki Motor Co.*, Ltd. 868 F.2d 1226, 1246-47 (Fed. Cir. 1989). Moreover, the Federal Circuit has observed that the public interest is clearly served by healthy, fair competition in the dialysis marketplace, which will be achieved by keeping infringing products off the market. *TiVo*, 446 F. Supp.2d at 670.

Numerous courts have granted permanent injunctions in cases involving medical devices where, as here, there were alternative products already on the market or available to the infringer. *See Innogenetics, N.V. v. Abbott Labs.*, 2007 U.S. Dist. LEXIS 3148, at *1-2 (W.D. Wis. Jan. 12, 2007) (granting permanent injunction, where "other diagnostic techniques exist[ed] and would suffice, even if they are not as effective as the patented technique."); *Smith & Nephew*, 466 F. Supp. 2d 978 (granting permanent injunction enjoining sale of medical related product where, among other things, similar products were available on the market).

Fresenius' chief argument against the issuance of an injunction is premised upon concerns for patient safety. Specifically, Fresenius points to: (1) the annual demand for dialysis machines; (2) the lack of proof that other suppliers can meet customer demand; (3) Fresenius' alleged inability to market the 2008H; and (4) the fact that other hemodialysis machines allegedly lack features found in the 2008K. Opp'n at 6-13. All of these concerns, however, are fully addressed by Fresenius's concession that it can implement a redesign of the 2008K in nine months; Fresenius states it "could conceivably have a non-

7

touchscreen replacement for the 2008K designed, validated, and if necessary submitted for FDA approval, within 9 months." Opp'n at 10 n.5. Fresenius also concedes that allowing it nine months to redesign "will *guarantee* an uninterrupted supply of machines to the market." *Id.* (emphasis added). Courts have granted injunctions for medical devices with a transition period in cases where public health concerns exist. *See, e.g., Shiley, Inc. v. Bentley Labs., Inc.,* 601 F. Supp. 964, 971 (C.D. Cal. 1985) (granting injunction for medical device with transition period and increased royalty rate).

Additionally, as Baxter points out, Fresenius is now singing a far different tune as to the importance of the patented touch screen and the ease of a design-around than it did to the jury during the trial. During the trial, Fresenius argued that the patented touch screen was simply a piece of plastic "slapped [] on a hemodialysis machine," *see* June 19, 2006 Tr. 148:15-18, and that "[i]f you removed this piece of plastic you could still control the entire machine using these buttons." Oct. 24, 2007 Tr. 148:23-25. However, after employing this argumentative strategy at trial, apparently to some success, it now intimates -- but does not explicitly state, perhaps out of a desire to avoid straightforwardly contradicting the representations it made at trial -- that if Fresenius is forced to produce a machine without the touch screen its business will be destroyed and tens of thousands of hemodialysis patients will suffer as a result. However, this parade of horribles is belied by Fresenius's own footnoted concession that allowing it nine months to redesign "will guarantee an uninterrupted supply of machines to the market." Opp'n at 10 n.5. Thus, once Fresenius's public-interest bluster is put to the side, it is clear that Fresenius agrees -- and is in fact on record as agreeing -- that a design around can be relatively quickly implemented.

## CONCLUSION

Accordingly, Baxter's Motion for a Permanent Injunction [Docket No. 971] is GRANTED. This matter is referred to a magistrate judge to enforce all provisions as set forth as follows:

IT IS HEREBY ORDERED, subject to the conditions relating to the transition period as articulated below, that the plaintiffs Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc. (collectively "Fresenius"), any of their subsidiaries, and their officers, agents, servant, employees, and

8

attorneys, and those persons in active concert or participation with any or all of them who receive actual notice of this Permanent Injunction (all of said individuals and entities being referred to herein as the "Fresenius Parties") are herby permanently enjoined from infringing or inducing the infringement of claims 1-3 and 13-16 of U.S. Patent No. 6,248,131 ("the '131 Patent"); claims 26-31 of U.S. Patent No. 5,247,434 ("the '434 Patent"), and claim 11 of U.S. Patent No. 5,744,027 ("the '027 Patent") (all of said patent claims being referred to herein as "Asserted Claims" and all of said patents referred to herein as "Patents-In-Suit"), until the expiration of the Patents-In-Suit, by:

(a) making, using, selling, and/or offering to sell in the United States the 2008K hemodialysis machine, any other products that meet all the limitations of the Asserted Claims or any product not more than colorably different from the 2008K hemodialysis machine (collectively referred to herein as "Infringing Products"); and

(b) assisting others in making, using, importing, selling and/or offering to sell in the United States any Infringing Products.

Nothing in paragraphs (a) and (b) above prevents the Fresenius Parties from continuing to use 2008K machines that were already in the field or sold to customers before the date of this Permanent Injunction consistent with the other provisions of this Permanent Injunction. Nothing in this Permanent Injunction prohibits Fresenius from making, using, selling or offering for sale its 2008H hemodialysis machine or any other hemodialysis machine that does not infringe the Patents-In-Suit.

IT IS FURTHER ORDERED that the injunction against the activities listed in paragraphs (a) and (b) above shall become effective on January 1, 2009. For purposes of this Permanent Injunction, the period from the date of the jury's verdict until January 1, 2009 shall be known as the Transition Period.      IT IS FURTHER ORDERED:

(a) Fresenius shall pay to Baxter an ongoing royalty of 10% of the sales price for any Infringing Products that are sold during the Transition Period;

(b) Fresenius shall pay a royalty of 7% of the sales price for all Disposable Products linked to sales of Infringing Products from November 7, 2007 until expiration of the Patents-In-Suit. For

purposes of this Permanent Injunction, Disposable Products include dialyzers, concentrates, bloodlines, fistula needles, spare parts and service;

  (c) Fresenius shall provide payment to Baxter of any royalties due under paragraphs (a) and (b) on a quarterly basis. All royalty payments shall be accompanied by a report indicating the number of units sold and the sales price for all Infringing Products and Disposable Products;

  (d) Payment not made within the date due under paragraph (c) shall accrue interest at the rate of 10% compounded monthly; and

  (e) Baxter shall have the right to a full accounting, conducted by an independent third-party, at Baxter's own expense and upon reasonable notice, to assess Fresenius' compliance with any of the terms contained in this Permanent Injunction.

  Nothing in this Permanent Injunction shall prohibit the Fresenius parties from engaging in the design, development or testing of any product which does not infringe the Patents-In-Suit.

  IT IS SO ORDERED.

Date: 3/21/08

             *Saundra B Armstrong*
             Saundra Brown Armstrong
             United States District Judge