1    Juanita R. Brooks, SBN 75934, brooks@fr.com
     Todd G. Miller, SBN 163200, miller@fr.com
2    Fish & Richardson P.C.
     12390 El Camino Real
3    San Diego, CA 92130
     Telephone:  (858) 678-5070
4    Facsimile:  (858) 678-5099

5    Mathias W. Samuel, pro hac vice, samuel@fr.com
     Michael J. Florey, pro hac vice, florey @fr.com
6    Thomas S. McClenahan, SBN 203204, mcclenahan@fr.com
     Michael J. Pape, pro hac vice, pape@fr.com
7    Fish & Richardson P.C.
     60 South Sixth Street, Suite 3300
8    Minneapolis, MN 55402
     Telephone:  (612) 335-5070
9    Facsimile:  (612) 288-9696

10   Limin Zheng, SBN 226875, zheng@fr.com
     Fish & Richardson P.C.
11   500 Arguello Street, Suite 500
     Redwood City, CA 94063
12   Telephone:  (650) 839-5070
     Facsimile:  (650) 839-5071
13
     Attorneys for Plaintiffs/Counterclaim Defendants
14   Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc.

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                        (OAKLAND DIVISION)

18

19   FRESENIUS MEDICAL CARE HOLDINGS,            Case No. C 03-01431 SBA (EDL)
     INC., a New York corporation; and FRESENIUS
20   USA, INC., a Massachusetts corporation,     **FRESENIUS' NOTICE OF MOTION AND
                                                 MOTION FOR NEW TRIAL TO**
21              Plaintiffs and Counter-          **DETERMINE DAMAGES FOR U.S.**
     Defendants,                                 **PATENT NO. 5,247,434**
22
          v.                                     Date:      February 23, 2010
23                                               Time:      1:00 p.m.
     BAXTER INTERNATIONAL, INC., a               Place:     Courtroom 1, 4th Floor
24   Delaware corporation; and BAXTER            Judge:     Hon. Saundra B. Armstrong
     HEALTHCARE CORPORATION, a
25   Delaware corporation,

26              Defendants and Counterclaimants.

27

28

1

# **TABLE OF CONTENTS**

2  NOTICE OF MOTION ................................................................................................................. 1

3  POINTS AND AUTHORITIES IN SUPPORT OF MOTION...................................................... 1

4  I.      SUMMARY OF ARGUMENT ......................................................................................... 1

5  II.     BACKGROUND .............................................................................................................. 2

6  III.    ARGUMENT .................................................................................................................... 3

7          A.      The Federal Circuit and Supreme Court Precedent Require A
                   New Trial As To Damages For Infringement Of The '434 Patent ...................... 3
8
           B.      The Prior Damages Award Cannot Be Used As A Reasonable
9                  Royalty For Infringement Of The '434 Patent...................................................... 6

10         C.      An Advisory Verdict From The Jury As To The Post-Verdict
                   Royalty Rate Will Significantly Streamline the Remaining Work
11                 and Conserve Judicial and Party Resources......................................................... 9

12  IV.     CONCLUSION ............................................................................................................... 11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*Ariba, Inc. v. Emptoris, Inc.*,
    567 F. Supp. 2d 914 (E.D. Tex. 2008) ...................................................................10

4

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
5
    584 F. Supp. 2d 916 (E.D. Tex. 2008) ...................................................................10

6

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009)...................................................................................9

7

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
8
    318 F. Supp. 1116 (S.D.N.Y. 1970)............................................................................9

9

*Memphis Comm. School Dist. v. Stachura*,
    477 U.S. 299 (1986)......................................................................................4, 5

10

*NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ............................................4

11

*Oiness v. Walgreen Co.*,
12
    838 F. Supp. 1420 (D. Colo. 1993)..............................................................................6

13

*Verizon Services Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007).................................................................................3, 4

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION**

2        PLEASE TAKE NOTICE that on February 23, 2010 at 1:00 p.m., or as soon thereafter as

3   the matter may be heard before United States District Court Judge Saundra Brown Armstrong, in

4   Courtroom 1 of the United States Courthouse located at 1301 Clay Street, 4th Floor, Oakland,

5   California, 94612, Plaintiffs Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc.

6   (collectively "Fresenius") will move the Court for a new trial to determine damages for U.S.

