Daniel J. Furniss (SBN 73531) djfurniss@townsend.com
Anne M. Rogaski (SBN 184754) amrogaski@townsend.com
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, California  94301
Telephone: (650) 326-2400
Facsimile: (650) 326-2422

Michael J. Abernathy (*admitted pro hac vice*) michael.abernathy@klgates.com
Sanjay K. Murthy (SBN 212097) sanjay.murthy@klgates.com
K&L GATES LLP
70 West Madison Street, Suite 3300
Chicago, Illinois  60602
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000

Joseph P. Reagen (*admitted pro hac vice*) joseph_reagen@baxter.com
BAXTER HEALTHCARE CORPORATION
One Baxter Parkway
Deerfield, Illinois  60015

Attorneys for Defendants/Counter-Plaintiffs
BAXTER INTERNATIONAL INC.
and BAXTER HEALTHCARE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FRESENIUS MEDICAL CARE HOLDINGS, INC., a New York corporation; and FRESENIUS USA, INC., a Massachusetts corporation, <br><br> Plaintiffs and Counterdefendants, <br><br> v. <br><br> BAXTER INTERNATIONAL, INC., a Delaware corporation; and BAXTER HEALTHCARE CORPORATION, a Delaware corporation, <br><br> Defendants and Counterclaimants. | Case No. C 03-01431 SBA <br><br> **BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR NEW TRIAL TO DETERMINE DAMAGES FOR U.S. PATENT NO. 5,247,434** <br><br> Hearing Date:          February 23, 2010 <br> Hearing Time:                    1:00 PM <br> Judge:          Hon. Saundra B. Armstrong <br> Courtroom:          Courtroom 1, 4th Floor |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND - FRESENIUS' STRATEGIC DECISION TO LITIGATE
      DAMAGES BY TECHNOLOGY, NOT PATENTS ..........................................................2

      A.    The Experts Focused Solely on the Value of Touch Screen Technology................2

      B.    Fresenius' Pre-Trial Submissions Concede Past-Damages Were Not Patent or
            Claim Specific..........................................................................................................3

      C.    The Parties Focused on the Value of Touch Screen Technology at Trial ..............4

      D.    Fresenius Chose Not to Seek Remand or Reconsideration of the Past-Damages
            Award .......................................................................................................................7

      E.    The Federal Circuit Remanded on Equitable Remedies Only ................................8

      F.    Judge Chen Recognized Fresenius Might Be Precluded From Advancing Its
            New Theory ..............................................................................................................9

III.  ARGUMENT ........................................................................................................................9

      A.    Under the Mandate Rule This Court Lacks Jurisdiction to Retry Past Damages ....9

      B.    No New Trial Is Needed, The Evidence Fully Supports The Past-Damages
            Award......................................................................................................................14

            1.    The Expert Opinions Focused Solely on the Value of Touch Screen
                  Technology ...............................................................................................15

            2.    Fresenius' Trial Strategy Was Based on the Value of a Touch Screen .....16

            3.    Fresenius Mischaracterizes the Trial Record..............................................17

      C.    The Court Does Not Need an Advisory Verdict on Post-Verdict Royalty Rates ..18

      D.    This Court Should Certify Judgment Pursuant to Rule 54(b)................................19

IV.   CONCLUSION......................................................................................................................20

TABLE OF AUTHORITIES

Page(s)

CASES

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008) ................................................................ 14

*Ariba, Inc. v. Emptoris, Inc.*,
   567 F. Supp. 2d 914 (E.D. Tex. 2008) ...................................................... 19

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   576 F.3d 1348 (Fed. Cir. 2009) ................................................................ 10

*Crystal Semiconductor Corp. v. Tritech Microelectronics Intern., Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ................................................................ 15

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
   584 F. Supp. 2d 916 (E.D. Tex. 2008) ...................................................... 19

*Delgross v. Spang & Co.*,
   903 F.2d 234 (3d Cir. 1990) ..................................................................... 14

*Designing Health v. Erasmus*,
   226 Fed. Appx. 976 (Fed. Cir. 2007) ........................................................ 12

*Engel Indus., Inc. v. Lockformer Co.*,
   166 F.3d 1379 (Fed. Cir. 1999) ............................................................ 1, 10

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.*,
   137 F. 3d 1475 (Fed. Cir. 1998) ............................................................... 11

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   582 F.3d 1288 (Fed. Cir. 2009) ................................................. 1, 8, 10, 11

*In re Kaplan*,
   789 F.2d 1574 (Fed. Cir. 1986) ................................................................ 15

*King Instrument Corp. v. Otari Corp.*,
   814 F.2d 1560 (Fed. Cir. 1987) ................................................................ 19

*Memphis Cmty. Sch. Dist. v. Stachura*,
   477 U.S. 299 (U.S. 1986)........................................................................... 12

*MercExchange, L.L.C. v. eBay*,
   2007 U.S. Dist. LEXIS 93027 (E.D. Va. Dec. 11, 2007) .......................... 20

*Oiness v. Walgreen Co.*,
   838 F. Supp 1420 (D. Colo. 1993) ............................................................ 14

*Paice LLC v. Toyota Motor Corp.*,
   504 F.3d 1293 (Fed. Cir. 2007) ................................................................ 18

*Sibbald v. United States*,
   37 U.S. 488 (1838)..................................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Tronzo v. Biomet, Inc.*,                                                                     Page(s)
   236 F.3d 1342 (Fed. Cir. 2001) ...................................................................... 11, 12

*Verizon Services Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ....................................................................... passim

*Vizcaino v. U.S. Dist. Court for Western Dist. of Washington*,
   173 F.3d 713 (9th Cir. 1999) .................................................................................. 14

*W.L. Gore & Assoc. Inc. v. International Medical Prosthetics Research Assoc., Inc.*,
   975 F.2d 858 (Fed. Cir. 1992) ................................................................................ 20

<u>RULES</u>

Fed. R. Civ. P. 72 .............................................................................................................. 9

## I.       INTRODUCTION

Fresenius' theory that damages should now be valued on a per-patent basis flies in the face of nearly ***seven years*** of litigation.[1]   Fresenius ***never*** argued the number of patents was relevant to damages; not in its expert report, at the 2006 trial, at the 2007 trial, or on appeal.  It was only on remand, when Fresenius had no alternative but to pay the past-damages judgment, that Fresenius invented this theory that the amount of damages in the case depends on which patents were infringed.  Accordingly, this Court should deny Fresenius' motion because: 1) the Federal Circuit's mandate precludes such a new trial; and 2) Fresenius should not be allowed to opportunistically repudiate the damages evidence and arguments it presented to two juries and this Court.

