Juanita R. Brooks, SBN 75934, brooks@fr.com
Todd G. Miller, SBN 163200, miller@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Mathias W. Samuel, pro hac vice, samuel@fr.com
Michael J. Florey, pro hac vice, florey @fr.com
Thomas S. McClenahan, SBN 203204, mcclenahan@fr.com
Michael J. Pape, pro hac vice, pape@fr.com
Fish & Richardson P.C.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Limin Zheng, SBN 226875, zheng@fr.com
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiffs/Counterclaim Defendants
Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

FRESENIUS MEDICAL CARE HOLDINGS, INC. and FRESENIUS USA, INC.,

Plaintiffs and Counter-Defendants,

v.

BAXTER INTERNATIONAL, INC. and BAXTER HEALTHCARE CORPORATION,

Defendants and Counterclaimants.

Case No. C 03-01431 SBA (EMC)

**FRESENIUS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR A NEW TRIAL TO DETERMINE DAMAGES FOR PATENT NO. 5,247,434**

Date: February 23, 2010
Time: 1:00 p.m.
Place: Courtroom 1, 4th Floor
Judge: Hon. Saundra B. Armstrong

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ........ 1

II. ARGUMENT ........ 2

A. The Court Is Fully Authorized To Consider The New Issue Of Past Damages For Infringement Of The ’434 Patent ........ 2

B. There Is No Reason In This Case To Depart From The “Normal Rule” That A Partial Reversal Of Liability For Patent Infringement Requires A New Damages Trial ........ 10

C. Using An Advisory Jury Will Be Efficient ........ 12

D. Regardless Of Whether Final Judgment Is Entered Pursuant To Rule 58 or Rule 54(b), Fresenius Will Be Entitled To Post A Supersedeas Bond And Obtain A Stay Of Execution Pursuant To Rule 62(d) ........ 13

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## Cases

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475 (Fed. Cir. 1998) .......... 7, 9, 10, 14

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009) .......... 3, 6, 12

*King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987) .......... 13, 14

*Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) .......... 7

*MercExchange v. eBay*, 2007 WL 689019 (E.D. Va. Dec. 11, 2007) .......... 14

*Microsoft Corp. v. Amado*, 517 1353 (Fed. Cir. 2008) .......... 3

*NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) .......... 5, 6

*Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001) .......... 10

*United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2002) .......... 8

*Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007) .......... 4, 5, 10

*Vizcaino v. U.S. Dist. Court for Western Dist. Of Washington*, 173 F.3d 713 (9th Cir. 1999) .......... 8

## Rules

Fed. R. Civ. P. 54(b) .......... 14

Fed. R. Civ. P. 62(d) .......... 14

## I. SUMMARY OF ARGUMENT

Baxter began this case alleging that Fresenius infringed ***five*** of its patents: U.S. Patent Nos. 5,486,286; 5,326,476; 5,744,027 ("'027 patent"); 6,284,131 ("'131 patent"); and 5,247,434 ("'434 patent"). Following trial and appeal, Baxter is left with but a single patent. In its Opposition, Baxter makes the incredible claim that all previously assessed damages in this case are attributable to the surviving '434 patent, and that Baxter's now-invalid '131 and '027 patents were "essentially *'valueless'*" apart from the '434 patent. (Doc. No. 1067 at p. 15 (emphasis Baxter's)). Baxter justifies this brand new claim by pointing out that neither side attempted to assign a separate reasonable royalty amount on a patent-specific basis during the damages jury trial.

The fact that Fresenius elected not to individually value each patent does not support the conclusion that Fresenius agreed all of the value was attributable to the '434 patent. Consider an appraiser valuing a three bedroom house. It may be difficult (or impossible) to assess the value of the house on a room-by-room basis. Most rational appraisers would choose to simply value the house as a whole. It does not logically follow, though, that the house will have the exact same value if two of the three bedrooms are subsequently ruined or damaged in a house fire. The house's value will decrease, an that decreased value could later be determined by an appraiser if necessary.

That is the situation here. At the damages trial the Court had already ruled that *all three* Baxter patents were valid and infringed. Fresenius had no choice but to accept that ruling and value that combined property. It would have made no sense – and probably would have been precluded by this Court – for Fresenius' expert to tell the jury about the damages for different liability permutations in case some of the patents dropped out on appeal. Now, following appeal Baxter's property rights have changed significantly – two of its three patents are invalid. Baxter is entitled to no damages whatsoever for those patent rights. Fresenius is now liable for infringement of significantly less intellectual property than it was when the jury awarded damages. Fresenius should not have to pay for infringement of three patents when it has only infringed one.