7   Patent No. 5,247,434 ("the '434 patent").

8        Fresenius has filed a Motion To Stay Remand Proceedings pending resolution of the

9   United States Patent And Trademark Office's reexamination final rejection of the patent-in-suit.

10  For the reasons stated therein, Fresenius believes that the Court should stay the remand

11  proceedings.  Should the Court choose to go forward on remand, the Court must conduct a jury

12  trial to determine the damages due to Defendants Baxter International, Inc. and Baxter Healthcare

13  Corporation (collectively "Baxter") for Fresenius's infringement of the '434 patent.  This motion

14  is based on the points and authorities set forth below, the accompanying declaration of Michael E.

15  Florey and exhibits thereto, any reply papers which may be filed, the pleadings filed in this matter,

16  and the remainder of the Court's file in this matter.

17               **POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

18  **I.       SUMMARY OF ARGUMENT**

19        This case is before the Court on remand from the United States Court of Appeals for the

20  Federal Circuit.  In October 2007, the Court conducted a jury trial to determine damages in light of

21  its JMOL ruling that Fresenius had infringed fourteen claims from three patents owned by Baxter.

22  The Jury returned a general verdict, awarding Baxter reasonable royalty damages of $14,266,000

23  for Fresenius' use of the three patents at issue.  On appeal, the Federal Circuit reversed the Court's

24  JMOL as to the '027 and '131 patents and affirmed liability for the '434 patent.  Because the Jury

25  did not specify what portion of its damages award was attributable to the '434 patent, Fresenius is

26  entitled to a new damages trial since the Court of Appeals has limited Fresenius' liability to only a

27  single Baxter patent.  The prior damages award—which compensated Baxter for infringement of

28  three patents—is no longer valid in light of the ruling on appeal.

1    In addition, the Federal Circuit vacated this Court's post-injunction royalty award and

2 remanded the issue for reconsideration in light of the liability ruling.  Because there will be

3 significant overlap in the evidence as to past royalties due for the '434 patent and any post-verdict

4 royalties the Court might award, requesting an advisory verdict from the same Jury as to the post-

5 verdict royalty rate will make efficient use of the Court's and the parties' resources.  Therefore,

6 the Court should conduct a new jury trial to determine both the past and post-verdict reasonable

7 royalty for the '434 patent.

8 **II.     BACKGROUND**

9    In June 2006, this Court held a jury trial on validity of twenty claims from four patents—

10 U.S. Patent Nos. 6,248,131 ("the '131 patent"), 5,247,434 ("the '434 patent"), 5,744,027 ("the

11 '027 patent"), and 5,326,476 ("the '476 patent")—and infringement of two claims of the '476

12 patent.  (Doc. No. 829).  The jury found each of the twenty claims invalid and the two claims of

13 the '476 patent not infringed.[1]  *Id.*  In February 2007, the Court granted Baxter's motion for

14 judgment as a matter of law ("JMOL") that all of the asserted claims of the '131, '434, and '476

15 patents and claim 11 of the '027 patent were not invalid.[2]  (Doc. No. 874).  The Court also granted

16 Baxter a new trial on the jury's finding that Fresenius had not infringed claims 5 and 7 of the '476

17 patent, and ordered a new trial to determine damages for all patents.  *Id.*  On the eve of the

18 damages trial, Baxter advised Fresenius and the Court that it was dropping the '476 patent from

19 the case, and the Court thereafter dismissed it by joint stipulation.  (Doc. No. 942).

20    Following a jury trial to determine damages, the jury awarded and this Court ordered

21 Fresenius to pay Baxter $14,266,000 in damages.  (Doc. Nos. 958, 1018).  The Court then entered

22 a permanent injunction, but stayed the injunction until January 1, 2009.  (Doc. No. 1019).  The

23 Court also awarded Baxter an ongoing royalty linked to infringing machines sold during the stay

24

25  [1]   The jury considered the validity of claims 26-31 of the '434 patent, claims 1-3 and 13-16 of the
26 '131 patent, claims 5 and 7 of the '476 patent, and claims 7, 11, and 14-16 of the '027 patent, and
the infringement of claims 5 and 7 of the '476 patent.  (Doc. No. 829).