The mandate rule provides that "issues actually decided [on appeal]—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration."  *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). The past-damages award was indisputably within the scope of the judgment because Fresenius included it in its Notice of Appeal, but Fresenius then specifically elected not to argue in its briefs that the past-damages depended on the number of patents infringed, thereby "*necessarily*" waiving the issue.  *Engel*, 166 F.3d at 1383 (emphasis added).  The Federal Circuit's decision and mandate reflect this understanding, vacating the judgment only with respect to the injunction and the ongoing royalty issues, not the past-damages judgment.  As Judge Newman noted in her concurrence, "the present case is over but for review of the remedy on remand," *i.e.*, the two equitable remedies explicitly vacated by the Federal Circuit.  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1306 (Fed. Cir. 2009) (Newman, J., concurring).

The *Verizon* and *NTP* decisions cited extensively by Fresenius do not suggest otherwise.  In those cases, the Federal Circuit explicitly included in its mandate instructions for the district court to reconsider damages.  The Federal Circuit judges here were certainly aware of the *Verizon* case and its language stating that the "normal rule" is for a remand when there is a single verdict on damages and the Federal Circuit reverses a finding of infringement on some but not all claims.  But they

---

[1]   "Motion" refers to Fresenius' Motion For A New Trial On Damages.  All Exhibits ("Ex.") are attached to the Declaration of Sanjay K. Murthy ("Murthy Decl."), submitted herewith.

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

1

notably, and conspicuously, did not order such a remand here.

Even if this Court were to conclude that the Federal Circuit's mandate does not *preclude* a new trial, there is absolutely no reason to grant Fresenius a new trial so that it can repudiate all of the damages evidence that it previously presented at trial. Fresenius' past-damages evidence has always focused on the value of touch screen technology, not specific claims or the number of patents. Indeed, Fresenius' expert opinion was premised on the value of the touch screen technology, not the number of patents, and even after two patents and numerous claims were twice dropped from the case, Fresenius did not modify its expert report or alter its damages theories. In fact, none of its pre-trial submissions or its arguments at trial suggested that the damages award should be any different if Fresenius were found to infringe all of the asserted patent claims, or just one. Fresenius should not now be allowed to prolong this litigation with a newly-crafted, unfounded theory.

## II.   BACKGROUND - FRESENIUS' STRATEGIC DECISION TO LITIGATE DAMAGES BY TECHNOLOGY, NOT PATENTS

Throughout the course of this litigation, from the filing of expert reports back in 2005 through the time of the Federal Circuit's remand in the fall of 2009, Fresenius had always contended that damages should be calculated based on the value of the touch screen technology, not on the number of infringed patents and claims.

### A.   The Experts Focused Solely on the Value of Touch Screen Technology

Fresenius filed this litigation in 2003, seeking a declaratory judgment that five of Baxter's patents were invalid and/or not infringed. (Dkt No. 1.) Baxter filed its expert report on damages in December 2005. Fresenius filed its expert report on damages in February 2006. At that time, the case involved five patents-in-suit.

As Fresenius' damages expert, Dr. Rubinfeld, explained in his expert report, neither party ascribed any independent value to the patents or claims separately aside from the value of touchscreen technology:

> Baxter's expert, R. Bruce Den Uyl, focused his damages analysis on the touch screen features, and ***did not ascribe any independent value to the other patented features which do not directly relate to the use of the touch screen***. Similarly, Mr. Den Uyl ***did not ascribe any independent***

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

2

> ***value to the touch screen features claimed in the dependent claims*** of the
> patents-in-suit apart from the features claimed in the independent claims.
> ***Because [Baxter's Expert] Mr. Den Uyl generally addressed all of the***
> ***patented features together, I will do the same in this report***.

(Dkt. No. 447, Ex. 1, Rebuttal Expert Report of Daniel L. Rubinfeld at ¶ 7 (emphasis added).)  Thus, the experts' damages reports were not premised on the number of patents or claims, but rather on the key claimed feature (*i.e.*, the touch screen interface).

In March 2006, Baxter dismissed its claims entirely on the '286 Patent and Claims 1 and 6 of the '476 Patent.  (Dkt. No. 483 at 3.)  Neither expert, however, supplemented or revised his damages opinion.

After a first jury trial in June 2006, the Court granted Baxter's Motion for JMOL and ordered a new trial on two issues:  (1) damages, and (2) infringement of Claims 5 and 7 of the '476 Patent.  (Dkt. No. 874.)[2]  Shortly before the second trial in October 2007, Baxter dropped the remaining two claims of the '476 Patent, leaving only the '434, '131, and '027 Patents in the case.  (Dkt. No. 939 at 3.)[3]  Thus, the 2007 trial focused solely on damages.

Even though the 2007 trial involved two fewer patents than when the expert reports were submitted, and one fewer patent and six fewer claims than the 2006 trial, neither expert revised his damages opinion on that basis.  Instead, the parties jointly submitted a proposed pretrial order allowing the experts to "supplement sales data and documents produced," but not to modify their damages theories to account for fewer patents.  (*See* Dkt. No. 879 at 1.)

## B.    Fresenius' Pre-Trial Submissions Concede Past-Damages Were Not Patent or Claim Specific

Fresenius' position that damages were unrelated to the number of infringed claims continued through the pre-trial proceedings.  Fresenius' Trial Briefs squarely summarize its past-damages theory:  the patents-in-suit are "improvement patents" directed to just one thing, a touch screen on a

---

[2]   The 2006 trial did not involve infringement of the '434, '131, and '027 Patents because Fresenius agreed that its 2008K machine infringes all the asserted claims of those patents just before trial. (Dkt. Nos. 755 and 770.)

[3]   The 2007 trial also involved only Claim 11 from the '027 Patent—the touch screen claim— whereas the 2006 trial involved four additional non-touch screen claims from the '027 Patent. (*See* Dkt. No. 829 at 3; Dkt. No. 770.)

hemodialysis machine.  (Dkt. No. 693 at 20-22; Dkt. No. 892 at 2-5.)  Applying the "entire market value rule," Fresenius argued that Baxter must show that "the entire value of the 2008K hemodialysis machine is attributable to the inclusion of a touch screen" or "any damages must be apportioned based on the value of the patented feature [the touch screen]."  (Dkt. No. 892 at 4.)