Baxter is also mistaken in asserting that this Court has no jurisdiction to conduct a new damages trial. The mandate rule only applies to issues that *could have been raised* in an appeal. Baxter attempts to confuse the issue by arguing that Fresenius could have appealed "damages," but did not. The issue, though, is what damages are due for infringement of the ***'434 patent only***. The district court has never addressed that issue, nor has Fresenius had any opportunity to appeal that issue. It is an issue of first impression in this case. Baxter is correct that Fresenius elected not to appeal the issue of damage *for all three asserted patents*. If the Federal Circuit had affirmed liability for all three patents, Fresenius would not be entitled to a new damages trial. But as Baxter well knows, that is not what happened. The Judgment underlying the damages award has been reversed in substantial part, and nothing whatsoever in the Federal Circuit's opinion and remand precludes this Court from conducting the new damages trial that is plainly warranted.

Finally, Baxter implies that Fresenius waived its right to seek a new trial by not raising the issue of a partial reversal at oral argument. The exchange cited by Baxter, though, supports Fresenius and demonstrates why the damages issue is very much alive. In response to a question from Judge Dyk about the effect of a partial reversal, Fresenius lead counsel Juanita Brooks responded "Where it leaves us is ***it depends on which claims you're talking about***, your Honor." (Murthy Decl. Ex. B (Doc No. 1067-3) at 1). As Ms. Brooks stated, without knowing ***which claims*** would survive appeal, Fresenius could not evaluate the effect of a partial reversal. For example, had the Federal Circuit invalidated only one claim from one patent-in-suit, Fresenius almost certainly would not have moved for a new damages trial. Once it learned that the Federal Circuit had invalidated two of the three patents, and a ***majority*** of the asserted claims, Fresenius was able to determine that it should seek a new damages trial.

## II. ARGUMENT

### A. The Court Is Fully Authorized To Consider The New Issue Of Past Damages For Infringement Of The '434 Patent

Baxter asserts that the Court lacks jurisdiction to even consider the issue of past damages for infringement of the '434 patent standing alone. Baxter's argument is based on a

conglomeration of the mandate rule, the language of the Federal Circuit's opinion, and a waiver argument. None of these arguments, whether considered alone or as a whole, support Baxter's conclusion.

**1. The Mandate Rule Does Not Divest The Court Of Authority To Consider Fresenius' Motion For A New Damages Trial**

"The mandate rule provides that 'issues *actually decided* [on appeal] – those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court – are foreclosed from further consideration.'" *Microsoft Corp. v. Amado*, 517 1353, 1360 (Fed. Cir. 2008), *quoting Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)(emphasis added). To determine if the mandate rule applies, "[t]he scope of the issues presented to this court [the Federal Circuit] on appeal must be measured by the scope of the *judgment appealed from*." *Engel*, 166 F.3d at 1382 (emphasis added).

The Court's Final Judgment was entered on November 6, 2007, following the damages trial. (Doc. 965.) That Final Judgment awarded damages based on a finding of liability for infringement of the 027, '131 and '434 patents. The very first sentence of the Federal Circuit opinion sets this forth in straightforward terms:

> In this patent infringement case, Plaintiffs Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. (collectively "Fresenius") appeal and defendants Baxter International, Inc. and Baxter Healthcare Corporation (collectively "Baxter") cross appeal from **the final judgment of** the United States District Court for the District of California, **which was based on findings that Fresenius infringed claims of *three* patents** asserted by Baxter—U.S. patent Nos. 5,247,434 ("the '434 patent), 5,744,027 ("the '027 patent"), and 6,284,131 ("the '131 patent") . . .."

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) (emphasis added).[1]

[1] Baxter points to Fresenius inclusion in its Notice of Appeal of the Court's April 4, 2008 Order awarding prejudgment interest. (Doc. No. 1018). This interlocutory Order is not the Final Judgment, and in any event is also, as it plainly states, based on a finding of infringement all three asserted patents. *Id*. at p. 2.