27  [2]   In its JMOL, Baxter did not challenge the Jury's verdict that claims 7, 14, 15, and 16 of the
28 '027 patent were invalid.  (*See* Doc. No. 874 at 6 n.1.).

FRESENIUS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL
TO DETERMINE DAMAGES FOR U.S. PATENT NO. 5,247,434
Case No. C 03-01431 SBA (EDL)

1    of the injunction.  *Id.*  Pursuant to agreement between the parties, Magistrate Judge Edward M.

2    Chen ordered that Fresenius pay these royalties into escrow.  (Doc. No. 1037).

3          Fresenius appealed the Court's ruling on JMOL, injunctive relief, post-verdict royalty, and

4    constructions of certain claim terms.  (Doc. No. 1038 at 1-2).  Baxter cross appealed the jury's

5    determination that certain claims of the '027 patent were anticipated.  *Id.*  In an opinion dated

6    September 10, 2009, the Federal Circuit (1) reversed this Court's grant of JMOL as to the '027

7    and '131 patents; (2) rejected Baxter's cross-appeal as to the anticipated '027 patent claims; and

8    (3) sustained the Court's JMOL as to claims 26-31 of the '434 patent.  *Id.* at 11-16.  As a result,

9    claims 26-31 of the '434 patent are the only claims remaining in the litigation.  The Federal

10   Circuit held that this Court did not abuse its discretion when it entered a permanent injunction, but

11   nonetheless vacated the injunction and the accompanying post-verdict royalty in view of the

12   reversal of JMOL as to two of the three patents-in-suit.  *Id.* at 22-25.

13   **III.     ARGUMENT**

14       **A.     The Federal Circuit and Supreme Court Precedent Require A New Trial As
                  To Damages For Infringement Of The '434 Patent**
15

16        The Federal Circuit has stated that where a jury renders a general damages verdict for

17   multiple patents, and liability is affirmed on less than all those patents, a new damages trial is "the

18   normal rule."  *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir.

19   2007).  In *Verizon*, the jury found Vonage liable for infringement of three Verizon patents, and

20   awarded damages of $58,000,000.  *Id*. at 1298.  On appeal, the Federal Circuit affirmed liability

21   for two of the patents, but remanded for a new liability trial as to the third patent in light of the

22   district court's erroneous claim construction.  *Id.*  Because the jury had not broken out its damages

23   award on a patent-by-patent basis, the Federal Circuit vacated the damages award and remanded

24   for further consideration of the damages issue.  *Id*. at 1311.  In so holding, the appeals court stated:

25                    In light of our holding that a new trial is required on the issue of
                      infringement of the '880 patent, we also vacate the determination
26                    that Verizon is entitled to a damages award of $58,000,000 and a
                      royalty rate of 5.5%, **since the jury's verdict gives no indication**
27                    **what portion of such damages were allocated to the**
                      **infringement of the '880 patent**.  **In a situation—such as this**
28                    **one—where the jury rendered a single verdict on damages,**

                      3   FRESENIUS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL
                          TO DETERMINE DAMAGES FOR U.S. PATENT NO. 5,247,434
                          Case No. C 03-01431 SBA (EDL)

1      **without breaking down the damages attributable to each patent,
       <u>the normal rule would require a new trial as to damages</u>**.

2

3    *Id*. at 1309-10 (citing *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 312 (1986) (emphasis

4    added)).

5          Likewise, in *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), a jury

6    found that the defendant infringed four patents, and awarded general damages of $53,704,322.69.

7    *Id*. at 1287.  On appeal, the Federal Circuit reversed as to the method claims, affirmed liability as

8    to certain system and apparatus claims, and remanded still other claims to the district court in light

9    of an erroneous claim construction.  *Id.* at 1325-26.  The court vacated the damages award,

10   observing that:

11              On remand, if prejudice is shown with respect to the claims
               containing the "originating processor" limitation, and because the
12             jury verdict did not specify the amount of infringing sales attributed
               to each individual patent claim, or the specific devices and services
13             determined by the jury to infringe each separately asserted claim, the
               district court will have to determine the effect of any alteration of
14             the jury verdict on the district court's damage award and on the
               scope of the district court's injunction.  We thus affirm-in-part,
15             reverse-in-part, vacate-in-part, and remand for further proceedings
               consistent with this opinion.
16

17   *Id*. at 1326.