Furthermore, Fresenius never sought to have the jury decide damages on the basis of specific patents or claims.  To the contrary, Fresenius' proposed verdict forms from both the 2006 trial and the 2007 trial asked the jury to determine one damages figure no matter how many claims or how many patents were found to be infringed:  "If you found that *at least one of the asserted claims* of the patents is not invalid and is infringed by the Fresenius 2008K hemodialysis machine, please indicate the amount of damages Baxter is entitled to for the infringement by the 2008K hemodialysis machine."  (Dkt. No. 682, at 9 (2006 Trial First Proposed Verdict Form) (emphasis added); *see also* Dkt. No. 797 at 8.)  Baxter's Proposed Verdict Form was the same.  (Dkt. No. 795 at 2.)  The Court adopted a verdict form similar to both parties' submission.[4]  (Dkt. No. 829 at 4.)

### C.    The Parties Focused on the Value of Touch Screen Technology at Trial

Ironically, after the damages trial it was Baxter that moved for a new trial, which Fresenius opposed.  Fresenius' arguments in that paper refute its new damages theory.  For instance, Fresenius argued that the evidence at the 2007 trial on damages related to the value of touch screen technology, not specific claims or the number of patents:  "both parties presented their respective theories as to the amount of money required to adequately compensate Baxter for Fresenius' use of the patented touch screen technology."  (Dkt. No. 994 at 2.)[5]  Fresenius then went on to describe the three damages theories it presented to the jury.

Allegedly supporting Fresenius' "cost-savings approach," Dr. Ben Lipps, Fresenius' CEO,

---

[4]    *See also* Dkt. No. 898 at 2; see also Dkt. No. 905 at 1 (Baxter's Proposed Verdict Form 2007 Trial); Dkt. No. 962 (2007 Trial Verdict Form Given)). The jury instructions were consistent. (Dkt. No. 835-1 at 41.)  Fresenius, moreover, never proposed jury instructions for either trial seeking separate damages awards by patent or claim.  (See Dkt. No. 691 at 36-42; Dkt. No. 792 at 26-32; Dkt. No. 897 at 30-31; Dkt. No. 895 at 6-8.)

[5]    In fact, Fresenius' damages theory did not change from the 2006 trial where it challenged the validity of the patents and knew it could be found liable on a subset of the patent claims.

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

4

testified that he would have been willing to offer Baxter a royalty in the hypothetical negotiation equal only to the cost-savings of implementing a touch screen user interface on the infringing 2008K machine.  (Dkt. No. 994 at 4, 7.)  "[U]sing a touch screen would have resulted in a cost savings of $40 per machine . . . this $40 per machine could then have been considered as a reasonable royalty to pay Baxter for Fresenius' *use of the touch screen user interface*."  (*Id*. at 7 (citing Tr. 504:16-505:6) (emphasis added).)  Dr. Lipps admitted that the hypothetical negotiation would have focused *solely* on Fresenius' "right to put a touch screen on our machine."  (2007 Trial Tr. 500:18-501:19; *see also id*. at 502:9-17.)  Not once did he mention the number of patents or claims.

Second, Fresenius offered evidence on an alternate "technology valuation approach," which instead of focusing on the patents at all, focused on a valuation report created by an accounting firm for Baxter's purchase of Althin, Inc., which designed and developed the patented technology.  (Dkt. No. 994 at 8.)   Fresenius argued that this report valued the entire portfolio of patents and hemodialysis technology at $1.9 million.  (*Id*. (citing 2007 Trial Tr. 588:3-19; 646:25-648:5).)  Again, Fresenius did not present evidence based on individual patents or claims with its "technology valuation approach."

Third, Fresenius explained its "incremental profit approach" whereby its damages expert focused on the value of touch screen technology on the infringing 2008K machine because "[Fresenius] *clearly would only want to pay for the value of the touch screen*."  (*Id*. at 5 (citing Tr. 632:12-21).)  After estimating the incremental profits of the old non-infringing machine to the new infringing machine, Dr. Rubinfeld "apportion[ed] just the amount of that incremental profit that could be attributed to the patented touch screen technology."  (*Id*. at 6 (citing Tr. 636:16-637:10; 638:22-639:9).)  As with Dr. Lipps' testimony, Dr. Rubinfeld's entire analysis focused on just the value of the touch screen at the hypothetical negotiation.  (Dkt. No. 994 at 6-7; *see also* 2007 Trial Tr. at 602:12-24; 620:18-621:9; 622:15-623:1; 632:25-633:8; 637:11-15; 644:23-645:8.)  He never testified that the number of patents or claims was important.  In fact, Dr. Rubinfeld distinguished all the other features of the patents and said the only important feature was touch screen technology. (2007 Trial Tr. 622:15-623:1; 644:23-645:8.)

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

5

Similarly, Baxter's damages expert focused on the importance of adding touch screen technology to the infringing 2008K machine to Fresenius generally, not the specific patents. Regarding the *Georgia-Pacific* factors, Mr. Den Uyl testified that Fresenius' need for touch screen technology in developing the infringing 2008K machine was an important factor in determining a reasonable royalty. (2007 Trial Tr. 294:8-298:14.) Fresenius' internal documents—including the design and development plan, product launch plan, and marketing materials—confirmed the importance in the marketplace of touch screen technology and how Fresenius was targeting the touch screen technology of Althin and its customers. (*Id.* (citing Trial Exhibits EX, EY, FC, GX, HM, HO).) Fresenius' CEO, Rice Powell, and Chairman of the Board, Dr. Ben Lipps, confirmed the documentary evidence that Fresenius needed touch screen technology to compete. (Tr. 295:19-22; 296:12-14; Tr. 399:25-399:21; 514:7-11; 592:2-4.) Fresenius believed it was "hinging" everything on touch screen technology because customers, nurses, technicians, and doctors were demanding it. (Tr. 399:25-399:21; 514:7-11; 592:2-4.) Thus, market demand was driven by touch screen technology—not specific patents or claims—exactly how the parties and their experts analyzed and presented the evidence.

Finally, during closing arguments, Fresenius' counsel ***repeatedly*** argued that the jury's analysis boiled down to the value of putting touch screen technology on the 2008K machine:

> "The question, once again: what is the reasonable portion of the K machine that should be allocated because of the use of the touch screen?" (2007 Trial Tr. 736:4-6.)