As the Federal Circuit stated, the scope of the Judgment was liability for infringement of all three asserted patents. Baxter is correct that Fresenius did not appeal the damages awarded ***for that Judgment***. If the Federal Circuit had affirmed liability for all three patents, the mandate rule would have precluded Fresenius from seeking a new damages trial. But the Federal Circuit reversed the Judgment in part and invalided two of the three asserted patents. 582 F.3d at 1304. The Federal Circuit's reversal of Judgment created an entirely new issue in this case – what damages are due to Baxter for Fresenius' infringement of *only* the '434 patent. This issue has never been addressed; not by the Jury, not by the district court, and not by the Federal Circuit. Fresenius could not (and did not) appeal from any Final Judgment awarding damages for only infringement of the '434 patent, so the issue is *necessarily* outside the scope of the Federal Circuit's mandate.

The Federal Circuit has explicitly recognized that a partial reversal as to liability creates a new damages issue for consideration by the district court. *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007). In *Verizon*, the jury found Vonage liable for infringement of three Verizon patents, and awarded damages of $58,000,000. *Id.* at 1298. On appeal, the Federal Circuit **affirmed** liability for two of the patents, but remanded for a new liability trial as to the third patent in light of the district court's erroneous claim construction. *Id.* Because the jury had not broken out its damages award on a patent-by-patent basis, the Federal Circuit vacated the damages award and remanded for further consideration of the damages issue. *Id.* at 1311. In so holding, the appeals court stated:

> In light of our holding that a new trial is required on the issue of infringement of the '880 patent, we also vacate the determination that Verizon is entitled to a damages award of $58,000,000 and a royalty rate of 5.5%, **since the jury's verdict gives no indication what portion of such damages were allocated to the infringement of the '880 patent. In a situation—such as this one—where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages**.

*Id.* at 1309-10 (citing *Memphis Cnty. Sch. Dist. v. Stachura,* 477 U.S. 299, 312 (1986) (emphasis added)).

In *Verizon*, neither party separately appealed any damage issue.[2] In fact, the Federal Circuit explicitly noted that:

> The parties **<u>have not briefed</u>** whether there is any reason to depart from this general rule in this case. We think it is best under these circumstances to remand this issue for consideration by the district court in the first instance.

503 F.3d at 1310. If Baxter's view was correct, the Federal Circuit would have ruled that the defendant had waived any right to seek reconsideration of damages in light of the partial liability reversal. Clearly, that is not the law. The briefing shows that defendant Vonage appealed the liability rulings upon which damages were based, but did not separately brief or argue any damages issues in its appeal. This is precisely what Fresenius did in its appeal.

Likewise, in *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), a jury found that the defendant infringed four patents, and awarded general damages of $53,704,322.69. *Id*. at 1287. On appeal, the Federal Circuit reversed as to the method claims, affirmed liability as to certain system and apparatus claims, and remanded still other claims to the district court in light of an erroneous claim construction. *Id.* at 1325-26. The court vacated the damages award, observing that:

> On remand, if prejudice is shown with respect to the claims containing the "originating processor" limitation, ***and because the jury verdict did not specify the amount of infringing sales attributed to each individual patent claim***, or the specific devices and services determined by the jury to infringe each separately asserted claim, the district court will have to determine the effect of any alteration of the jury verdict on the district court's damage award and on the scope of the district court's injunction.

*Id*. at 1326 (emphasis added).

This case fits squarely within the rule established by the Federal Circuit. The damages jury returned a single, generalized verdict covering all asserted claims from three Baxter patents. The jury did not specify damages on a claim-by-claim basis, or even a patent-by-patent basis. As a result, the effect on damages from the reversal of two patents-in-suit is not included in the scope of the mandate, and must be determined on remand **<u>by the district court</u>**. *Verizon*, 503 F.3d at

---

[2] The parties' appellate briefing in the *Verizon* case can be found at Doc. No. 1059, Exs. D, E and F.

1310 (damages following partial reversal should be "consider[ed] by the district court in the first instance."); *NTP*, 418 F.3d at 1326 ("the district court will have to determine the effect of any alteration of the jury verdict on the district court's damage award . . . .").

**2. <u>The Federal Circuit's Opinion Supports Consideration Of Fresenius' Motion For A New Damages Trial</u>**

Employing a flawed and self-serving reading of the Federal Circuit's opinion, Baxter asserts that the Federal Circuit "expressly ordered a remand on the ongoing royalty, and by not doing so for the past-damages award, the Federal Circuit implicitly affirmed the jury's patent-damages verdict." (Doc. No. 1067 at p. 14). But that is not what the Federal Circuit's opinion actually says.