18         Additionally, the United States Supreme Court's decision in *Stachura*, cited by the Federal

19   Circuit in *Verizon*, supports the "normal rule" of retrying damages where a verdict is reversed-in-

20   part.  In *Stachura,* the district court allowed the jury to award three categories of damages: (1)

21   compensatory; (2) punitive; and (3) damages based on the jury's perception of the "importance" of

22   the violated constitutional provisions.  477 U.S. at 312.  The Supreme Court ruled that the third

23   category of damages was not properly recoverable.  *Id*.  The Supreme Court noted that although

24   the verdict form had broken out punitive damages, "it did not specify how much of the remaining

25   damages was designed to compensate respondent for his injury and how much reflected the jury's

26   estimation of the value of the constitutional rights that were infringed."  *Id*.  The Court ruled that

27   in light of this generalized verdict, the amount of damages awarded based on the erroneous third

28

1    category was "unknowable," and therefore "the case must be remanded for a new trial on

2    compensatory damages."  *Id.* at 312-313.

3         This case fits squarely within the rule established by the Federal Circuit and the Supreme

4    Court.  The damages jury returned a single, generalized verdict covering all asserted claims from

5    three Baxter patents.  The jury did not specify damages on a claim-by-claim basis, or even a

6    patent-by-patent basis.  In the words of the Supreme Court, the amount of damages that the jury

7    assigned to Fresenius' infringement of the '434 patent is "unknowable."  But that is now all that

8    Fresenius is liable for.  Baxter is not entitled to any reasonable royalty for the '027 patent or the

9    '131 patent.  Yet the jury's verdict undoubtedly contained some award for those patents, since the

10   Court instructed the jury at the outset of trial that all three patents were valid and infringed, and

11   that "[y]our job is to determine the amount of monetary damages to be awarded to Baxter to

12   compensate it for Fresenius' infringement of the asserted claims of the '434, '131 and '027

13   patents." (Damages Trial Tr. (Florey Decl.,[3] Ex. 1) at 105:12-15).

14        In light of the Court's instruction—to which Baxter made no objection—it must be

15   presumed that the Jury did its job and awarded damages for infringement of all three patents.

16   Additionally, the Jury found that Baxter was entitled to damages on Fresenius' sale of disposable

17   products. (Doc. No. 962).  However, the amount awarded by the Jury for these damages was very,

18   very small compared to what Baxter had asked for—$91,000 instead of the $91,000,000 sought by

19   Baxter.  If the first jury barely awarded damages on unpatented disposable products in light of

20   infringement of three patents, it is certainly possible that a second jury would award nothing at all

21   for infringement of a single patent.  Additionally, Baxter argued that infringement by the 2008K

22   machine of fourteen claims from three Baxter patents "pulled through" sales of unpatented

23   disposable products.  On remand the jury could easily find that use by the 2008K machine of only

24

25

26

---

27   [3]   "Florey Decl." refers to the Declaration of Michael E. Florey in Support of Fresenius' Motion
     for New Trial To Determine Damages For U.S. Patent No. 5,247,434, filed concurrently herewith.
28

1   six claims from the '434 patent did not "pull through" any sales at all.  Now that only a single

2   patent supports a damages award, the need for a new damages trial is manifest.[4]

3   **B.      The Prior Damages Award Cannot Be Used As A Reasonable Royalty For**
       **Infringement Of The '434 Patent**

4

5   Baxter may attempt to argue that a new damages trial is unnecessary because the Jury's

6   award amounted to a licensing "package deal" for the right to use a touch screen on a

7   hemodialysis machine.  Baxter will likely assert that the Jury's award covers a hypothetical

8   negotiation for any rights needed by Fresenius to make and sell the 2008K.  This argument is

9   without merit, as it ignores both the clear instructions given to the Jury, as well as Baxter's own

10  presentation of evidence at trial.