> "So logic tells us that touch screen could not be driving the sales of the machines . . . It isn't a fancy touch screen that drives sales." (*Id.*, at 731:7-16.)

(*See also id.* at 719:16-19; 722:12-13; 722:18-25; 727:21-23; 728:3-6; 728:23-25; 729:8-22; 732:20-733:2; 737:13-17.) Baxter's counsel argued the same. (*Id.* at 740:8-17; 741:24-25; 743:16-744:19). The jury awarded Baxter damages for Fresenius' past-infringement of $14,266,000. (Dkt. No. 962).[6]

Fresenius never objected that the jury award was based on expert opinions that originally

---

[6]  This Court then awarded pre-judgment interest, "yielding a total award of $17,171,429." (Dkt. No. 1018.) The Court also issued a permanent injunction and an equitable remedy in the form of an on-going royalty for future infringement. (Dkt. No. 1019.)

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

6

relied on additional patents and claims.  Fresenius also never asked for a new trial.  In fact, Fresenius opposed Baxter's Motion for a New Trial arguing the evidence fully supported the verdict.  (Dkt. No. 994.)

### D.   Fresenius Chose Not to Seek Remand or Reconsideration of the Past-Damages Award

Even though it never objected to the jury's verdict, Fresenius' Notice of Appeal filed with this Court included, *inter alia*, the Court's Order of an Award of Damages Including Prejudgment Interest (Dkt. No. 1018):

> 2.  Order dated April 4, 2008, granting Baxter's Motion for an Award of Damages Including Prejudgment Interest [Dkt. No. 1018]

(Dkt. No. 1021).

On appeal to the Federal Circuit, however, Fresenius never challenged the amount of the past-damages award; never asked for a remand on the issue of past damages; and never suggested in any way that past-damages should depend on the number of patents or claims found to be infringed. Indeed, Fresenius' opening appeal brief made only two remedy arguments—it challenged the injunction and the post-verdict royalty award—*not* the past-damages jury verdict.  (Ex. A, at xii, 63.) The Federal Circuit also explicitly distinguished the past-damages and post-verdict awards, explaining that the past-damages award does not fully compensate Baxter for Fresenius' infringement and therefore affirming this Court's determination that an ongoing royalty should be award for sales of disposable products linked to pre-verdict machine sales.  (*Id*.)    After distinguishing the past-damages and ongoing royalty awards, however, the Federal Circuit vacated and remanded only the latter, directing this Court to consider whether the ongoing royalty rate was "proper in light of this court's modification of the district court's judgment . . . in particular, . . . the putative royalty rate that would result from a hypothetical negotiation between Baxter and Fresenius."  (*Id*.)

Even when **pressed on this issue during oral argument,** Fresenius failed to challenge the amount of the past-damages award or argue that it depended on the number of patents infringed. Despite repeated questioning by the panel about what should happen if some claims were found

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

7

obvious but not others, Fresenius **never** mentioned the past-damages award or suggested it should be vacated or remanded:

> Judge Dyk:  What happens in this case if we were to find that some, the jury probably found that some of these claims were obvious, but we found that the [JMOL] was proper as to others.  Do all of the accused products violate all of the claims?  What's the situation?
>
> Ms. Brooks (Fresenius' Trial and Appellate Counsel):  The situation your honor is that there was an injunction entered on a particular product which is the hemodialysis 208, 2008-K machine, which will go into effect as of January 1, 2009.  In the interim, there has been a running royalty ordered which we also discuss in our brief of 1,000 times more than what the jury awarded at the damages trial.
>
> Judge Dyk:  That doesn't answer my question.  My question is, suppose we were to say that some of the claims are obvious and some aren't.  Where does that leave us?
>
> Ms. Brooks:  Where it leaves us is it depends on which claims you're talking about, your honor.  If it is that all of the touch screen claims are indeed obvious, then the reason that the 2008-K was found to be infringing was because it had a touch screen on it.  And so if your honors find that the jury was correct in their initial verdict—

(Ex. B, at 1-2, Murthy Decl., at ¶ 3.)  In response to this questioning, Fresenius obviously could have made an argument that a finding that some claims but not others were obvious would require a remand on the past-damages award.  It did not because:  1) such a theory would have been contrary to everything Fresenius had told this Court during trial; and 2) that theory was invented only on remand when Fresenius had no alternatives to accepting the past-damages award.

## E.    The Federal Circuit Remanded on Equitable Remedies Only

On November 25, 2009, the Federal Circuit issued its mandate and affirmed the validity of all the asserted claims in Baxter's parent '434 Patent and issued a limited remand for the Court to revisit the on-going royalty award and permanent injunction.  *Fresenius*, 582 F.3d at 1304.  In its decision, the Federal Circuit explicitly stated the limited equitable issues for reconsideration on remand in its Opinion:  injunctive relief and the on-going royalty award:

> In addition, although we hold that the district court did not abuse its discretion when it permanently enjoined Fresenius, **we vacate the**

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.  C-03-1431 SBA

8

*injunction and remand so that the court may revise or reconsider the injunction in light of the fact that only claims 26–31 of the '434 patent remain valid and infringed. Finally, we vacate the royalty award entered by the district court and remand for further proceedings consistent with this opinion.*

*Id.* (emphasis added)  Not surprisingly, because Fresenius never requested, briefed, or argued that the past-damages award should be vacated and remanded, the Federal Circuit did not remand on that issue.  As Judge Newman noted in her concurrence, "the present case is over but for review of the remedy on remand," *i.e.*, the two equitable remedies vacated by the Federal Circuit.  *Id.* at 1306.

### F.   Judge Chen Recognized Fresenius Might Be Precluded From Advancing Its New Theory

On December 1, 2009, Baxter filed a Motion For An Order To Show Cause Re Civil Contempt, Immediate Compliance With Court Order, And Sanctions against Fresenius for Fresenius' cancellation of the letter of credit securing Baxter's past-damages judgment immediately after the Federal Circuit issued its mandate.  (Dkt. No. 1040.)  On January 25, 2010, Judge Chen issued a report and recommendation to deny Baxter's motion finding a contempt proceeding was not the appropriate mechanism to enforce a judgment.[7]  (Dkt. No. 1062 at 4-6.)  Judge Chen noted that, in light of the high burden of proof required for a contempt motion, Fresenius' argument that it had not waived past-damages on appeal was "plausible" enough to avoid a finding of contempt (*Id.* at 6-8), but Judge Chen emphasized that he had not ruled on the merits of this issue, and that "Baxter may well succeed, *e.g.*, because Judge Armstrong may agree with Baxter's waiver and/or mandate arguments or because Judge Armstrong may conclude that damages should not be calculated on a per-patent basis."  (*Id.* at 9).