The Federal Circuit twice refers to the post-verdict royalty set by the Court as the "***ongoing*** royalty." 582 F.3d at 1303 (emphasis added). In its remand instructions, though, the Federal Circuit states that it is vacating "the royalty award entered by the district court . . .." Since both the royalty award for past infringement and for post verdict infringement were entered by the district court, the Federal Circuit language, which is not limited to the "ongoing" royalty, could apply to both. Additionally, in her concurrence, Judge Newman states that "[o]nly an issue of adjustment of ***damages*** and a modification of the permanent injunction to reflect our reversal of JMOL remain on remand." *Id*. at 1305 (emphasis added). Consistent with Baxter's own use of the term in its brief, "damages" is certainly broad enough to encompass the Jury's award of damages for past infringement.

Baxter made this very same argument in support of its ill-advised contempt motion. Magistrate Judge Chen, after careful analysis, rejected it:

> The problem for Baxter is that the Federal Circuit did not explicitly rule on the issue of prior damages. Nor can it be clearly assumed at this juncture that the Federal Circuit implicitly so ruled. The Federal

> Circuit was silent on the issue of damages; silence does not necessarily mean that an issue has been foreclosed from the trial court's consideration. *See, e.g.*, *Shakespeare Co. v. Silstar Corp. of Am.*, 906 F. Supp. 997, 1002-03 (D.D.C. 1995) (stating that, "[w]here the appellate judgment is silent with respect to the manner in which the lower court should proceed on remand, determination of the scope of the mandate 'requires a careful reading of the [appellate] Court's opinion,' which serves as 'a statement of the reasons on which the judgment rests.'"). In light of the general rule stated in *Verizon* that a new trial on damages is required where the jury renders a simple verdict on damages, there is a reasonable argument that there was no implicit ruling prohibiting recalculation of damages here.

(Doc. No. 1062 at pp. 8-9).

The Federal Circuit has repeatedly cautioned against the type of wooden application of remand instructions that Baxter urges here. For example, in *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1479 (Fed. Cir. 1998), the Federal Circuit made clear that "the nature of the district court's remaining tasks is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion." *Id*. at 1483. The *Exxon* court, discussing *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939), also stated that "*Sprague* thus demonstrates that a judgment that does not specifically provide for a remand is not necessarily incompatible with further proceedings to be undertaken by the district court." 137 F.3d at 1483. In *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) the court stated that "while this court *could* have remanded with explicit instructions to decide the JMOL motions, the failure to do so is not dispositive." (Emphasis in original). Of particular relevance here is also the *Laitram* court's subsequent ruling that it was "incorrect to conclude that we decided issues not only undecided on the merits by the trial court because they were moot, and thus on appeal unripe, but also neither presented to us nor discussed in our opinion, nor necessary to our disposition of the appeal."

Finally, Baxter cites the rule that in determining the scope of the issues decided on appeal, the district court must implement both "the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Vizcaino v. U.S. Dist. Court for Western Dist. Of Washington*, 173 F.3d 713, 719 (9th Cir. 1999); *accord*, *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2002). Once again, Magistrate Judge Chen addressed this issue in his well-reasoned Report and Recommendation:

> In the instant case, the Federal Circuit broadly ordered that the case be "remand[ed] for further proceedings consistent with this opinion." A new trial on damages following the partial reversal would not be inconsistent with the express terms of the Federal Circuit's decision. Moreover, the spirit of the mandate arguably leaves open the issue of a new trial on damages because the Federal Circuit did reverse with respect to two of the three patents at issue. It may be argued that the multi-factored *Georgia-Pacific* analysis on which the jury was instructed for a reasonable royalty is informed by the number and nature of patents infringed. Indeed, although the Federal Circuit was silent on the jury verdict on damages, it did remand as to the calculation of an ongoing royalty award "in light of [the] court's modification of the district court's judgment."

(Doc. No. 1062 at p. 9 (internal citations omitted)).