11      First, the jury was instructed that all three patents were valid and infringed, and that its job

12  was to award damages for that infringement.  (Doc. No. 963 at p. 11).  Since this was solely a

13  damages trial, there was never any suggestion that the royalty analysis advanced by either side

14  applied to less than all three patents.[5]

15      At trial, the parties hotly contested whether Baxter had satisfied the "Entire Market Value

16  Rule," thereby allowing Baxter to include the entire value of the 2008K machine in the royalty

17  damages base.  The Court instructed the Jury that "[i]f you find that the **infringing patented**

18  **features** of the 2008K were the basis for customer demand, you may award Baxter damages based

19  on the value of the entire machine."  *Id.* at p. 15 (emphasis added).  In other words, the Jury was

20  instructed that it should consider **all** of the patented features—every feature covered by the

21  fourteen claims from the three asserted patents—in evaluating the basis for customer demand.

22  Following appeal, the **majority** of those features are no longer subject to a damages claim by

23  ───────────────
    [4]   *See also Oiness v. Walgreen Co.*, 838 F. Supp. 1420, 1422 (D. Colo. 1993) (on remand "for
24  reconsideration of the award of damages" because of erroneous jury instruction, holding that a
    new damages trial was necessary even though the Federal Circuit did not expressly remand for a
25  "new trial" because "a judicial re-assessment of a prior jury's damage award would be in
    derogation of Defendant's Seventh Amendment right to a jury trial") (citing *Dimick v. Schiedt*,
26  293 U.S. 474 (1935).

27  [5]   By contrast, at the first trial Baxter may have suggested that its analysis applied if less than all
    the patents were valid and infringed, since four patents were at issue and liability was contested
28  for each.  This simply was not the case at the damage retrial—liability was established for all three
    remaining patents.

1  Baxter. On re-trial, a jury could easily find that Baxter cannot satisfy the Entire Market Value

2  Rule based on six claims from a single patent.

3          Second, Baxter's trial presentation did not treat the damages issue as encompassing a

4  single invention. Instead, Baxter repeatedly stressed that Fresenius was adjudged to have

5  infringed three different patents with multiple claims:

6      *   "Fresenius has taken Baxter's intellectual property. Intellectual property in the
           form of three United States patents." (Damages Trial Tr. at 106:23-25 (Baxter
7          opening statement)).

8      *   "Q: It is fa[i]r to say that the metes and bounds of the rights of Baxter that would
9          be negotiated in the hypothetical negotiation are found in the claims of the patent,
           right?

10         A: Yes, That's fair." (*Id.* at 663:7-10 (Baxter cross-exam of Prof. Rubinfeld)).

11     *   "I can tell you three things they took from Baxter. They took three patents. And I
           think we have all been pretty gingerly here: take, infringe, infringed upon.
12
           It's called stealing. They stole Baxter's property. And that was property Baxter
13         paid a lot of money for. And it was property they needed in order to compete.

14         The other thing we heard a lot about is the patents can be reduced to this (indicating
           [touch screen]).
15
           The United States Patent Office looked at these inventions. And there are multiple
16         inventions in here for years. They examined this thing thoroughly. There was all
           sorts of prior art cited that you will see. The U.S. Patent Office didn't put a patent
17         on this (indicating [touch screen]).

18         What the U.S. Patent Office did was put a patent on this (indicating [hemodialysis
           machine])." (*Id.* at 749:8-22 (Baxter closing statement)).

19         In addition to the arguments from its counsel, Baxter's witnesses also stressed the broad

20  coverage afforded by the multiple asserted claims. Baxter expert Richard Ferraro sponsored a

21  series of demonstrative exhibits designed to stress how many different features of the 2008K

22  machine were covered by Baxter's patents. (Florey Decl., Ex. 2 at DTX-BAB.12 – DTX-

23  BAB.21). Mr. Ferraro also testified as to the 2008K "features" covered by the claims of the

24  patents. (Damages Trial Tr. at 253-264 (Ferraro Direct Testimony)). Baxter no doubt presented

25  this testimony to demonstrate for the Jury the value of the features covered by all three of the

26  asserted patents.