## III.   ARGUMENT

### A.   Under the Mandate Rule This Court Lacks Jurisdiction to Retry Past Damages

Fresenius' Motion should be denied for one simple reason: the Federal Circuit did not leave open the option of having a new trial on the past-damages award.  "The mandate rule requires that

---

[7]   Baxter disputes these findings and intends to file an Objection to Judge Chen's Report and Recommendation under Fed. R. Civ. P. 72.

the district court follow an appellate decree as the law of the case." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009) (citing *Sibbald v. United States*, 37 U.S. 488, 492 (1838)).

Here, the Federal Circuit explicitly noted the limited issues for consideration on remand in its Opinion:  injunctive relief and the on-going royalty award—***not*** the past-damages jury verdict:

> In addition, although we hold that the district court did not abuse its discretion when it permanently enjoined Fresenius, ***we vacate the injunction and remand so that the court may revise or reconsider the injunction in light of the fact that only claims 26–31 of the '434 patent remain valid and infringed. Finally, we vacate the royalty award entered by the district court and remand for further proceedings consistent with this opinion.***

*Fresenius*, 582 F.3d at 1304 (emphasis added).  This Court cannot retry issues the Federal Circuit has not remanded.  *Engel*, 166 F.3d at 1382-83.

Instead of acknowledging the Federal Circuit's actual mandate in this case, Fresenius points this Court to other cases such as *Verizon*, which, according to Fresenius, hold that where liability is affirmed as to fewer than all patents, but there is only a general damages verdict, the "normal rule" is for a new trial on damages.[8]  According to Fresenius, this rule allows this Court to have a new trial that the Federal Circuit did not authorize and similarly excuses Fresenius for failing to challenge the amount of the past-damages award on appeal or for not arguing to the Federal Circuit that a partial affirmance on liability would require a new trial on the past-damages award.

Moreover, the "rule" that Fresenius cites based on *Verizon* and *NTP* cannot govern here because, in direct contrast to those cases, the Federal Circuit did not remand on the damages issue. In *Verizon*, the Federal Circuit specifically vacated the damages award as a part of its decision:

---

[8]   Despite Fresenius' misrepresentations, the Federal Circuit did not "establish" a general rule in *Verizon* that requires a new trial on the facts of this case.  (Motion at 5.) As Chief Judge Michel recognized in *Verizon* such a general rule needlessly wastes judicial resources:  "When, as here, the evidence shows that each of the accused products infringes all of the patents-in-suit, and the infringer fails to make any showing on appeal that the damages award would not be supported by only those patents for which we affirm liability, we must affirm the damages despite our reversal of part of the infringer's liability. Remanding simply to reconfirm that the damages award is indeed supported by the affirmed liability under the remaining patents-in-suit imposes unnecessary costs on litigants and wastes judicial resources." *Verizon*, 503 F.3d at 1315 (Fed. Cir. 2007) (Michel, C.J., dissenting).

"[w]e vacate the award of $58,000,000 in damages and the 5.5% royalty rate, and remand to the district court for further consideration of the damages issue." 503 F.3d at, 1311.  Similarly, in *NTP*, the Federal Circuit specifically vacated the damages award and expressly remanded for a new trial on damages:

> [B]ecause the jury verdict did not specify the amount of infringing sales attributed to each individual patent claim, or the specific devices and services determined by the jury to infringe each separately asserted claim, **the district court on remand will also have to determine the effect of any alteration of the jury verdict on the district court's damage award and on the scope of the district court's injunction.**

*NTP,* 418 F.3d at 1325-1326  (emphasis added).  This Court will search in vain for **any** language like that above in the Federal Circuit's decision in this case (*see Fresenius,* 582 F3d 1288), a point which Fresenius was forced to concede (Dkt. No. 1058 at 5 n.2).

To the extent that Fresenius argues that it was not required to raise damages on appeal, its argument is refuted by *Tronzo v. Biomet, Inc.*, where the Federal Circuit did not excuse a party from failing to present a damages theory that was contingent on the Federal Circuit making another separate finding.  236 F.3d 1342 (Fed. Cir. 2001).  In *Tronzo*, a defendant argued in a first appeal for a reduction in compensatory (but not punitive) damages, and on remand, the district court reduced the compensatory damages award from over $7,000,000 to $520.  *Id.* at 1345-46.  When the defendant then argued in a second appeal that the punitive damages award ($20,000,000) should also be reduced because it was constitutionally disproportionate to the new compensatory damages award, the Federal Circuit rejected the argument.  *Id.* at 1349.  The Federal Circuit held that the defendant "could have asserted [on the first appeal] that, if the compensatory damages award is lowered, constitutional requirements mandate that the punitive damages award be commensurately adjusted."  *Id*.  But the defendant did not raise punitive damages on appeal, so the Federal Circuit barred it from contesting the damages award on remand.  *Id*. at 1349-50.[9]  If the defendant in *Tronzo*

---

[9]   In opposing Baxter's Motion For Contempt and/or Sanctions, Fresenius relied on a new case, *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475 (Fed. Cir. 1998).  In *Exxon*, however, the newly disputed issue–whether there was infringement under the doctrine of equivalents after the Federal Circuit reversed the district court's summary judgment of literal infringement–had never been before the district court, and was never before the Federal Circuit on appeal.  *Exxon*, 137 F.3d at 1477 ("[B]ecause our prior opinion was confined to the issue of

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

11

was required to have raised its punitive-damages argument in its first appeal, Fresenius needed to have raised on appeal its argument that damages would need to be reduced in the event that liability was partially affirmed—an outcome at least as foreseeable as the reduction of compensatory damages in *Tronzo*.