### 3. Fresenius Did Not Waive Reconsideration Of Damages Following A Partial Reversal

Baxter also asserts that Fresenius waived its ability to seek a new trial on remand by not specifically asking the Federal Circuit in its brief or at oral argument to remand in the event of a partial reversal. This assertion is wrong and defies common sense. Fresenius went up on appeal intending to invalidate *all* of Baxter's patents. Taken to its logical extreme, Baxter's "mandate rule" argument would lead to the conclusion that even if all three patents had been invalidated on appeal, Fresenius would still owe the damage award, since it did not separately appeal damages. This shows the legal weakness of Baxter's argument. Damage awards do not spring out of thin air—they are always based on liability. When liability changes, so do damages.

Beyond that, Fresenius had absolutely no way of knowing how the Federal Circuit would rule. Fresenius could not blindly ask for a remand as to damages, because depending on the nature of the partial reversal, it may not have wanted a new damages trial. For example, if the Federal Circuit had left all three patents standing, but invalidated one claim from one patent, Fresenius might not have sought a new damages trial. According to Baxter, Fresenius apparently should have provided the Federal Circuit with an enormous spreadsheet stating whether it sought remand for a new trial under the hundreds of possible partial-reversal permutations.

The Federal Circuit has been absolutely clear that it does not want or require these types of hypothetical, conditional arguments on appeal. In *Exxon*, defendant made essentially the same argument Baxter makes here—that plaintiff should have filed a conditional appeal, and that the Federal Circuit's lack of a specific remand instruction to consider a new trial precluded the district court from conducting one on remand. 137 F.3d at 1479. The Federal Circuit ruled that "[t]he question whether there could be doctrine-of-equivalents infringement under the claim construction adopted by this court became a critical issue in the case **only after this court's decision on appeal**." *Id.* (emphasis added). The Federal Circuit then went out of its way to explain why appellants are not required to conditionally raise issues that arise only as a result of the Federal Circuit's ultimate ruling on appeal:

> Rather than promoting judicial economy, the rule that Lubrizol proposes would place undue additional burdens both on the parties and on the appellate court. An appellee cannot be expected to preserve all issues that might conceivably give rise to a motion for a new trial, including those issues unrelated to the subject of the appeal. In a case that turns on claim construction, Lubrizol's rule would require an appellee to **anticipate every possible claim construction that the appellate court might adopt and put forth grounds for a new trial under each possible claim construction**. As a practical matter, **the first opportunity that a party in Exxon's position would have to make its arguments for a new trial would be in a petition for rehearing**, and rehearing petitions are normally not a suitable vehicle for making new arguments to the appellate court. *See Pentax Corp. v. Robison,* 135 F.3d 760 (Fed. Cir. 1998). It thus seems clear to us that this case is a paradigmatic example of the kind of case in which it would be improper for an appellate court to dispose of the new trial issues, and in which **the proper forum for raising the new trial issue in question is the district court**.

*Id*. at 1482 (emphasis added).[3]

As Ms. Brooks truthfully told the Federal Circuit at oral argument, ***"it depends on which claims you're talking about[.]"*** (Murthy Decl. Ex. B (Doc No. 1067-3) at 1). Without knowing which claims or patents would survive the partial reversal, Fresenius had no ability to determine if a new damages trial would be warranted. Only after learning that the Federal Circuit invalidated two of the three patents and a majority of the asserted claims did Fresenius conclude that it should seek a new trial as to damages. Accordingly, this motion in the district court is the *first opportunity* Fresenius has had to raise the issue of damages for the '434 patent standing alone. Fresenius has waived nothing.[4]

**B. There Is No Reason In This Case To Depart From The "Normal Rule" That A Partial Reversal Of Liability For Patent Infringement Requires A New Damages Trial**

Baxter makes much of the fact that at the previous damages trial neither party attempted to break out the reasonable royalty on a patent-by-patent basis. As an initial matter, under prevailing Federal Circuit law, this *supports* Fresenius motion for a new damages trial. The *Verizon* court stated that "where the jury rendered a single verdict on damages, ***without breaking down the damages attributable to each patent***, the ***normal rule*** would require a new trial as to damages." 503 F.3d at 1309-1310 (emphasis added); *see also* Report and Recommendation (Doc. No. 1062) at pp. 8-9, (Chen, M.J.) (*Verizon* stated a "general rule" that "a new trial on damages is required where the jury renders a simple verdict on damages"). In the context of a partial reversal, the fact

---

[3] The *Exxon* court also noted that the rule is the same in the Ninth Circuit. 137 F.3d at 1483-84, citing *United States v. Cote*, 51 F.3d at 178, 181-82 (9th Cir. 1995)(reversing denial of new trial motion on remand).