27

28

1    Baxter sought and received an award of damages for Fresenius' use of fourteen claimed

2 inventions in its 2008K machine.  Following appeal, it is now the case that Baxter is entitled to

3 compensation for only six claimed inventions.  A new damages trial is necessary and required to

4 determine the reasonable royalty in this new hypothetical licensing world.  Indeed, twelve of the

5 fifteen *Georgia- Pacific* factors specifically relate to the nature of the "patent" or the "invention"

6 being valued:

7    Factor #1: The royalties received by the patentee for the licensing of the **patent in suit**,
proving or tending to prove an established royalty.

8

9    Factor #2: The rates paid by the licensee for the use of other patents comparable to the
**patent in suit**.

10    Factor #4: The licensor's established policy and marketing program to maintain his **patent
monopoly** by not licensing others to use **the invention** or by granting licenses under

11    special conditions designed to preserve that monopoly.

12    Factor #6: The effect of selling the **patented specialty** in promoting sales of other products
of the licensee; the existing value of the invention to the licensor as a generator of sales of

13    his non-patented items; and the extent of such derivative or convoyed sales.

14    Factor #7: The duration of the **patent** and the term of the license.

15    Factor #8: The established profitability of the **product made under the patent**; its
commercial success; and its current popularity.

16

17    Factor #9: The utility and advantages of the **patent property** over the old modes or
devices, if any that had been used for working out similar results.

18    Factor #10: The nature of the **patented invention**; the character of the **commercial
embodiment** of it as owned and produced by the licensor; and the benefits to those who

19    have used the invention.

20    Factor #11: The extent to which the infringer has made use of **the invention**; and any
evidence probative of the value of that use.

21

22    Factor #12: The portion of the profit or of the selling price that may be customary in the
particular business or in comparable businesses to allow for the **use of the invention** or
analogous inventions.

23

24    Factor #13: The portion of the realizable profit that should be credited **to the invention** as
distinguished from non-patented elements, the manufacturing process, business risks, or
significant features or improvements added by the infringer.

25

26    Factor #15: The amount that a licensor (such as the patentee) and the licensee (such as the
infringer) would have agreed upon (at the time infringement began) if both had been
reasonably and voluntarily trying to reach an agreement; that is, the amount which a

27    prudent licensee – who desires, as a business proposition, to obtain a license to
manufacture and sell a particular article embodying **the patented invention** – would have

28    been willing to pay as a royalty and yet be able to make a reasonable profit and which

1    amount would have been acceptable by a prudent patentee who was willing to grant a
     license.

2

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)

3

4    (emphasis added).  Now that two of Baxter's three patents are no longer in suit, **all** of these factors

5    must be reevaluated by a jury to properly determine damages.[6]

6            **C.    An Advisory Verdict From The Jury As To The Post-Verdict Royalty Rate
                      Will Significantly Streamline the Remaining Work and Conserve Judicial and
7                     Party Resources**

8            In its decision, the Federal Circuit also vacated the Court's post-verdict royalty award and

9    remanded the issue for reconsideration in light of the liability ruling.  The Federal Circuit stated:

10                   [W]e vacate the royalty award and remand for the district court to
                     consider whether the previous award is proper in light of this court's
11                   modification of the district court's judgment.  In particular, we note
                     that our reversal of JMOL may affect the district court's
12                   consideration of the putative royalty rate that would result from a
                     hypothetical negotiation between Baxter and Fresenius.  That
13                   analysis is influenced by the *Georgia Pacific* factors . .   and our
                     decision here may affect how the district court weighs one or more
14                   of those factors[.]

15   *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) (citations omitted)

16   (Doc. No. 1038 at 24-25).

17           Since the law requires a new trial as to past damages, it makes good sense to ask the jury

18   determining the past reasonable royalty to also consider the post-verdict royalty, and render an

19   advisory verdict on that issue.  While the analysis is not identical, there will be substantial overlap

20   in the evidence as to past royalties due for the '434 patent and any royalties the Court might award

21   for sales during the period the injunction was stayed.  Both determinations will be driven by the

22   *Georgia-Pacific* factors, and both sides will undoubtedly present testimony from the same experts

23   for both determinations.