Fresenius may now argue that the Federal Circuit nonetheless *implicitly* remanded for reconsideration of past-damages.  But, if anything, *Verizon Services Corp. v. Vonage Holdings Corp*, 503 F.3d 1295 (Fed. Cir. 2007), and *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), prove that when the Federal Circuit wants to apply its "normal rule" to a case and remand the damages award, it does so ***explicitly***.[10]  Indeed, that conclusion follows all the more because the Federal Circuit judges who decided Fresenius' appeal were certainly aware of *Verizon* and knew how to order a remand on damages awards:  Circuit Judges Dyk and Gajarsa, who heard the appeal in this case, were also on the panel in *Verizon*.  *See Verizon*, 503 F.3d 1295.  In fact, Judge Dyk wrote the *Verizon* decision.  *Id.*  Moreover, as discussed above, Judge Dyk specifically asked Fresenius' counsel what should happen if some of the claims were invalidated on appeal and some were upheld.  (Ex. B, at 1-2.)  Yet Fresenius' counsel ***never*** argued the jury's past-damages verdict would be impacted.  (*Id.*)

Furthermore, the factual situation was far different here than in *Verizon* and *NTP*, where the patents were from multiple patent families and/or directed to different infringing technology.  In *Verizon*, the Federal Circuit affirmed an infringement finding for two patents, the '574 and '711

---

literal infringement, we hold that the mandate did not deprive the district court of the power to grant Exxon's motion for a new trial.").  The *Tronzo* court held that *Exxon* does not apply where the contested issue could have been raised before the court, as it was here.  *See Tronzo*, 236 F.3d at 1348-49; *see also Designing Health v. Erasmus*, 226 Fed. Appx. 976, 981 (Fed. Cir. 2007).

[10]  The same reasoning makes *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (U.S. 1986), inapplicable.  (Motion, at 4.)  In *Stachura*, the Supreme Court expressly remanded for a redetermination of damages because the jury instructions had erroneously allowed the jury to award a certain category of damages.  *Id. at* 312-13.  *Stachura*, however, shows only that a remand on damages may be necessary in certain circumstances and that, in that situation, a court will expressly order such a remand.  It does not hold or suggest that, in the absence of any express remand instructions, a lower court should infer that a remand is necessary.

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

12

patents, but ordered a new trial for infringement of another patent, the '880 patent, because of an altered claim construction. *Verizon*, 503 F.3d at 1305-10. The '574 and '711 patents had a common specification and claimed technology related to a computer server used for enhanced name translation for internet telephone applications. *Id*. at 1299. The unrelated '880 patent had a different specification and inventor and claimed a localized wireless gateway computer system that allows wireless telephones to register with the system and make calls. *Id*. Not surprisingly, the Federal Circuit stated that "[w]e think it is best under these circumstances" to remand the damages verdict to the district court for "consideration." *Id*. at 1310.

Similarly, the asserted patent claims in *NTP* were a mixture of method, system, and apparatus claims, all stemming from the parent '960 patent. *NTP*, 418 F.3d at 1288-89, 1325-26. The accused devices and services were related to the Blackberry system, including the handheld devices that infringed the system and apparatus claims, and software services installed on computers in the United States and Canada that infringed the method claims. *Id*. at 1289-90, 1313-21. The Federal Circuit found that the district court erred as a matter of law in finding infringement of the method claims because one or more steps of the method were performed outside of the United States. *Id*. at 1313-21. The Federal Circuit affirmed infringement findings for some system and apparatus claims and vacated infringement findings for others because of a faulty claim construction. *Id*. at 1325-26. All the infringement findings related to the parent '960 patent were vacated. *Id*. The Federal Circuit remanded for the district court to determine if there was prejudice related to the faulty claim construction and whether the damages award required alteration because the verdict form did not distinguish between the infringing devices and non-infringing software services. *Id*.

In contrast, each of the patents submitted to the jury here are related and have the same specification. (*See* PTX 1, 6, 7.) Each asserted claim was directed to an apparatus that included a touch screen user interface on a hemodialysis machine. The '434 Patent, the confirmed infringed and valid patent, is the parent and dominant patent in the family. (*See* Dkt. No. 1048, 4-7.) The same machine was alleged to infringe all three patents, and as explained above, the evidence presented at trial by both sides on damages did not distinguish between the patents. *See supra*

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

13

Section II.C.

The Federal Circuit's mandate here must be read in this context.  In determining the scope of the issues decided on appeal, the district court "must implement both 'the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Vizcaino v. U.S. Dist. Court for Western Dist. of Washington*, 173 F.3d 713, 719 (9th Cir. 1999) (quoting *Delgross v. Spang & Co.*, 903 F.2d 234, 240 (3d Cir. 1990)).  Here, the Federal Circuit was certainly aware of the remand issue from the *Verizon* case, but in light of the arguments presented by Fresenius and the nature of the patents and alleged infringing products, there was simply no reason for the Federal Circuit to order a remand on the past-damages award.  The Federal Circuit expressly ordered a remand on the ongoing royalty, and by *not* doing so for the past-damages award, the Federal Circuit implicitly affirmed the jury's past-damages verdict.  As the Federal Circuit has held, "the mandate rule forecloses reconsideration of issues *implicitly* or explicitly decided on appeal."[11] *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 (Fed. Cir. 2008)(emphasis added).

## B.   No New Trial Is Needed, The Evidence Fully Supports The Past-Damages Award

The decision to deny or grant this motion is *solely* within this Court's discretion, as even Fresenius concedes.  (Dkt. No. 1058 at 5.)  So, even if this Court decides Fresenius' Motion is not barred by the mandate rule, it should still be denied.

Fresenius contends that "Baxter will likely assert that the Jury's award covers a hypothetical negotiation for any rights needed by Fresenius to make and sell the 2008K."  (Motion, at 6.)  This is not just Baxter's theory; the seven-year history of this case proves it was ***Fresenius'*** theory too.

The damages theories in this case were, correctly, premised on Fresenius' need to sell the

---

[11] Fresenius' footnoted citation to *Oiness v. Walgreen Co.*, 838 F. Supp 1420 (D. Colo. 1993), is wholly misplaced.   (Motion at 6 n.4.)   Contrary to Fresenius' suggestion by its selective quotations, *Oiness* does not stand for the proposition that a denial of Fresenius' Motion would be a derogation of Fresenius' Seventh Amendment rights.  Rather, *Oiness* involved a situation where the Federal Circuit specifically vacated the jury's award and remanded for reconsideration of damages and then the plaintiff moved for summary judgment of damages to "circumvent" a jury trial on damages.  *Oiness*, 838 F. Supp at 1421-22.  Here, the Federal Circuit did not vacate the jury verdict or remand on past-damages and a jury, not the court, determined past-damages.  *See infra* Section III.C.

infringing 2008K machine with a touch screen user interface.  Fresenius never based its damages theories on the number of patents at issue.  Neither did Baxter.  As a result, the number of patents or claims infringed was immaterial.  *See Crystal Semiconductor Corp. v. Tritech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) (remand of one patent did not affect royalty award because "[t]he parties do not dispute the reasonable royalty award and neither party has asked for any reasonable royalty recalculation based on the validity of any of the patents.").