[4] Baxter also cites *Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001) in support of its waiver argument. Magistrate Judge Chen specifically found this case distinguishable in his Report and Recommendation. Doc. No. 1062 at p. 7 fn. 5. *Tronzo* stands for the unremarkable proposition that compensatory and punitive damages are separate issues that must be separately appealed. It has no applicability to this case.

that the jury rendered a general damages verdict for all three patents supports Fresenius' Motion, not Baxter's opposition.

Baxter's depiction of the parties' prior reasonable royalty analysis is also wrong. Baxter's opposition states over and over that Fresenius and its damages expert never attempted to break out the reasonable royalty on a patent-specific or claim-specific basis. True enough. But Baxter then leaps from this fact to an illogical and incredible conclusion – namely, that the parties in their reasonable royalty analysis assigned no value to the technology claimed in the '131 and '027 patents, and instead attributed all recoverable damages to only the '434 patent. But the fact that the parties elected to value the three asserted patents as a package does ***not*** mean that the '131 and '027 patents contributed nothing to the overall value of that package. Nor does it logically follow that the '434 patent alone supports a verdict by a jury that was ***instructed*** by the Court to award damages for all three patents. (Fresenius' Opening Br. (Doc. No. 1042) at p. 5.)

Nothing in the analysis of Fresenius damages expert Prof. Daniel Rubinfeld remotely suggests he did not value the now-invalid '027 and '131 patents. The language quoted at pages 2-3 and page 15 of Baxter's opposition (Doc. N. 1067) does not support Baxter's position. The statements merely show Prof. Rubinfeld's acknowledgment that Baxter's expert Den Uyl did not ascribe any value to the *non-touch screen* claims of the '476 and '027 patents, and did not separately value dependent claims apart from independent claims. But Baxter had *dropped* all of the non-touch screen claims by the time of the damages trial. The jury only considered the issue of damages for touch-screen related claims. As to dependent claims, the statement – which in any event is Mr. Den Uyl's – merely says Baxter's expert did not value dependent claims *apart from* independent claims. It does *not* say those claims have no value in the hypothetical negotiation. And most importantly, the conclusion Prof. Rubinfeld subsequently reached was only that "[b]ecause Mr. Den Uyl generally addressed all of the patented features together, I will do the same in this report."[5]

---

[5] It is noteworthy that much of the material cited by Baxter is either from pre-trial expert reports or from the 2006 liability trial. This material is irrelevant, as it is not part of the evidence evaluated by the damages jury in 2007.

As to Baxter's argument about the evidence and argument presented to the jury at the 2007 trial, it knocks down a straw man but avoids the issue at hand. Fresenius' fact and expert witnesses dealt with damages for all three patents as a group because they had no other choice. The Court had already granted JMOL and established liability for all three asserted patents. Indeed, one can only imagine the howls of protest from Baxter if Fresenius had tried to argue to the jury that it only needed to award damages based on the claims of the '434 patent, and that the '131 and '027 patents had no value apart from the '434 patent. Baxter would never have consented to Fresenius making such an argument. Yet that is now the very argument *Baxter* is making to the Court. (Doc. No. 1067 at p. 15).

The issue at hand is whether a reasonable jury could conclude that the royalty damages for infringement of the '434 patent by itself are less than royalty damages for infringement of all three patents combined. The answer is clearly "yes." Indeed, the Federal Circuit remanded this case precisely because it found that its reversal of JMOL as to two patents might affect the *Georgia Pacific* analysis. 582 F.3d at 1303. As Magistrate Judge Chen found, "[i]t may be argued that the multi-factor *Georgia-Pacific* analysis on which the jury was instructed for a reasonable royalty is informed by the ***number and nature of patents infringed***. (Doc. No. 1062 at p. 9) (emphasis added).

Baxter relentlessly reminded the jury that the Court had adjudicated Fresenius an infringer of three Baxter patents. (Fresenius Opening Br. (Doc. No. 1042) at p. 7). The Court instructed the jury to award damages for those three Baxter patents. (*Id.* at p. 5). Baxter has never had to prove up its damages for the '434 patent. Fresenius has never had an opportunity to present evidence or argument as to a reasonable royalty for the '434 patent. The Court should order a new trial to determine damages for the single patent for which Baxter has established liability following appeal.