24

25

---

26   [6]   In her concurrence opposing Judge Dyk's suggestion that the case be stayed on remand, Judge
     Newman recognized that the damages award must be re-evaluated.  First, she stated that "[o]nly an
27   issue of **adjustment of damages** and a modification of the permanent injunction **to reflect our
     reversal of JMOL** remain on remand."  (Doc. No. 1038, Newman, J. concurrence at p. 2).
28   Second, she stated that "the present case is over but for review of the **remedy** on remand."  (*Id.* at
     p. 4).

1    Judge Ron Clark in the Eastern District of Texas has recently explained the wisdom of this

2    procedure in the context of jury trials.  Judge Clark has started routinely asking juries for an

3    advisory verdict as to post-verdict royalties during the damages portion of the trial.  *Ariba, Inc. v.*

4    *Emptoris, Inc.*, 567 F. Supp. 2d 914 (E.D. Tex. 2008); *Cummins-Allison Corp. v. SBM Co., Ltd.*,

5    584 F. Supp. 2d 916 (E.D. Tex. 2008).  Judge Clark has made the following observations about

6    why this makes sense:

7           The Federal Circuit has recognized the need for the district court to
            provide a "concise but clear explanation of its reasons for the [future
8           royalty] fee award." . . . A jury determination of a royalty rate would
            certainly assist the court in achieving that goal.
9

10   *Ariba*, 567 F. Supp. 2d at 917 (citation omitted).

11          Determining a percentage rate or royalty per item to be applied in
            the future in a patent case is no more difficult than the task
12          commonly performed by jurors in federal and state courts, when
            asked to calculate loss of future earning capacity, future medical
            expenses, future pain and suffering, or future lost profits.
13

14   *Id.* at 918.

15          Calculating a future royalty rate should be little different than
            opining on the rate the parties would have agreed upon at the
16          hypothetical negotiation.  Naturally, a successful Plaintiff wants to
            argue that "everything has changed."  This conveniently ignores the
17          fact that even a minimally competent damages expert will have
            included in pre-trial calculations every advantageous change in
18          profits, sales, and other conditions that occurred prior to trial under
            the "book of wisdom" rubric. . . . It is true that some factors such as
19          the relative importance of the technology or the availability of a
            design-around may have changed since the date of first
20          infringement.  To the extent these were not considered in the "book
            of wisdom" analysis and will not be accounted for in total future
21          sales, these factors can be explained without a great deal of
            difficulty.

22   *Cummins-Allison*, 584 F. Supp. 2d at 918-919 (citations omitted).

23          In either case, time and expense can be saved by having the damages
            experts testify once, rather than hold a separate mini-trial on the
24          issue of future damages post-verdict.  This procedure would
            encourage the experts to keep their testimony about past and future
25          damages logically consistent, and to give reasons for any
            differences.
26

27   *Ariba*, 567 F. Supp. 2d at 916.

28

FRESENIUS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL
TO DETERMINE DAMAGES FOR U.S. PATENT NO. 5,247,434
Case No. C 03-01431 SBA (EDL)

1    In short, the Court and the parties have an opportunity to significantly streamline the

2  remaining work to be done in this case.  The Court can conduct a single, focused jury trial that will

3  allow for presentation of all relevant evidence.[7]  The Court can hear the relevant evidence once,

4  and use the jury's advisory verdict as a guide to establishing the Court-determined piece of the

5  royalty.

6  **IV.    CONCLUSION**

7    For the reasons set forth above, Fresenius respectfully requests that the Court follow

8  Federal Circuit and Supreme Court precedent and conduct a jury trial to determine reasonable

9  royalty damages for the sole remaining patent in this matter, U.S. Patent No. 5,247,434.

10

11  Dated:  December 1, 2009                    FISH & RICHARDSON P.C.

12

13                                              By: */s/ Michael E. Florey*
                                                     Michael E. Florey

14

15                                              Attorneys for Plaintiffs/Counterclaim
                                                Defendants

16                                              FRESENIUS MEDICAL CARE HOLDINGS,
                                                INC. AND FRESENIUS USA, INC.

17

18

19

20

21

22

23

24

25

26

27  _____
[7]   The Court could also hear the evidence—out of the presence of the jury if necessary—that it
28  will need to rule on the injunction issue, which the Court of Appeals also vacated and remanded.