### 1.    The Expert Opinions Focused Solely on the Value of Touch Screen Technology

Not once in the seven-years of litigation has Fresenius suggested the damages award should be broken down by patent or claim.  As Fresenius' damages expert explained, neither party ascribed any independent value to the patents or claims separately:   "Baxter's expert, R. Bruce Den Uyl, *focused his damages analysis on the touch screen features*, and did not ascribe any independent value to the other patented features . . . *I will do the same in this report*."  (Dkt. No. 447, Ex. 1, Rebuttal Expert Report of Daniel L. Rubinfeld at ¶ 7 (emphasis added).)  Thus, the experts' damages reports were not premised on the number of patents or claims, but rather on the key claimed feature (*i.e.*, the touch screen interface).[12]

As explained in Baxter's Memorandum in Support of its pending Motion for Decision on Limited Remand Issues, the '434 Patent is the parent and dominant patent in the family.  (*See* Dkt. No. 1048 at 4-6.)   Thus, the absence of the other patents would not affect the hypothetical negotiation, and thus the past-damages award.  (*Id*.)  The '131 and '027 Patents would be essentially *"valueless"* without the rights to the "dominant patent."  (Dkt. No. 1048, Ex. 2, Joshua Lerner & Jean Tirole, Efficient Patent Pools, 94 AMER. ECON. REV., 691, 700 (2004) (emphasis added)); *see also In re Kaplan*, 789 F.2d 1574, 1577 (Fed. Cir. 1986).

Tellingly, patents and claims were dropped from this litigation over the years, but the expert reports were never modified because of these changes.  This case originally involved five patents

---

[12]   The asserted claims of the three patents at the damages trial generally cover a hemodialysis machine with a touch screen user interface.  (*See* PTX 1, 6, 7.)  Accordingly, affirmance on any one of the three patents would have independently blocked Fresenius from selling its infringing 2008K machine.

when the expert reports were served in December 2005 and February 2006.  In March 2006, Baxter dismissed its claims entirely on the '286 Patent and Claims 1 and 6 of the '476 Patent.  (Dkt. No. 483 at 3.)  Shortly before the 2007 trial, Baxter dropped the remaining two claims of the '476 Patent, leaving only the asserted claims from the '434 and '131 Patents and Claim 11 from '027 Patent in the case.  (Dkt. No. 939 at 3.)[13]  Even though patents and claims were removed from the case, neither expert supplemented or revised his damages opinion in light of the changes.

Not once during fact discovery, expert discovery, the 2006 trial, or the 2007 trial—***never***— did Fresenius argue that the number of patents at issue was critical to the amount of damages owed.

### 2.      Fresenius' Trial Strategy Was Based on the Value of a Touch Screen

Applying the "entire market value rule," Fresenius' trial theory was that Baxter must show that "the entire value of the 2008K hemodialysis machine is attributable to the inclusion of a touch screen" or "any damages must be apportioned based on the value of the patented feature [the touch screen]."  (Dkt. No. 892 at 4.)  As Fresenius explained in opposing Baxter's motion for a new trial: "both parties presented their respective theories as to the amount of money required to adequately compensate Baxter for ***Fresenius' use of the patented touch screen technology***"—not the specific number of patents or claims.  (Dkt. No. 994 at 2.)

Fresenius' three different valuation methodologies presented to the jury did not rely upon or address the number of claims or patents at all—not its "cost-savings approach," "technology valuation approach," or "incremental profit approach."  *See supra* Section II.C.  Fresenius' "cost-savings approach" and "incremental profit approach" focused on the value of adding a touch screen to the infringing 2008K machine.  *Id.*  The "technology valuation approach" did not focus on the patents at all; but focused on a financial valuation report related to Baxter's purchase of Althin, Inc., which designed and developed the patented technology.  *Id.*  Similarly, citing Fresenius' own documents and testimony, Baxter's damages expert also focused on the importance of adding touch screen technology to the infringing 2008K machine to compete in the marketplace, not on specific

---

[13]  The 2006 trial involved four additional claims from the '027 Patent.  (*See* Dkt. No. 829 at 3; Dkt. No. 770.)

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

16

patents.   (2007 Trial Tr. 294:8-298:14)*; see also supra* Section II.C.   In particular, Fresenius believed it was "hinging" everything on touch screen technology because customers, nurses, technicians, and doctors were demanding it.  (Tr. 399:25-399:21; 514:7-11; 592:2-4)*; see also supra* Section II.C.[14]

Thus, market demand was driven by touch screen technology—not specific patents or claims—exactly how the parties and their experts analyzed and presented the evidence.

### 3.     Fresenius Mischaracterizes the Trial Record

Fresenius' attempt to spin the trial record by suggesting that the jury instructions, opening or closing statements, and questioning of one witness compels a new trial because they simply referred to three patents should be rejected.  (*See* Motion at 5-7.)  Not once did the Court, trial counsel, or a witness tell the jury it should separately value each patent or claim.

Fresenius contends that the jury instructions regarding the "Entire Market Value Rule" support its theory because they refer to "the infringing patented features of the 2008K."  (Motion at 6-7 (citing Dkt. No. 963, at 15).)  But Fresenius conveniently glosses over how those "infringing patented features" were presented to the jurors.  As discussed above, the parties' damages theories and evidence presented were directed to the right to sell the infringing 2008K machine with touch screen technology.

Contrary to Fresenius' arguments, Richard Ferraro's (Baxter's technical expert) testimony fails to support Fresenius' Motion.  As demonstrated by Mr. Ferraro's slides, which Fresenius cites, his presentation—*just like all the other evidence in the case*—highlighted how each of the claims was directed to a hemodialysis machine with a touch screen user interface.  (*See* Florey Decl., at Ex. 2, Dkt. No. 1043-2; *see also* 2007 Trial Tr. 253:22-256:2.)  Mr. Ferraro briefly summarized the touch screen features of the claims.  (2007 Trial Tr. 260:2-264:20.)  Consistent with its trial strategy, Fresenius' cross-examination of Mr. Ferraro sought admissions that the only improvement at issue was the addition of a touch screen on a hemodialysis machine.  (2007 Trial Tr. 269:16-285:13.)

---

[14]   During closing arguments, counsel for both parties repeatedly argued that the damages analysis focused on the value of putting touch screen technology on the infringing 2008K machine.  *See supra* Section II.C.