**C. Using An Advisory Jury Will Be Efficient**

If the Court does not stay the case, it is apparent that a new damages trial is necessary. Since the parties and the Court will need to deal with *Georgia-Pacific* damages evidence in this

context, it will promote efficiency to deal with all of the royalty issues at once. Baxter argues that Fresenius did not request this approach at the last damages trial. Baxter neglects to mention that at the time of the prior damages trial, Baxter had not even moved for an injunction or for a post-verdict royalty. Now that the issue of a post-verdict royalty is before the Court, an advisory jury makes perfect sense.

**D. Regardless Of Whether Final Judgment Is Entered Pursuant To Rule 58 or Rule 54(b), Fresenius Will Be Entitled To Post A Supersedeas Bond And Obtain A Stay Of Execution Pursuant To Rule 62(d)**

Without noticing or briefing any Motion for Judgment, Baxter suggests at the end of its opposition brief that the Court should "certify[] judgment of past damages, prejudgment interest, and post judgment interest for Fresenius infringement of the '434 patent." Doc. No. 1067 at p. 19. Baxter states that it makes this request "pursuant to Rule 54(b)" of the Federal Rules of Civil Procedure. *Id*. at pp. 19-20. Baxter's suggestion is misleading and disingenuous. Although it invokes Rule 54(b), what Baxter really wants is a Rule 69 writ of execution. In other words, if the Court denies Fresenius' Motion for a new damages trial, Baxter wants to try to immediately collect as past damages the amount of the Jury's award, plus all interest, before Fresenius can even appeal the Court's denial of the new damages trial motion for the '434 patent. Baxter cites no rule of law that would allow it to collect damages prior to appeal.

Neither of the two cases cited by Baxter support its request. In *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987), the Federal Circuit affirmed an execution of judgment on certain damages because "this court had ***considered and affirmed*** the District Court's determination on those damages." *Id*. at 1563 (emphasis added). The Federal Circuit added that following appeal, the damages at issue were "both uncontested and absolute." *Id*. That is the exact ***opposite*** of this case, where damages for the '434 patent are very much contested, and where the Federal Circuit has neither considered the Court's ruling on Fresenius' Motion for a new

damages trial nor considered any damages judgment for the ’434 patent. As the *King Instruments* court explained, Rule 54(b) “concerns the power of the trial court *before* appeal” and was therefore “not applicable in these circumstances.” *Id.* (emphasis in original). So if the Court enters a final judgment under Rule 54(b) as Baxter requests, Fresenius will be entitled to appeal from that judgment, and to obtain a stay of execution by posting a bond. Fed. R. Civ. P. 62(d).

Baxter also cites *MercExchange v. eBay*, 2007 WL 689019 (E.D. Va. Dec. 11, 2007), but it provides no support. As in the *King Instruments* case, *MercExchange* involved a damages judgment based on a jury verdict, and “[the Federal Circuit] affirmed the jury’s verdict and the [district court’s] judgment.” *Id.* at *4. The defendant was trying to avoid paying “a judgment that has long since been finalized and can no longer be appealed.” *Id.* In contrast, the judgment here has been partially reversed on appeal, damages for the ’434 patent have not been finalized, and Fresenius is entitled to appeal if the Court denies its Motion for a new damages trial. *See Exxon* 137 F.3d at 1484 (reversing denial of new trial on remand).

The purpose of Rule 54(b) is to allow for expedited appeal of discrete claims. If the Court elects not to stay the case, Baxter has provided no reason why the Court should not simply address all remaining remand issues in a single final judgment. But regardless of whether the Court deals with the past damages issue as part of a single judgment, or enters a partial final judgment under Rule 54(b), Fresenius has the right to appeal that judgment and obtain the mandatory stay of execution by posting a bond pursuant to Rule 62(d). No rule of law supports Baxter’s unprecedented attempt to immediately collect damages for infringement of the ’434 patent prior to appeal.

## III. CONCLUSION

For the reasons stated above, Fresenius respectfully requests that the Court conduct a jury trial to determine reasonable royalty damages due to Baxter for Fresenius' infringement of the '434 patent.

Dated: February 9, 2010

FISH & RICHARDSON P.C.

By: */s/ Michael E. Florey*
Michael E. Florey

Attorneys for Plaintiffs/Counterclaim Defendants
FRESENIUS MEDICAL CARE HOLDINGS, INC. AND FRESENIUS USA, INC.