Fresenius did not put on any expert or other witness to explain the patents or claims.[15]

Fresenius' reliance on the *Georgia-Pacific* factors by highlighting the words "patent," "invention," or "patent in suit," among others, in the factors is misplaced.  (*See* Motion at 8-9.)  As explained in Baxter's Motion for Decision on Limited Remand Issues, the jury was presented with damages evidence related to the *Georgia-Pacific* factors, which are a framework for calculating a reasonable royalty that would have resulted from a hypothetical negotiation between Baxter and Fresenius at the time Fresenius' infringement began.  (Dkt. No. 1048 at 6-7.)  Nearly all of the *Georgia-Pacific* factors address market place conditions or the relationship of the parties or refer to the infringing product, the 2008K machine—they are simply ***not*** impacted by the number of patents in this case.  (*Id.* at 6-7.)  Importantly, neither expert testified that the number of patents or claims had any bearing on the *Georgia-Pacific* factors or past-damages award.  In fact, Fresenius' expert, Dr. Rubinfeld, testified that, to the extent the specific technology even came up during his testimony about the *Georgia Pacific* factors, he considered the improvement to the 2008K machine of the addition of a touch screen.  (2007 Trial Tr. 644:23-645:24; *see also* 642:13-645:24 (Dr. Rubinfeld's entire brief discussion of the *Georgia Pacific* Factors).)  Baxter's expert's testimony was the same.  (2007 Trial Tr.  294:08-298:14; 291:20-332:11 (Mr. Den Uyl's thorough discussion of the *Georgia Pacific* Factors).)

### C.    The Court Does Not Need an Advisory Verdict on Post-Verdict Royalty Rates

Fresenius' suggestion that this Court should order a new trial to obtain an advisory verdict on the on-going royalty rate—a pure equitable remedy within this Court's discretion—is nothing more than a thinly-veiled attempt to change its litigation strategy after it received a judgment it did not like.  (*See* Motion at 9-11.)  Regardless of whether an advisory jury is used, this Court will still have to provide a detailed written analysis for its ruling to comply with Federal Circuit precedent.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007) (remanding because, absent an explanation of the selection of the royalty rate, this court cannot determine whether the district

---

[15]  As this Court recognized, Fresenius employed an "argumentative strategy at trial, apparently to some success" to distill all the patents and claims down to a touch screen.  (Dkt. No. 1019 at 8.)  That is yet another reason why Fresenius should not be allowed advance this new theory.

court abused its discretion).   Thus, Fresenius' proposal would compound—not save—time and resources and should be rejected for this reason alone.

Fresenius, moreover, never asked this Court to issue jury instructions or a verdict form seeking an advisory verdict for either of the first two trials.  Fresenius does not explain why it is now necessary.  Fresenius has waived its right to propose this new methodology.

Furthermore, as explained in Baxter's Motion For Decision On Limited Remand Issues, this Court can rule on the appropriate royalty based on the evidence developed already.  (Dkt. No. 1048 at 3-14.)  This Court does not need to empanel an entire new jury simply to decide the appropriate on-going royalty for Fresenius' sales of machines and linked disposables sold post-verdict.  (*Id*.) The Federal Circuit's decision does not affect the post-verdict royalty analysis at all.  (*Id*.)

Finally, Fresenius' cited authority is inapposite.  In *Ariba* and *Cummins-Allison*, the court wanted to save the time and expense of having the parties and experts present evidence multiple times and avoid the risk of inconsistent testimony and theories.  *See Ariba, Inc. v. Emptoris, Inc*., 567 F. Supp. 2d 914, 917-18 (E.D. Tex. 2008); *Cummins-Allison Corp. v. SBM Co., Ltd*., 584 F. Supp. 2d 916, 917-19 (E.D. Tex. 2008).  Those concerns do not exist in this case.  The parties have already tried past-damages and briefed the on-going royalty issue without the need for separate trials or testimony.  At this juncture, neither analysis requires a trial.  Fresenius' suggestion to empanel a jury where one is not needed runs counter to the judicial efficiency rationale used by the *Ariba* and *Cummins-Allison* courts.  Fresenius should not be allowed to conjure up new theories and evidence now simply because it did not like the results of this Court's ruling.

D.     **This Court Should Certify Judgment Pursuant to Rule 54(b)**

This case is nearly seven years old.  Fresenius infringes valid and enforceable claims of the '434 Patent.  Baxter has a final judgment of past-damages for Fresenius' infringement.  This Court should put a stop to Fresenius' attempts to delay resolution of the litigation by certifying judgment of past-damages, prejudgment interest, and post-judgment interest for Fresenius' infringement of the '434 Patent.  *See King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560, 1561-63 (Fed. Cir. 1987) (affirming district court's decision "to order execution on that portion of the judgment which was

BAXTER'S RESPONSE TO FRESENIUS' MOTION FOR
NEW TRIAL TO DETERMINE DAMAGES FOR
U.S. PATENT NO. 5,247,434
Case No.   C-03-1431 SBA

19

final [for machines], while reserving the issues of spare parts [which had been remanded]").

When one or more claims for relief are presented in an action, a court may direct the entry of a final judgment as to one or more but fewer than all of the claims pursuant to Rule 54(b) of the Federal Rules of Civil Procedure where there is no just reason for delay. *W.L. Gore & Assoc. Inc. v. International Medical Prosthetics Research Assoc., Inc*., 975 F.2d 858, 864 (Fed. Cir. 1992). In *MercExchange, L.L.C. v. eBay*, the district court certified judgment of infringement, validity, and past-damages where all that remained was a post-verdict accounting. 2007 U.S. Dist. LEXIS 93027, at *13-15 (E.D. Va. Dec. 11, 2007) (finding "it is eBay that is attempting to forestall payment on a judgment that has long since been finalized and can no longer be appealed."). Here, as in *MercExchange*, "there remains nothing left for the court to do *vis-a-vis* the judgment but to certify it." *Id*. at *14.

## IV.   CONCLUSION

For all of the above reasons, Fresenius' Motion should be denied.

Dated:  February 2, 2010                        Respectfully submitted,

                                                 K&L GATES LLP

                                                 By:   /s/ Sanjay K. Murthy
                                                        Sanjay K. Murthy

                                                 Attorneys for Defendants/Counterclaimants
                                                 BAXTER INTERNATIONAL, INC. AND
                                                 BAXTER HEALTHCARE CORPORATION